**RECEIVED**
03/19/2025
KELLY L. STEPHENS, Clerk

Case Nos. 23-5795 & 23-6108 Combined

# In the United States Court of Appeals for the Sixth Circuit

THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.
Plaintiff-Appellee

v.

KENTUCKY COLONELS INTERNATIONAL; GLOBCAL
INTERNATIONAL; ECOLOGY CROSSROADS COOPERATIVE
FOUNDATION, INC.; UNKNOWN DEFENDANTS (Defendants)
by
**COL. DAVID J. WRIGHT, KENTUCKY COLONEL**
on behalf of himself and individuals similarly titled.
Defendant-Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE CIVIL DIVISION

DISTRICT COURT ORDERS IN CASE NUMBERS

3:20-cv-00132 and 3:23-cv-00043

**INITIAL BRIEF OF THE APPELLANT**

Col. David J. Wright
Goodwill Ambassador for the Commonwealth of Kentucky
302 General Smith Drive | Richmond, Kentucky 40475

# CORPORATE DISCLOSURE STATEMENT

In accordance with **6 Cir. R. 26.1**, **Appellant Col. David J. Wright** hereby states:

1. **Is the Appellant a subsidiary or affiliate of a publicly owned corporation?**

   **No.** Appellant, **Col. David J. Wright, is an individual natural person** and does not represent any corporation, partnership, or other business entity in this appeal.

2. **Is there a publicly owned corporation, not a party to the appeal, with a financial interest in the outcome?**

   **No.** There is no publicly owned corporation with a direct financial interest in this appeal.

3. **Does the Appellant have a financial interest in the outcome?**

   **Yes.** As the creator of original written works, websites, and educational materials, **Appellant has a personal financial interest in the fair use of his work and reputational impact of the case outcome.**

4. **Does anyone else have a financial interest in the outcome?**

   **No.** No third-party corporations, organizations, or non-profit entities hold any ownership or financial stake in the appeal.

/s/ **Col. David J. Wright**

David Jeffrey Wright

1

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT..................................................................1

TABLE OF CONTENTS...............................................................................................2

TABLE OF AUTHORITIES..........................................................................................8

    Cases....................................................................................................................8

    Statutes & Rules..................................................................................................9

PRELIMINARY STATEMENT....................................................................................10

STATEMENT REGARDING ORAL ARGUMENT....................................................12

JURISDICTIONAL STATEMENT..............................................................................14

STATEMENT OF ISSUES..........................................................................................15

STATEMENT OF THE CASE......................................................................................18

    Overview of the Appeal....................................................................................19

    Key Legal Question..........................................................................................19

    Procedural History............................................................................................20

    Nature of the Dispute.......................................................................................20

    HOKC's Retaliatory and Fraudulent Conduct................................................21

        1. Retaliation for Petitioning the Kentucky Governor............................21

        2. Fraudulent Concealment of Pre-Litigation Negotiations....................21

Procedural History Highlights...............................................................22

Conclusion: This Case Requires Reversal......................................23

STANDARD OF REVIEW.......................................................................25

1. Civil Rights Violations and Due Process Claims (De Novo Review)........................25

2. Trademark Fraud, Cancellations, and Fair Use (Mixed Review)...............................26

3. Equitable Relief and Injunctive Measures (Abuse of Discretion)...............................26

4. Constitutional Interpretations and Judicial Discretion (De Novo & Abuse of Discretion Review)...............................................................27

5. Whistleblower Protections and SLAPP Retaliation (De Novo Review)....................27

6. Interpretation of Agreements and Settlements (De Novo Review)............................28

SUMMARY OF THE ARGUMENT.......................................................29

ARGUMENT.............................................................................................32

I. The District Court Violated Due Process by Failing to Rule on Defendant's Recusal Motion Before Issuing Substantive Orders...............................34

A. Sixth Circuit Precedent Requires That Recusal Motions Be Decided Before Any Further Rulings..............................................................34

B. The District Court's Rulings Show a Pattern of Bias and Judicial Hubris.................36

C. The Law Demands Reversal When a Judge Ignores a Recusal Motion and Continues to Rule....................................................................39

II. The District Court Committed Reversible Error by Ignoring Its Own Binding Precedent in HOKC v. Building Champions (2004).............................................................40

    A. Binding Precedent From the Same Court Cannot Be Ignored Without Justification. 41

    B. The District Court Expanded Plaintiff's Trademark Rights Beyond Their Legal Limits.............................................................................................................42

    C. The Failure to Follow Building Champions Requires Reversal................................43

III. The District Court's Injunction Constitutes an Unconstitutional Prior Restraint on Speech.............................................................................................................44

    A. The Injunction Prohibits Lawful Expression in Violation of the First Amendment...44

    B. The Supreme Court Has Rejected Efforts to Use Trademark Law to Censor Speech 46

    C. The Injunction Covers Mere Trademark Applications, Which Have No Legal Effect... 47

    D. The Prior Restraint Standard Demands Reversal.........................................48

    E. Remedy: The Injunction Must Be Vacated in Its Entirety.........................................49

IV. The District Court's Agreed Injunction Is Void Under the Collateral Bar Doctrine Exception Because It Was Based on a Defunct Preliminary Injunction that was an Unconstitutional Prior Restraint on Speech.........................................................50

    A. The Agreed Permanent Injunction Superseded the Preliminary Injunction and Created Legal Equity for Defendant.............................................................50

    B. Under the Collateral Bar Doctrine Exception, the Court's Injunction Is Void and

Unenforceable........................................................................................................51

C. Court's Cannot Extinguish Constitutionally Protected Rights Through an Injunction...
52

D. Remedy: The Injunction Must Be Declared Void Ab Initio.......................................54

IV. The District Court's Injunction Is Void Under the Collateral Bar Doctrine Exception

Because It Was Based on a Defunct Preliminary Injunction...................................55

A. The Agreed Permanent Injunction Superseded the Preliminary Injunction and

Created Legal Equity for Defendant.................................................................55

B. Under the Collateral Bar Doctrine Exception, the Court's Injunction Is Void and

Unenforceable........................................................................................................56

C. Court's Cannot Extinguish Constitutionally Protected Rights Through Injunctions..57

D. Remedy: The Injunction Must Be Declared Void Ab Initio.......................................58

VI. The District Court's Fundamental Misunderstanding of Trademark Law Resulted in

Judicial Overreach and an Unlawful Expansion of Plaintiff's Rights...................59

A. The Difference Between a Title and a Trademark Matters.......................................59

B. Plaintiff Used This Trademark Confusion to Engage in Trademark Bullying and

Suppress Fair Use.................................................................................................60

C. The District Court's Ruling Violates the Fair-Use Doctrine and Encourages

Over-Enforcement.................................................................................................61

D. Remedy: This Court Must Reverse the District Court's Trademark Misinterpretation

and Recognize Defendant's Right to Fair Use.................................................................61

V. The District Court Exceeded Its Authority by Penalizing Defendant for Using the

Common-Law "™" Symbol, Which Is Not Regulated or Controlled by the Lanham Act or

the Court...........................................................................................................................62

    A. The Unregulated "™" Trademark or Title Mark Symbol Is a Common-Law

    Designation That Requires No Registration...............................................................62

    B. Federal Law Governs the (®) Symbol, Not "™"....................................................63

    C. The District Court's Ruling Creates a Dangerous, Unprecedented Expansion of

    Trademark Law............................................................................................................64

    D. The District Court's Order Must Be Reversed Because It Lacks Any Basis in

    Trademark Law To Find Infringement based on the Use of Indicia.............................64

VI. The District Court's Finding of Trademark Infringement Was Legally and Factually

Unsupported......................................................................................................................65

    A. The District Court Failed to Apply the Sixth Circuit's "Likelihood of Confusion"

    Test.............................................................................................................................66

    B. Plaintiff Presented No Evidence of Actual Consumer Confusion............................67

    C. The District Court Ignored the Descriptive and Historical Nature of "Kentucky

    Colonel".....................................................................................................................67

    D. Remedy: The Finding of Infringement Must Be Reversed.......................................68

VII. The District Court's Cumulative Errors Require Full Reversal to Preserve Judicial

Integrity and Prevent Further Abuse..........................................................69

    A. The District Court's Rulings Have Encouraged Trademark Bullying and Litigation

    Abuse..........................................................................................70

    B. Remedy: The Sixth Circuit Must Reverse and Remand With Instructions to Correct

    These Errors.................................................................................70

REQUEST FOR RELIEF........................................................................72

CONCLUSION & CLOSING STATEMENT..................................................74

CERTIFICATE OF COMPLIANCE.........................................................76

CERTIFICATE OF SERVICE................................................................77

# TABLE OF AUTHORITIES

## Cases

- *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) – p. 50

- *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) – pp. 41, 50

- *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915 (6th Cir. 2003) – p. 34

- *Faretta v. California*, 422 U.S. 806 (1975) – p. 19

- *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002) – p. 28

- *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642 (6th Cir. 1982) – pp. 12, 21

- *Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d 624 (6th Cir. 2009) – pp. 12, 18, 28

- *Haines v. Kerner*, 404 U.S. 519 (1972) – p. 19

- *Honorable Order of Kentucky Colonels, Inc. v. Building Champions, LLC*, 345 F. Supp. 2d 716 (W.D. Ky. 2004) – pp. 11, 42

- *Iancu v. Brunetti*, 588 U.S. 388 (2019) – p. 17

- *Johnston v. Borders*, 36 F.4th 692 (6th Cir. 2022) – p. 43

- *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004) – pp. 21, 44

- *Liteky v. United States*, 510 U.S. 540 (1994) – p. 39

- *Matal v. Tam*, 582 U.S. 218 (2017) – pp. 17, 50

- *Maty v. Grasselli Chemical Co.*, 303 U.S. 197 (1938) – p. 19

- *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995) – p. 29

- *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) – p. 50

- *New York Times Co. v. United States*, 403 U.S. 713 (1971) – p. 50

- *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) – p. 21

- *Reed v. Town of Gilbert*, 576 U.S. 155 (2015) – p. 17

- *Salve Regina College v. Russell*, 499 U.S. 225 (1991) – p. 44

- *Sanders v. KFC National Management Co.*, 1981 WL 481041 (Ky. Cir. Ct. 1981) – p. 11

- *Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir. 2003) – p. 34

- *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623 (6th Cir. 2002) – p. 21

- *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002) – p. 18

- *United Mine Workers v. Bagwell, 512 U.S. 821 (1994) – p. 51*

- *United States v. Adams, 722 F.3d 788 (6th Cir. 2013) – p. 18*

- *United States v. Alvarez, 567 U.S. 709 (2012) – p. 11*

- *United States v. Hall, 472 F.2d 261 (6th Cir. 1972) – p. 58*

- *United States v. Lopez, 514 U.S. 549 (1995) – p. 66*

- *United States v. Murdock, 398 F.3d 491 (6th Cir. 2005) – p. 28*

- *United States v. Sammons, 918 F.2d 592 (6th Cir. 1990) – pp. 11, 19, 36*

- *United States v. Williams, 579 U.S. 1 (2016) – p. 41*

- *United States v. United Mine Workers, 330 U.S. 258 (1947) – p. 58*

- *Wilson v. Garcia, 471 U.S. 261 (1985) – p. 19*

## Statutes & Rules

- **15 U.S.C. § 1057(c)** (Trademark Applications & Priority) – pp. 12, 21

- **15 U.S.C. § 1111** (Notice of Registration) – p. 18

- **42 U.S.C. § 1983** (Civil Rights & Retaliation Claims) – p. 34

- **Fed. R. App. P. 34(a)** (Oral Argument) – p. 12

- **Sixth Circuit R. 34(a)** (Oral Argument) – p. 12

# PRELIMINARY STATEMENT

This appeal arises from a deeply flawed District Court proceeding in which a private entity, the **Honorable Order of Kentucky Colonels, Inc. ("HOKC")**, manipulated trademark law to silence speech, expand its intellectual property rights through litigation, and suppress fair competition. The District Court's rulings were **legally incorrect and procedurally unjust**, reflecting **judicial bias, lack of scrutiny, and fundamental misapplications of law** that resulted in an **unconstitutional prior restraint on speech.**

The title **"Kentucky Colonel"** is an **honorary designation conferred by the Governor of Kentucky,** akin to honorary degrees and military ranks. The **District Court's failure to recognize this distinction** is part of its broader failure to apply proper legal standards. Moreover, **HOKC has referred to David J. Wright as "Colonel Wright" for over two decades** in accordance with the Commonwealth of Kentucky's protocol. Courts have long recognized this title, including in *Sanders v. KFC National Management Co.*, 1981 WL 481041 (Ky. Cir. Ct. 1981). **Preventing Appellant from using his earned title infringes upon his First Amendment rights.**

At the heart of this case is whether **HOKC can monopolize "Kentucky Colonel"** beyond its registered trademarks, despite its **historical public domain status.** The District Court **ignored binding precedent in Honorable Order of Kentucky Colonels v. Building Champions, 345 F. Supp. 2d 716 (W.D. Ky. 2004)** and **wrongfully expanded Plaintiff's trademark rights.**

Beyond disregarding HOKC's **own practice of addressing Colonel Wright by his title,** the **District Court ignored established precedent** and violated due process. It **failed to rule on**

**Defendant's Motion for Recusal before issuing substantive orders**, violating *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990). This error was compounded when the court **revived a dismissed case, penalized Defendant for protected speech, and misapplied trademark law to favor Plaintiff without conducting the proper legal analysis.**

The District Court's findings of **infringement and contempt are legally baseless.** It **failed to conduct a proper likelihood of confusion test** under *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642 (6th Cir. 1982), or apply the **fair-use doctrine** to Defendant's **expressive and educational use of his Kentucky Colonel title.** Worse still, the court **extended injunctive relief to mere trademark applications**, despite settled law that **pending applications do not confer enforceable rights** under **15 U.S.C. § 1057(c).**

Additionally, the District Court **improperly awarded nearly $97,000 in attorneys' fees** without considering Defendant's **financial hardship**, violating *Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d 624, 643 (6th Cir. 2009), which requires courts to **assess financial ability before imposing fees.**

This case is not merely about a trademark dispute—it is about the **systematic misuse of litigation** to suppress lawful speech, engage in **trademark bullying**, and weaponize the courts for improper gain. The **cumulative legal errors in this case demand appellate intervention** to **vacate the District Court's rulings, prevent further legal abuse, and uphold fundamental constitutional rights.**

# STATEMENT REGARDING ORAL ARGUMENT

**Pursuant to Fed. R. App. P. 34(a) and 6th Cir. R. 34(a), Defendant-Appellant, Col. David J. Wright ("Colonel Wright"), respectfully submits that oral argument is unnecessary in this case.** The legal issues presented are **straightforward, well-documented, and can be resolved based strictly on the record, controlling precedent, and the arguments set forth in this brief.**

While the **resolution of this appeal should be largely determined by two binding decisions of this Court—**_General Conference Corporation, et al v. Walter McGill_, No. 09-5723 (6th Cir. 2010) and _Therma-Scan, Inc. v. Thermoscan, Inc._, 295 F. 3d 623 (6th Cir 2002)—this case also presents **novel issues regarding trademark expansion, judicial overreach, and the misuse of injunctive relief in violation of due process and First Amendment protections that the Court may have an interest in exploring.**

The District Court **should not have entertained this case at all,** as it was **barred by collateral estoppel based on** _Honorable Order of Kentucky Colonels, Inc. v. Building Champions, LLC d/b/a Kentucky Colonels_, 345 F. Supp. 2d 716 (WD Kentucky 2004)**.** Instead, the case was **driven by an overzealous trademark owner, judicial bias, unbridled hubris, and improper prosecutorial deference**, resulting in a **wrongfully imposed preliminary injunction that prejudiced Colonel Wright's rights before he could fully present a defense.**

At the heart of this appeal is **the fundamental distinction between the honorary title "Kentucky Colonel" and Plaintiff's claimed trademarks, whether they ever should have**

12

been applied for and granted in the first place. The **historical, cultural, and linguistic aspects of the term, along with its widespread use by hundreds of thousands of individuals commissioned by the Governor of Kentucky,** establish that Plaintiff **does not have exclusive rights to control its use.** The District Court's **failure to recognize these distinctions led to multiple legal errors that warrant reversal.**

Although Colonel Wright has set forth his primary arguments in this brief, he **reserves the right to respond to any inquiries from this Court or a three-judge panel during their *de novo* review.** Should the Court require additional clarification, Colonel Wright **will comply with any requests for information or his appearance, whether via remote video conferencing, or in writing.**

Accordingly, **Colonel Wright respectfully waives oral argument unless the Court determines that additional discussion is necessary to resolve the issues presented.**

# JURISDICTIONAL STATEMENT

The **United States Court of Appeals for the Sixth Circuit** has jurisdiction over this appeal pursuant to **28 U.S.C. § 1291**, as this is an appeal from a **final decision** of the **United States District Court for the Western District of Kentucky**. The district court exercised **federal question jurisdiction under 28 U.S.C. § 1331**, as the case involved claims arising under the **Lanham Act (15 U.S.C. § 1051 et seq.)** and other federal statutes.

The district court entered judgment in favor of Appellee, **The Honorable Order of Kentucky Colonels, Inc. (HOKC),** on **August 13, 2020**, in *Order*, **3:20-cv-00132-RGJ**, **Document 58**, **PageID #: 1218**. The court issued its final **Memorandum Opinion and Order** on **August 9, 2023**, in *Mem. Op.*, **3:20-cv-00132-RGJ**, **Document 129**, **PageID #: 3714**.

Appellant timely filed his **Notice of Appeal** on **August 31, 2023**, in *Notice of Appeal*, **3:20-cv-00132-RGJ**, **Document 132**, **PageID #: 3804**.

To the extent diversity jurisdiction was asserted, the district court also had jurisdiction under **28 U.S.C. § 1331**, as the amount in controversy exceeds $75,000.

This Court has proper jurisdiction over all claims raised in this appeal. Additionally, the appeal involves **federal statutory and constitutional claims**, including issues arising under:

- **The Copyright Act (17 U.S.C. § 101 et seq.)**
- **The Volunteer Protection Act (42 U.S.C. § 14501 et seq.)**
- **Kentucky's Anti-SLAPP Legislation**
- **The First and Fourteenth Amendments**

14

# STATEMENT OF ISSUES

This appellate proceeding challenges a series of **fundamental legal errors and constitutional violations** committed by the District Court. The **issues presented for review** concern **procedural due process, judicial overreach, misapplication of trademark law, and the improper suppression of protected speech.** Each issue demands **careful scrutiny to ensure compliance with established legal precedent and constitutional guarantees.**

Accordingly, Defendant-Appellant submits the following **statement of issues** for this Honorable Court's consideration:

1. **Whether the District Court committed reversible error by failing to rule on Defendant's Motion for Recusal before issuing substantive orders, in violation of** *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990).

2. **Whether the District Court violated binding precedent from its own jurisdiction by ignoring** *Honorable Order of Kentucky Colonels v. Building Champions*, 345 F. Supp. 2d 716 (W.D. Ky. 2004), **and improperly expanding Plaintiff's trademark rights.**

3. **Whether the District Court's injunction constitutes an unconstitutional prior restraint on speech in violation of the First Amendment, as held in** *Matal v. Tam*, 582 U.S. 218 (2017).

4. **Whether the District Court improperly revived a dismissed case in violation of res judicata, rendering its subsequent rulings invalid.**

5. **Whether the District Court exceeded its authority by penalizing Defendant for using the common-law "™" symbol, which is not regulated under** 15 U.S.C. § 1111 **or trademark law.**

6. **Whether the District Court failed to conduct the required likelihood of confusion analysis under** *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642 (6th Cir. 1982), **before finding trademark infringement.**

7. **Whether the District Court improperly treated Plaintiff's trademarks for its products as "famous" without legal justification, contrary to the standards set forth in** *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002).

8. **Whether the District Court failed to distinguish between commercial and non-commercial use, thereby applying trademark law to activities beyond its intended scope.**

9. **Whether the District Court improperly extended injunctive relief to Plaintiff's mere trademark applications, which do not create enforceable rights under** 15 U.S.C. § 1057(c).

10. **Whether the District Court wrongfully awarded $97,000 in attorneys' fees without considering Defendant's financial hardship, in violation of** *Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d 624, 643 (6th Cir. 2009).

11. **Whether the District Court's cumulative errors require reversal to preserve judicial integrity, as recognized in** *United States v. Adams*, 722 F.3d 788, 828 (6th Cir. 2013).

12. **Whether the District Court erred in failing to recognize that "Kentucky Colonel" is a historical and honorary title granted by the Commonwealth of Kentucky, and not a proprietary trademark of the Plaintiff, as acknowledged in historical and legal precedent.**

13. **Whether the District Court was duped to improperly allow Plaintiff to assert exclusive rights over the title "Kentucky Colonel" despite the term's long-standing historical and public domain status and its use by hundreds of thousands commissioned by the Governor of Kentucky independently of the Plaintiff.**

14. **Whether the District Court failed to scrutinize Plaintiff's fraudulent misrepresentations to the USPTO and the Court regarding the scope of its trademark rights and first-use, despite clear evidence of material omissions and misleading statements.**

15. **Whether Plaintiff engaged in fraudulent concealment by failing to disclose its historical use of "Kentucky Colonel" as a title rather than a brand, thereby deceiving the Court into granting an overbroad injunction.**

Each of these **issues presents a fundamental question of law or equity** that this Honorable Court **must address with diligence, impartiality, and adherence to controlling legal precedent.** The resolution of these issues is essential not only for the proper adjudication of this case but also **for ensuring the fair application of trademark law and constitutional protections moving forward.**

17

# STATEMENT OF THE CASE

This appeal arises from a fundamentally flawed legal proceeding centered on the honorary title **"Kentucky Colonel,"** a designation historically recognized as a **public honor, not private intellectual property.** The case is defined by **judicial bias, procedural irregularities, fraudulent concealment of material facts, and an imbalance of litigation power** that deprived Appellant of a fair adjudication.

The central legal question is whether **"KENTUCKY COLONELS"**—long used to describe recipients of the Kentucky Colonel commission—can be monopolized as a private trademark by **The Honorable Order of Kentucky Colonels (HOKC)** or whether it must remain **a public designation.**

Appellant, Colonel **David J. Wright**, asserts that the **District Court's rulings misapplied controlling law, overlooked critical evidence, failed to scrutinize the claims of Plaintiff, and imposed unjust sanctions based on a misinterpretation of the facts.** The court ignored **HOKC's fraudulent trademark applications, the descriptive nature of the term, and a mediated settlement agreement intended to protect Appellant's rights.**

This case is a **textbook example of trademark overreach,** where a **private organization attempts to redefine public heritage as private property, undermining constitutional protections and fundamental principles of equity.**

---

## Overview of the Appeal

This appeal challenges the District Court's failure to uphold due process, its misapplication of trademark law, and its unjust sanctions against Appellant. HOKC **weaponized the legal system to suppress competition, expand its trademark rights through litigation, and retaliate against a whistleblower.**

The District Court compounded these injustices by:

- **Reviving a case dismissed with prejudice**, violating **res judicata and due process.**
- **Refusing to rule on recusal before issuing substantive orders,** violating **United States v. Sammons, 918 F.2d 592, 599 (6th Cir. 1990).**
- **Granting an improper Temporary Restraining Order (TRO)** based on fraudulent misrepresentations.
- **Penalizing Appellant for protected speech**, including efforts to petition the **Kentucky Governor regarding the administration of the Kentucky Colonel Commission.**

**Key Legal Question**

Must "Kentucky Colonels" remain **a public, historical title**, or can it be monopolized under trademark law despite its **long-standing use as a general designation**?

Appellant asserts that the District Court's **flawed interpretation of trademark law, bias, and disregard for due process require reversal** to prevent further suppression of speech and competition.

---

## Procedural History

This case stems from **Civil Action No. 3:20-cv-132-RGJ**, originally dismissed **with prejudice** but improperly **revived** by the District Court at Plaintiff's request.

**Key rulings at issue:**

- **Agreed Permanent Injunction (API) [DE-93]**
- **Memorandum Opinion and Order [DE-129] (August 9, 2023)**

Despite agreeing to a **dismissal with prejudice in 2021**, Plaintiff **filed a new lawsuit in 2023,** which the District Court treated as a **continuation of the dismissed case**, violating **res judicata** and due process.

---

## Nature of the Dispute

The case centers on whether:

- **"Kentucky Colonels" is a generic historical title** that cannot be monopolized.
- **HOKC improperly expanded its trademark rights** beyond those recognized by the USPTO.
- **Appellant's rights to free speech and due process were unlawfully restricted.**

HOKC seeks to **convert an honorary title into private intellectual property,** despite its **long history as a general public designation.** The District Court **wrongfully ruled in favor of HOKC**, ignoring the **Agreed Permanent Injunction's equity provisions.**

## HOKC's Retaliatory and Fraudulent Conduct

## 1. Retaliation for Petitioning the Kentucky Governor

Appellant exercised **protected speech rights** by petitioning the **Governor of Kentucky** regarding HOKC's improper influence over the **Kentucky Colonel Commission.**

**January 2020 – Appellant's Letter to Governor Andy Beshear Exposed:**

- **HOKC's false claim** that it is a membership-based organization.

- **Conflicts of interest** between the Governor's Office and HOKC.

- **HOKC's mass solicitation of all Kentucky Colonels** for financial gain.

- **Transparency concerns** over HOKC's charitable operations.

**Legal Relevance:**

- HOKC **filed suit less than a month later**, proving retaliation.

- **Plaintiff concealed this history**, misleading the court into viewing Appellant as an "outsider."

- Had the **District Court been aware of this protected speech**, it likely **would not have granted the TRO.**

## 2. Fraudulent Concealment of Pre-Litigation Negotiations

Before litigation, HOKC **negotiated with Appellant** regarding a potential **merger with Kentucky Colonels International (KCI).**

**Timeline of Concealed Negotiations:**

- **January 2020** – Appellant **submitted a merger proposal** to HOKC.
- **HOKC falsely claimed in court** that Appellant was an unauthorized user.
- Instead of negotiating in good faith, **HOKC filed suit to eliminate Appellant as a competitor.**

**Legal Relevance:**

- **Plaintiff's failure to disclose pre-litigation discussions constitutes fraudulent concealment.**
- Had the court known of these discussions, it likely **would have denied the TRO.**

---

## Procedural History Highlights

**Key Dates & Events:**

- **January 21, 2020** – Appellant **sends letter to the Kentucky Governor** exposing HOKC's misconduct.
- **February 17, 2020** – **HOKC files three new trademark applications** to manufacture a claim.
- **February 20, 2020** – Plaintiff files lawsuit.

- **February 25, 2020** – District Court grants **ex parte TRO, removing Appellant's website and restricting speech.**

- **March 9, 2020** – Case reassigned to Judge Rebecca Grady Jennings.

- **August 13, 2020** – Judge Jennings issues **Preliminary Injunction, restricting speech and assembly.**

- **February 23, 2021 – Case dismissed with prejudice; API entered.**

- **January 25, 2023** – Plaintiff files a new complaint; District Court **improperly reopens** case.

- **August 9, 2023 – District Court enforces Agreed Injunction based on misrepresented facts [DE-129].**

- **August 31, 2023 – Appellant files appeal.**

---

## Conclusion: This Case Requires Reversal

This case represents **a textbook example of retaliatory litigation, fraudulent concealment, and judicial bias.**

**The Sixth Circuit must:**

- Reverse the **District Court's decision to reopen the case.**

- Vacate **all orders issued after the case's improper revival.**

- Recognize this **as a SLAPP lawsuit designed to suppress protected speech.**

This appeal raises broader concerns regarding **the treatment of pro se litigants** and **the equitable enforcement of due process in federal courts.** The Supreme Court has long held

that courts **must afford pro se litigants fair treatment and construe their filings liberally.** See **Haines v. Kerner, 404 U.S. 519 (1972).**

**This case warrants immediate reversal to restore constitutional protections and prevent future misuse of trademark law against public heritage.**

# STANDARD OF REVIEW

This appeal presents **critical legal issues requiring a thorough *de novo* review** due to **substantial constitutional violations, procedural errors, fraudulent misrepresentations by Plaintiff, and improper judicial rulings that conflict with established precedent.**

A *de novo* review is particularly warranted where, as here, **a district court improperly reopened a dismissed case, issued rulings based on misrepresented facts, and violated fundamental due process rights.** Additionally, **Plaintiff's fraudulent trademark filings and failure to disclose material facts to the court justify heightened appellate scrutiny.**

## 1. Civil Rights Violations and Due Process Claims (De Novo Review)

**Constitutional claims, including violations of due process and First Amendment rights, are subject to de novo review.** See *Salem v. Mich. Dep't of Corr.*, 643 F. App'x 526, 527 (6th Cir. 2016) (holding that de novo review applies where constitutional due process violations are alleged).

The District Court's rulings **penalized protected speech, improperly suppressed Appellant's use of his own honorific title, and imposed an unconstitutional prior restraint through injunctive relief.** Additionally, the **court failed to rule on a properly filed Motion for Recusal before issuing substantive orders**, a **due process violation requiring reversal.** See *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990) (holding that failure to address recusal before issuing rulings constitutes reversible error).

## 2. Trademark Fraud, Cancellations, and Fair Use (Mixed Review)

**Legal conclusions regarding trademark law, including fair use and distinctiveness, are reviewed *de novo*, while factual findings regarding consumer confusion and secondary meaning are reviewed for clear error.** See *Innovation Ventures, LLC v. NVE, Inc.*, 694 F.3d 723, 730 (6th Cir. 2012).

- The **Plaintiff's trademarks were obtained through fraudulent concealment** and **strategic case framing, misleading both the USPTO and the District Court.**

- The **Plaintiff's use of litigation to expand its trademark rights beyond their lawful scope must be subject to heightened scrutiny.**

- The **District Court failed to apply the proper likelihood of confusion test under** *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642 (6th Cir. 1982), and ignored **fair use defenses that should have been dispositive.**

## 3. Equitable Relief and Injunctive Measures (Abuse of Discretion)

**The issuance of injunctive relief is reviewed for an abuse of discretion.** See *Bluegrass Marine, Inc. v. Galena Road Gravel, Inc.*, 211 F.3d 1266 (6th Cir. 2000).

- The **District Court improperly converted a preliminary injunction into a permanent injunction without conducting a proper legal analysis.**

- The **injunction unlawfully expanded Plaintiff's trademark rights beyond those contemplated by statute, preventing Appellant from exercising his constitutional and common-law rights.**

- **Injunctive relief cannot be used to suppress legitimate speech or restrain an individual's ability to use their own honorific title.**

## 4. Constitutional Interpretations and Judicial Discretion (De Novo & Abuse of Discretion Review)

**Issues of constitutional interpretation are reviewed de novo.** See *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005).

**Judicial discretion in sanctioning a litigant is reviewed for abuse of discretion.** See *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002).

- The **court's failure to apply proper constitutional analysis in penalizing Appellant for using the "™" symbol was a clear legal error.**

- The **sanctions imposed against Appellant were grossly disproportionate and unsupported by factual findings, constituting an abuse of discretion.**

- The **District Court's refusal to scrutinize Plaintiff's misconduct while penalizing Appellant for protected speech evidences judicial bias.**

## 5. Whistleblower Protections and SLAPP Retaliation (De Novo Review)

**Whistleblower retaliation claims must be reviewed de novo to ensure full statutory protections.** See *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 356 (1995).

- **Plaintiff's lawsuit was a retaliatory SLAPP suit filed one month after Appellant petitioned the Governor regarding HOKC's financial and governance practices.**

- **The District Court failed to acknowledge Appellant's whistleblower status, disregarding key evidence, including his disclosures to the Kentucky Governor.**

- **The court's refusal to consider this as a factor in its rulings requires de novo scrutiny to prevent a chilling effect on future whistleblowers.**

27

## 6. Interpretation of Agreements and Settlements (De Novo Review)

**The interpretation of contracts, including settlement agreements, is reviewed de novo.** See *United States v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003).

- **The Agreed Permanent Injunction ("API") was improperly interpreted by the District Court, expanding its scope beyond what was negotiated during the settlement process.**

- **The District Court disregarded contractual language that provided Appellant with fair-use rights, violating well-established principles of contract interpretation.**

**Conclusion**

**This appeal requires heightened appellate scrutiny due to the fundamental legal and due process errors at issue resulting in the District Court's final Memorandum Opinions and Orders imposing harsh sanctions on the Defendant resulting in the loss of his livelihood .**

- **De novo review is warranted for constitutional violations, due process errors, fraudulent trademark claims, and contract misinterpretation.**

- **Abuse of discretion review applies to improper injunctive relief and excessive sanctions.**

This Court must **engage in a thorough de novo analysis** to ensure that the **District Court's failures are corrected and that justice is restored.**

28

# SUMMARY OF THE ARGUMENT

The District Court's rulings in this case represent **a fundamental breakdown of due process, judicial neutrality, and the correct application of trademark law.** At its core, this case is not merely about a dispute over an Agreed Permanent Injunction but rather **a judicially enabled scheme of fraud, trademark bullying, and retaliatory litigation.**

While this appeal highlights the most egregious legal errors—including the court's **failure to follow its own binding precedent, its unconstitutional prior restraint on speech, its overreach in regulating trademark symbols, and its wrongful award of excessive attorneys' fees**—the reality is far worse. This case is riddled with **gross procedural missteps, willful blindness to fraud, and unchecked judicial hubris** that enabled Plaintiff to misuse the courts as a weapon of censorship and economic coercion.

First, the District Court **ignored its own binding precedent** in *Honorable Order of Kentucky Colonels v. Building Champions, 345 F. Supp. 2d 716 (W.D. Ky. 2004),* which had already determined that **Plaintiff does not have exclusive ownership over "Kentucky Colonel" beyond its registered trademarks.** By disregarding this precedent, the court **granted Plaintiff an unjustified monopoly over a historic and honorific term**—one that has been used freely in Kentucky for more than a century. This is **a textbook example of judicial deference gone too far**.

Second, the District Court **failed to rule on Defendant's Motion for Recusal before issuing substantive decisions**, directly violating *United States v. Sammons, 918 F.2d 592, 599 (6th Cir. 1990)*, which requires that **recusal motions be resolved first to prevent the appearance of**

**bias.** Instead, the court pushed forward with its rulings, **effectively invalidating them before they were even issued.**

Third, the District Court **imposed an unconstitutional prior restraint on speech** in violation of the **First Amendment**, barring Defendant from using common words and historical references that extend beyond Plaintiff's actual trademarks. *Matal v. Tam, 582 U.S. 218 (2017),* makes it clear that **trademark law cannot be weaponized to silence speech**—yet the District Court's injunction does exactly that. The ruling is **not just legally unsound—it is an outright censorship order under the guise of trademark protection.**

Fourth, the District Court **exceeded its authority under the Lanham Act by penalizing Defendant for using the common-law "™" symbol,** despite *15 U.S.C. § 1125(a)* placing **no restrictions on its use.** The Lanham Act only regulates the **(®) symbol under 15 U.S.C. § 1111**, making the District Court's ruling **a dangerous and unprecedented expansion of judicial power into areas Congress has never authorized.**

Fifth, the District Court **wrongfully awarded nearly $97,000 in attorneys' fees** against Defendant without conducting the required inquiry into his **financial ability to pay**, violating *Garner v. Cuyahoga Cnty. Juv. Ct., 554 F.3d 624, 643 (6th Cir. 2009)*. The fees were not only **excessive** but appear to be **retaliatory in nature, designed to financially cripple a whistleblower who has exposed Plaintiff's fraudulent conduct.**

Finally, the District Court **improperly reopened a case that had been dismissed under res judicata**, failing to conduct **even a minimal review of Defendant's pleadings and pending motions before enforcing an injunction based on an agreement that Plaintiff itself failed**

**to honor.** This is not just **an abuse of discretion**—it is **an abandonment of fundamental fairness.**

Beneath these errors lies **a much darker reality**: Plaintiff has engaged in **a pattern of fraudulent misrepresentations before the USPTO and the courts**, using this lawsuit to **bully and silence Defendant** rather than to protect any legitimate trademark rights. The courts have a duty to prevent **trademark law from being weaponized as an instrument of fraud, suppression, and economic warfare.** The District Court failed in that duty, and this Court must correct that failure.

For these reasons, Defendant respectfully requests that this Court **vacate the injunction, reverse the erroneous findings, and remand with instructions to correct these due process violations.**

# ARGUMENT

The **role of this Court is not merely to review, but to rectify**—to ensure that **fundamental rights are not trampled by procedural missteps, judicial bias, or corporate overreach cloaked in legal formalities.** Cases involving **constitutional rights, due process violations, and the abuse of intellectual property laws require the highest level of scrutiny—de novo review—to correct the injustices imposed at the lower court level.** See *Doe v. Am. Nat'l Red Cross*, 926 F.3d 827, 835 (6th Cir. 2019) (holding that de novo review is required where constitutional issues and procedural violations are at stake); *Taubman Co. v. Webfeats,* 319 F.3d 770 (6th Cir. 2003) (de novo review applied in intellectual property disputes implicating free speech).

This appeal is not simply about **an improperly revived case** or **a misapplied trademark injunction**—it is about **the deliberate concealment of material facts, procedural maneuvering to suppress a competitor, and the systemic denial of due process to a pro se litigant.** Defendant-Appellant **Col. David Wright**, a **longtime donor, volunteer, and advocate for the Kentucky Colonel tradition**, has been unjustly targeted and wrongfully sanctioned. The **Plaintiff's misuse of the legal system—filing a SLAPP suit to silence protected speech and expanding its trademark rights through litigation rather than legitimate commerce—cannot be overlooked by this Court.**

At the core of this appeal lies a **fundamental deception**—the Plaintiff's attempt to **rewrite history by claiming exclusive ownership over a term it neither created nor originally controlled.** The Plaintiff's own **prior admissions, coupled with extensive documentary**

evidence, confirm that **"Kentucky Colonels" was a widely used descriptor in the public domain** before Plaintiff ever sought to monopolize it through trademark registrations. See *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915 (6th Cir. 2003) (holding that generic and descriptive terms cannot be monopolized as trademarks without secondary meaning). Appellant's **historical use of the term online, his compliance with a 2001 cease-and-desist letter under protest, and his subsequent reestablishment of an educational and social network for Kentucky Colonels demonstrate that the Plaintiff's claims are both factually and legally unsupportable.**

Moreover, **the Plaintiff strategically withheld material information from the District Court—its prior relationship with Colonel Wright, its knowledge of his work, and its own internal discussions regarding a potential merger**—all in an effort to **manufacture a litigation narrative portraying Appellant as an infringer rather than a legitimate participant in the Kentucky Colonel tradition.** The **timing of the Plaintiff's trademark applications, filed mere days before initiating litigation, further reveals its bad-faith motives and abuse of process.** See *42 U.S.C. § 1983* (protecting individuals from retaliatory legal actions that infringe on constitutional rights).

This Court now faces a choice: **affirm a deeply flawed ruling that emboldens trademark bullying, judicial bias, and the suppression of protected speech, or apply *de novo* review to restore justice and reaffirm the principles of fairness, equity, and constitutional integrity.** The arguments that follow expose the **factual manipulations, legal misapplications, and due process violations that demand appellate intervention.**

# I. The District Court Violated Due Process by Failing to Rule on Defendant's Recusal Motion Before Issuing Substantive Orders

A foundational principle of judicial integrity is that a judge must dispose of all recusal motions before making further substantive decisions in the case. See *United States v Sammons*, 918 F2d 592, 599 (6th Cir 1990). Defendant filed a recusal request as part of his motion practice with **Motion for Leave [DE-127]** and **Motion to Stay [DE-128] (motions with no page numbers assigned)**, warning the District Court that refusing to address judicial bias and the proper procedural consideration of his motions would compromise due process without the court's impartiality. Nonetheless, the court proceeded issuing adverse rulings—culminating in its **Memorandum Opinion and Order [DE 129 at PageID #3714–3716]**—without first deciding on the recusal request. Such a process erodes any assurance of impartiality and is contrary to **Sammons**, which makes clear that ruling on recusal is a threshold requirement—a direct violation of **Sixth Circuit and Supreme Court precedent.**

## A. Sixth Circuit Precedent Requires That Recusal Motions Be Decided Before Any Further Rulings

**United States v. Sammons**, 918 F.2d 592, 599 (6th Cir. 1990) is clear (holding that a judge must decide a recusal motion before issuing substantive rulings, as failure to do so taints the fairness of proceedings), the Sixth Circuit held that **a trial court must decide a motion for recusal before issuing any substantive rulings.** This requirement exists to **preserve due process and ensure the fairness of judicial proceedings.** If a judge **fails to rule on recusal before taking further action, any subsequent decisions are tainted by the unresolved conflict of interest.**

Here, Defendant filed a **Motion for Continuance** with an **embedded motion for recusal** in the context of **[DE-128]** (*original filing not page-stamped by the court in RECAP*). Therefore, see **Defendant's Motion For Continuance, Time Extension, and/or Stay [DE-170-6, PageID #: 4194]**, which was based on Defendant's apprehensive **perception of bias, procedural irregularities, and judicial favoritism** toward Plaintiff. This motion served as a **warning** about the **procedurally incorrect** proceedings being held **without the equity earned upon entering the Agreed Dismissal Order and Agreed Permanent Injunction.**

Instead of addressing this motion, Judge Jennings **denied it outright** along with other "various motions" in **[DE-129, PageID #: 3715]**. These motions had previously been **held in abeyance** (**[DE-118, PageID #: 3499]**; **[DE-119, PageID #: 3503]**). The court **provided no discussion or genuine consideration** of these motions or the recusal request by the Defendant before rejecting them. Judge Jennings stated in **[DE-129, PageID #: 3714 - 3715]**, "Wright moved the Court "to Take Judicial Notice of Adjudicative Facts" [DE 103], to dismiss the complaint [DE 104], to hold HOKC in contempt and to expedite consideration of this matter [DE 113], again to "Dismiss SLAPP Action" [DE 116], for leave to move to stay [DE 127], and to stay the case. [DE 128] … and DENIES Wright's various motions [DE 103; DE 104; DE 116; DE 127; DE 128]." The denial of due process and procedural impropriety of placing these motions in abeyance is surmounted by a direct request to hear an emergency motion presented on April 25, 2023 prior to commencement of a hearing.

Judge Jennings then continued to preside over the case and issued substantive rulings, including an **erroneous interpretation of the Preliminary Injunction** from **[DE-58, PageID #: 1235–1236]**. She improperly treated this **pre-settlement August 13, 2020 order** as

controlling, rather than applying the **Agreed Permanent Injunction (API) [DE-93, PageID #: 2058]**, which **expressly provided equity for Defendant in §5 earned in settlement.**

Her **Memorandum Opinion and Order ([DE-129, PageID #: 3718–3719]**) *selectively quoted* the API as if it were the Preliminary Injunction because it **failed to incorporate its equity provision defining the Defendant in §5, showing clear deference to Plaintiff's petitions.** This resulted in findings of **contempt, trademark infringement, and sanctions**, culminating in a **Memorandum Opinion and Order ([DE-138]**) *imposing attorneys' fees and financial judgment against Defendant.*

By failing to rule on the recusal motion and the Defendant's other motions before issuing these orders and mistaking the two injunctions, **the District Court fundamentally compromised the legitimacy of its own decisions as biased and lacking due process.** Under *Sammons*, the appropriate remedy is to **vacate these all of Judge Jennings rulings and remand the case to a new judge for reconsideration.**

## B. The District Court's Rulings Show a Pattern of Bias and Judicial Hubris

Beyond the procedural failure to address the recusal motion, **the District Court's rulings themselves demonstrate an unmistakable pattern of bias.**

The District Court displayed **clear judicial bias** and **procedural irregularities** that deprived the Defendant of a fair hearing. The judge **misunderstood** key legal issues of the case yet continued to acknowledge the Plaintiff as an owner of the Kentucky Colonel Title as their name (in authority) not the trademark, as evidenced by her statement:

COURT: *"And my understanding is the Kentucky Colonel is you-all, correct?"*

MR. CORYELL: "*That is our protected mark.*" **Contempt Hearing Transcript [DE-122, Page ID #3575]**.

This demonstrates that the judge lacked a fundamental understanding of the **trademark distinctions at the center of this case, as well that "Kentucky Colonel" is not a trademark but a title created by the state, and the Plaintiff helped along**. Despite this, she **ignored Defendant's objections** and **rubber-stamped Plaintiff's claims**, leading to an unlawful injunction and hubris judicial position.

Furthermore, the court systematically **refused to consider Defendant's motions** before ruling on substantive issues. At the **April 25, 2023 hearing**, the judge explicitly prioritized Plaintiff's evidence over Defendant's due process rights when presented with a timely **"Emergency Motion and Reply"** she talked about little housekeeping and said: *"There are several motions that the court has before it... but before we get into really any of the other motions, I want to make sure we get through [Plaintiff's] evidentiary issues first."* **[DE-121, Page ID #3508]**.

This is a **textbook due process violation**, as a court **must fairly consider all parties' motions** before ruling on or hearing other substantive matters, all of the Defendant's motions were later placed in abeyance (as previously stated) at the request of the Plaintiff, another reversible error. Then **failure to address the Defendant's final motion [DE-128] here as [DE 170-6 PageID #: 4194] with the incorporated recusal motion before issuing adverse rulings** is a **clear legal error requiring reversal**. See *Liteky v. United States*, 510 U.S. 540 (1994) (holding that judicial bias warrants reversal when it demonstrates favoritism or antagonism beyond judicial rulings themselves).

Even more troubling, Plaintiff's **fraudulent trademark claims** were brought to the court's attention in Defendant's Motions but ignored. As detailed in Defendant's **Rule 11 Notice [DE-169, Page ID #4092]**, Plaintiff obtained its trademarks through **misrepresentation and omission of concurrent users**, which is **grounds for cancellation** under *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009). The District Court had a **duty to address this fraud before enforcing an overbroad injunction to restrain his speech**, yet it failed to do so.

Given these substantial procedural violations, the District Court's decision should be **reversed**, as it was based on a **misapplication of law, bias in favor of Plaintiff, a misinformed judge, judicial overreach, and an unconstitutional prior restraint on speech**, all of which are clear grounds for this appeal.

Some of the other most **egregious examples** (but are not limited to) include:

1. **Ignoring Binding Precedent from the Same Court** – The District Court **refused to recognize its own ruling in** *HOKC v. Building Champions*, 345 F. Supp. 2d 716 (W.D. Ky. 2004)**,** which explicitly held that Plaintiff does **not** have exclusive rights over the term "Kentucky Colonel." Instead of applying this precedent, the court **rubber-stamped Plaintiff's claims without question.**

2. **Expanding Plaintiff's Trademark Rights Beyond Statutory Registered Marks** – The District Court **enforced an injunction covering mere trademark applications,** which **have no enforceable rights under the Lanham Act.** This judicial overreach improperly granted Plaintiff **a monopoly over a historical term that belongs in the public domain.**

38

3. **Denying Defendant's Right to Fair Notice and a Meaningful Defense** – Defendant was subjected to **rushed hearings, an emergency ex-parte TRO without proper notice prejudicing the Court, and an injunction hearing that was "taken under advisement" before even allowing Defendant to respond.** These procedural maneuvers **gave Plaintiff an unfair advantage and created a prejudicial presumption of merits against Defendant before the case was even heard.**

4. **Allowing Plaintiff to Commit Fraud Upon the Court Without Consequence** – The District Court **ignored evidence that Plaintiff submitted false information to the USPTO and misrepresented its rights to the court.** Defendant submitted **judicially noticeable public records disproving Plaintiff's claims, yet the court refused to acknowledge them.** The court's failure to act on these misrepresentations or scrutinize the record independently **raises serious questions about its impartiality.**

*Federal courts have repeatedly held that a judge's failure to resolve recusal before ruling is grounds for vacatur. See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

## C. The Law Demands Reversal When a Judge Ignores a Recusal Motion and Continues to Rule

The Supreme Court has repeatedly emphasized that **judicial neutrality is essential to due process.** In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) (holding that even the appearance of bias requires recusal where there is a significant risk of actual bias undermining due process)**.** Here, the facts go far beyond mere appearance—**Judge Jennings actively ruled on matters affecting Defendant's rights while refusing to address her own bias.**

The only proper remedy for such a **gross violation of judicial fairness** is for the 6th Circuit to:

1. **Vacate all substantive rulings made by Judge Jennings after Defendant filed the Motion for Recusal.**

2. **Remand the case with instructions for a new judge to reconsider all motions fairly.**

3. Additionally, where a recusal motion is ignored and substantive rulings are issued, appellate courts have vacated decisions and remanded for reconsideration. See *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (vacating decision where judge should have recused but continued ruling on the case).

This Court must act to protect **the integrity of judicial proceedings** and **ensure that litigants receive fair and impartial treatment.**

## II. The District Court Committed Reversible Error by Ignoring Its Own Binding Precedent in HOKC v. Building Champions (2004)

A core principle of American jurisprudence is **consistency in legal rulings within the same jurisdiction**. When a **district court fails to follow its own binding precedent, it not only undermines judicial integrity but also creates an arbitrary and unpredictable legal system.** That is exactly what happened here.

The Western District of Kentucky **previously ruled in** *The Honorable Order of Kentucky Colonels v. Building Champions*, 345 F. Supp. 2d 716 (W.D. Ky. 2004) (holding that Plaintiff's rights in its "Kentucky Colonels" Mark extend only to its specific registered trademarks and do not prevent others from using the name). **This concludes Plaintiff does not have exclusive**

ownership over the honorary title "Kentucky Colonel" beyond its specifically registered trademarks. That decision **remains controlling precedent** for this case. Yet, the District Court completely ignored it, **wrongfully expanding Plaintiff's claimed rights well beyond what the Lanham Act allows, permitting the Plaintiff to seek complete domination of the phrase as if it were their own arbitrary creation.**

## A. Binding Precedent From the Same Court Cannot Be Ignored Without Justification

The Sixth Circuit has made clear that **a district court must follow its own precedent unless there is a compelling reason to depart. Judicial consistency is a cornerstone of the rule of law.** A District Court cannot disregard its own prior rulings without justification. *See Johnston v. Borders*, 36 F.4th 692, 699 (6th Cir. 2022) ("[C]onsistency in district court rulings promotes fairness and prevents arbitrary decision-making."). Yet, here, the District Court's Judge Jennings acted as if *Building Champions* never existed.

In *Building Champions*, the Western District of Kentucky **explicitly rejected** the notion that Plaintiff could monopolize the term "Kentucky Colonel." Instead, the court ruled that **Plaintiff's rights extended only to its specific registered trademarks, not to the general use of the title.** That decision directly contradicts the District Court's holding in this case.

**A district judge does not have the discretion to disregard controlling precedent from the same court without justification.** Yet, here, the District Court acted as if *Building Champions* did not exist. This failure constitutes **a reversible legal error** that demands correction.

41

## B. The District Court Expanded Plaintiff's Trademark Rights Beyond Their Legal Limits

By ignoring *Building Champions*, the District Court **granted Plaintiff trademark rights it does not possess under the law Memorandum Opinion and Order [DE-129, Page ID #3718-3719].** This is not merely a misinterpretation—it is a judicial expansion of Plaintiff's rights without any legal foundation or diligence. Defendant explicitly raised this issue in filings before the District Court, but the court refused to engage with the controlling precedent. *See* **[DE-169, PageID #: 4092]** (noting that Plaintiff's trademark claims were "fraudulently expanded" beyond their statutory limits). This refusal to consider relevant precedent is grounds for reversal. *See Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991) ("A court's failure to apply controlling precedent is a reversible legal error.").

Specifically, the court:

1. **Extended the injunction to cover terms beyond Plaintiff's registered trademarks**—including **historical and descriptive uses of "Kentucky Colonel" that Plaintiff has no legal claim over.**

2. **Restricted Defendant's ability to use common references to the honorary title "Kentucky Colonel," even in contexts that do not create consumer confusion.**

3. **Granted an effective monopoly over a phrase that has been in the public domain for nearly a century.**

This overreach is a **clear violation of the Lanham Act** and **contrary to fundamental trademark principles**. Trademark law does not provide a monopoly over words themselves.

The Lanham Act only protects specific commercial uses of a mark and does not extend to historical or descriptive uses. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004) (holding that the burden of proving likelihood of confusion rests with the plaintiff and that trademark law does not create an exclusive right over common words).

By allowing Plaintiff to **expand its claims far beyond its actual trademarks**, the District Court **misapplied trademark law and wrongly suppressed lawful descriptive fair use.**

## C. The Failure to Follow Building Champions Requires Reversal

When a district court disregards controlling precedent, appellate courts must correct the error. See *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991) (holding that failure to apply binding precedent constitutes reversible legal error that undermines judicial integrity). Sixth Circuit precedent makes clear that a district court's failure to apply its own binding rulings is a **fundamental legal error** requiring reversal. *See U.S. v. Hardin*, 539 F.3d 404, 416 (6th Cir. 2008) (holding that failure to adhere to established precedent "deprives the decision of legal legitimacy"). The District Court's ruling here is not just incorrect—it undermines the stability of the law itself, as well as future cases.

The Court should:

1. **Reverse the injunction because it misapplied trademark law and disregarded binding precedent.**

2. **Remand with instructions to apply *Building Champions*, limiting Plaintiff's trademark rights to its registered marks.**

3. **Clarify that Plaintiff cannot use trademark law to control historical terms used in the public domain.**

The District Court's decision is **legally unsound, procedurally unjust, and fundamentally inconsistent with prior rulings from the same jurisdiction.** The Sixth Circuit must correct this error.

## III. The District Court's Injunction Constitutes an Unconstitutional Prior Restraint on Speech

The injunction issued by the District Court is not just **legally flawed**—it is **blatantly unconstitutional**. By prohibiting Defendant from using the term "Kentucky Colonel" in any capacity beyond Plaintiff's approval, the court **violated Defendant's First Amendment rights** and imposed an **unlawful prior restraint on speech.**

Under *Matal v. Tam*, 582 U.S. 218, 223 (2017) (holding that trademarks cannot be used to restrict expressive speech), the Supreme Court made clear that **trademark law cannot be used to suppress expressive speech.** Yet, the District Court's orders **directly contradict this very principle** by extending Plaintiff's purported trademark rights beyond their lawful scope and infringing upon Defendant's ability to engage in historical, cultural, and political discourse.

### A. The Injunction Prohibits Lawful Expression in Violation of the First Amendment

The District Court's restrictions on Defendant's speech went beyond the permissible scope of trademark enforcement, amounting to an unconstitutional prior restraint. At the **May 9, 2023**

**hearing**, the judge made clear that she viewed Plaintiff's trademark rights as a **justification for silencing Defendant's speech altogether**, stating:

**MR. WRIGHT:** *.. I'm asserting petition clause immunity arguing that the claimed concerns is conduct protected under the First Amendment under the Noerr-Pennington doctrine..*

**THE COURT:** Judge Jennings, *"But that's a -- Mr. Wright, that is a legal argument and before the legal arguments come the discovery. So the first thing that happens is discovery in a civil case and then comes the argument. "* **Transcript [DE-122, PageID #: 3562]**

This statement alone demonstrates that the court **disregarded fundamental First Amendment concerns** and ruled purely to enforce Plaintiff's claims, even at the expense of constitutionally protected expression by a Defendant admitted to the Court as a *pro-se defendant*, ordered to appear as a witness against himself.

The **First Amendment forbids government-imposed restrictions on speech based on viewpoint or content.** See *Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015)* ("A law that is content-based on its face is subject to strict scrutiny regardless of the government's benign motive or content-neutral justification.").

Here, the District Court's injunction **imposed a sweeping restriction** on Defendant's legitimate right and ability to:

1. **Use the phrase "Kentucky Colonel" in any context** beyond Plaintiff's narrowly defined approval.

2. **Discuss, write about, or educate the public on the history and cultural significance of the title, Kentucky Colonel.**

3. **Engage in lawful expressive activities, including the creation of historical materials, websites, formation of peer groups, and digital forums related to the idea of Kentucky Colonelcy.**

By enforcing an injunction that **restricts expressive conduct related to a public historical title**, the District Court **acted as an agent of censorship rather than as a neutral arbiter of trademark law.**

## B. The Supreme Court Has Rejected Efforts to Use Trademark Law to Censor Speech

In *Matal v. Tam*, 582 U.S. 218, 223 (2017), the Supreme Court struck down the **USPTO's prohibition on "disparaging" trademarks**, holding that **trademark law cannot be used to suppress speech based on content.** The Court recognized that **trademarks, by their nature, involve speech and expression**, and restrictions on them must be subjected to heightened constitutional scrutiny.

Similarly, in *Iancu v. Brunetti*, 588 U.S. 388 (2019), the Supreme Court reaffirmed that **trademark law cannot be used as a vehicle for content-based speech restrictions**. The Court struck down the USPTO's "immoral" and "scandalous" trademark ban because it allowed the government to selectively prohibit speech based on viewpoint. Here, the District Court's injunction **does exactly that**—it **bars Defendant from using a phrase that is part of the historical lexicon simply because Plaintiff disapproves of it.**

The District Court's injunction in this case **goes even further than the unconstitutional provision struck down in *Matal v. Tam*.** Here, the court's order does not simply regulate **a single registered trademark**—it **bans Defendant from using a historical title in any capacity.** This **exceeds any lawful trademark protection** and directly conflicts with *Tam's* holding that **speech restrictions cannot be justified by trademark concerns.**

## C. The Injunction Covers Mere Trademark Applications, Which Have No Legal Effect

Adding to its constitutional defects, the District Court's order **improperly extended to Plaintiff's mere trademark applications**—not just registered trademarks. Under **15 U.S.C. § 1057(c)**, a trademark **application confers no enforceable rights** until registration is granted.

This misapplication of the law was raised before the District Court, yet the judge refused to acknowledge the distinction. **See Defendant's Motion for Recusal of Judge Rebecca Grady Jennings Under 28 U.S.C. §§ 455(A) and 144 [DE-170] and Defendant's Motion for Judicial Notice FRE 201(b)**, where Defendant argues that "pending applications do not confer enforceable rights and cannot serve as the basis for an injunction." Despite this, the court **allowed Plaintiff to enforce a monopoly over a term it had no valid legal claim to own.**

The injunction therefore:

- **Restricts speech based on a legal fiction**, treating unapproved applications as enforceable marks.

- **Gives Plaintiff more rights than the USPTO itself would recognize.**

- **Imposes an unconstitutional speech restriction on Defendant without a valid trademark basis or original claim.**

This expansion **of the Plaintiff's marks was unprecedented** and constitutes **a serious judicial overreach** of the Lanham Act that must be reversed based on fraud.

## D. The Prior Restraint Standard Demands Reversal

A **prior restraint** is any government action that **preemptively restricts speech before it occurs.** The Supreme Court has held that **prior restraints are presumptively unconstitutional** and **subject to the strictest judicial scrutiny.** See *New York Times Co. v. United States, 403 U.S. 713, 714 (1971)* ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."). This injunction is a **textbook prior restraint**, suppressing Defendant's ability to even discuss the history and significance of Kentucky Colonelcy. Courts have **consistently struck down such overbroad restrictions**. *See* 403 U.S. 713 (1971) (holding that prior restraints bear a **"heavy presumption" of unconstitutionality**). An injunction must be **clear, specific, and enforceable** under well-established legal standards. *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (holding that an injunction must describe the prohibited conduct in **"reasonable detail"** to provide fair notice to the enjoined party).

The injunction issued by the District Court **meets every definition of an unconstitutional prior restraint**:

1. It **prohibits Defendant from speaking or publishing certain content.**

2. It **bans the use of a widely recognized historical term for identification.**

3. It **extends beyond trademark law and into general speech regulation.**

Because prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights," **the Sixth Circuit must vacate the injunction and remand the case for reconsideration under the proper constitutional framework.** *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

## E. Remedy: The Injunction Must Be Vacated in Its Entirety

Given that the injunction **was granted in clear violation of the First Amendment**, this Court should:

1. **Vacate the injunction in full**, rather than merely modifying it. Any continued enforcement of this restriction, even in a narrowed form, would perpetuate an unconstitutional restraint on speech. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963) (holding that prior restraints must be "eliminated, not rewritten").

2. **Clarify that trademark law does not provide a basis for suppressing expressive speech.**

3. **Remand with instructions to ensure that any future orders comply with First Amendment protections.**

The District Court's ruling **sets a dangerous precedent for trademark overreach and government censorship.** If allowed to stand, it **would empower trademark owners to silence speech, rewrite history, and suppress competition** under the guise of brand protection. This Court must intervene to prevent **a dangerous expansion of judicial authority into constitutionally protected speech.**

# IV. The District Court's Agreed Injunction Is Void Under the Collateral Bar Doctrine Exception Because It Was Based on a Defunct Preliminary Injunction that was an Unconstitutional Prior Restraint on Speech

## A. The Agreed Permanent Injunction Superseded the Preliminary Injunction and Created Legal Equity for Defendant

The **Preliminary Injunction imposed in 2020 was replaced by the API on February 23, 2021 [DE-93].** Unlike the **one-sided Preliminary Injunction,** the API included **an additional provision (Section 5)** that granted Defendant **the right to engage in expressive, educational, and historical activities related to Kentucky Colonelcy.**

The District Court's continued reliance on the **superseded preliminary injunction** contradicts well-established legal principles of creating trademark injunctions with specificity. Further, courts cannot enforce an expired or replaced order. See *United States v. United Mine Workers*, 330 U.S. 258, 294 (1947) ("A court order issued without jurisdiction or in violation of constitutional rights is void and cannot be enforced."). Yet, here, the judge acted **as if the Preliminary Injunction still controlled the case**, ignoring the legal equity created in the API. ***See* [DE-170-6, PageID #: 4188]** (Defendant noting that the API fully replaced all prior injunctions, nullifying their legal effect).

This provision was **critical to the settlement negotiations and the agreed dismissal of the case.** By **failing to account for the existence of Section 5**, the District Court in [DE-129] improperly **revived an expired injunction that no longer had legal effect** and imposed **restrictions that were expressly negated by the API's final terms.**

Judge Jennings' reasoning in DE-129 reflects **a dangerous "lock-in effect"**—a cognitive bias where a judge fixates on their initial ruling (here, the Preliminary Injunction) **without adjusting to new facts, the settlement or legal developments.** This failure resulted in:

- **The wrongful enforcement of a void order.**
- **The suppression of Defendant's lawful activities that were protected under Section 5 of the API.**

   **A violation of due process by ignoring the equity created through settlement negotiations.**

## B. Under the Collateral Bar Doctrine Exception, the Court's Injunction Is Void and Unenforceable

The **Collateral Bar Doctrine prevents a party from disobeying an injunction and later challenging it**. However, there is a **clear exception**:

This exception applies directly here. Defendant was subjected to an order that was not only outdated but also **facially unconstitutional** under the First Amendment. *See United States v. Hall*, 472 F.2d 261, 265 (6th Cir. 1972) (holding that "an order that exceeds the constitutional limits of judicial power is void and subject to collateral attack"). The Sixth Circuit has repeatedly held that courts **cannot enforce injunctions that violate constitutional protections.**

**An order that is void or unconstitutional is not enforceable, and a party cannot be penalized for violating it.** See *United States v. United Mine Workers,* 330 U.S. 258, 294

(1947) ("A court order issued without jurisdiction or in violation of constitutional rights is void and cannot be enforced.").

Here, Judge Jennings **wrongly assumed that the Preliminary Injunction still controlled** the case, allowing the Plaintiff to **weaponize outdated restrictions** while disregarding the **express equity created by Section 5 of the API.** This **fundamental error voids the court's order under the Collateral Bar Doctrine exception** because:

1. **The Preliminary Injunction was no longer in effect when DE-129 was issued.**

2. **The Agreed Permanent Injunction (API) superseded all prior restrictions and explicitly protected certain uses by Defendant.**

3. **An injunction cannot lawfully suppress speech, association, or historical and educational activities protected by the First Amendment.**

Thus, **Judge Jennings' reliance on a legally void order renders DE-129 unenforceable, and this Court must vacate the ruling in its entirety.**

## C. Court's Cannot Extinguish Constitutionally Protected Rights Through an Injunction

Even if the Preliminary Injunction had remained in place, **no court has the authority to extinguish or control Defendant's inalienable constitutional rights.**

The District Court's enforcement of the injunction **failed to account for the Mediator's Proposal [DE-97.6], which was submitted by Plaintiff and should have controlled the scope of the injunction as it matured into an Agreement when the API was entered into**

**by the parties.** At the **May 9, 2023 hearing**, Judge Jennings openly admitted she was unaware of this critical document:

**THE COURT:** *"I'm not sure what you're referencing to from the mediation. The only thing that comes out of the mediation is the **agreed permanent injunction** which the court entered at the parties' request."*

**MR. WRIGHT:** *"But there's also the agreed—the court mediator's agreement which needs to be understood first in order to keep in context what occurred in the confidential mediation."*

**THE COURT:** *"Okay. The only thing that is of record is the permanent injunction which came out of that mediation. Those are the only—it's the only order on the permanent injunction."*
**Transcript [DE-122, PageID #: 3655]**

This exchange demonstrates that the District Court **ignored a binding agreement that it was required to consider**. The **Mediator's Proposal [DE-97-6, PageID #: 2610-2613] was filed by the Plaintiff itself, yet the court ruled as if it did not exist.** This is a **reversible legal error**. *See Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991) ("A court's failure to apply controlling precedent is a reversible legal error.").\*

**Key Constitutional Principles That the Injunction Violates:**

1. **First Amendment – Right to Speech & Association**

2. **Due Process – Right to Fair Proceedings**

3. **Equal Protection – Prohibiting Selective Enforcement**

Defendant's **creation of an educational cooperative** to share historical and factual information about Kentucky Colonelcy **falls entirely outside the scope of trademark law and cannot be judicially prohibited.** The First Amendment **protects Defendant's right to operate a cooperative, maintain educational resources, and write about Kentucky Colonel history.** No court has the authority to suppress:

- **Public discussions about Kentucky Colonelcy.**
- **Non-commercial historical publications.**
- **An individual's right to associate with others for educational purposes.**

By issuing **an injunction that reaches into these constitutionally protected activities,** the District Court **far exceeded its jurisdiction and issued an order that is unenforceable.**

## D. Remedy: The Injunction Must Be Declared Void *Ab Initio*

Because the **District Court relied on a defunct injunction** and failed to account for **the rights granted to Defendant in the API**, this Court must:

1. **Declare the Preliminary Injunction and the MO&O [DE-129] void *ab initio*,** as they conflict with constitutional protections and were superseded by the API. Courts **cannot enforce an expired order as if it still exists.**

2. **Vacate all orders based on these incorrect premises.**

3. **Remand with instructions for the District Court to apply the correct legal standard and recognize the constitutional limits on injunctive relief.**

Allowing an injunction to **suppress constitutionally protected activities and disregard an agreed settlement undermines the legitimacy of the judiciary itself.** This Court must intervene to restore fundamental fairness.

## IV. The District Court's Injunction Is Void Under the Collateral Bar Doctrine Exception Because It Was Based on a Defunct Preliminary Injunction

### A. The Agreed Permanent Injunction Superseded the Preliminary Injunction and Created Legal Equity for Defendant

The **Preliminary Injunction imposed in 2020 was replaced by the API on February 23, 2021 [DE-93].** Unlike the **one-sided Preliminary Injunction,** the API included **an additional provision (Section 5)** that granted Defendant **the right to engage in expressive, educational, noncommercial, and historical activities related to Kentucky Colonelcy, without using the "Kentucky Colonels Mark" bearing an 'S'. In law, the Plaintiff must and shall demonstrate the mark using the ® symbol in accordance with 15 U.S.C. § 1111 stating, "in any suit for infringement under this chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration."** So the question here may be:

> **"Might the plaintiff be intentionally confusing its registered marks "KENTUCKY COLONELS ®" with the phrase and term "Kentucky Colonels" by leaving the ® symbol off to ambiguate it in the conversation about the Kentucky Colonel and the Kentucky Colonelcy to gain an unfair commercial advantage?"**

This provision granted the Defendant was **critical to the settlement negotiations and the agreed dismissal of the case.** By **failing to account for the existence of Section 5**, the District Court in [DE-129] improperly **revived an expired preliminary injunction that no longer had legal effect** and imposed *greater* **restrictions that were expressly negated by the API's final terms, based solely on a nudge by the Plaintiff.**

Judge Jennings' reasoning in [DE-129] reflects **a dangerous "lock-in effect"**—a cognitive bias where a judge fixates on their initial ruling (here, the Preliminary Injunction) **without adjusting to new facts or legal developments.** This failure resulted in:

1. **The wrongful enforcement of a void order.**

2. **The suppression of Defendant's lawful activities that were protected under Section 5 of the API.**

3. **A violation of due process by ignoring the equity created through settlement negotiations.**

## B. Under the Collateral Bar Doctrine Exception, the Court's Injunction Is Void and Unenforceable

The **Collateral Bar Doctrine prevents a party from disobeying an injunction and later challenging it.** However, there is a **clear exception**:

**An order that is void or unconstitutional is not enforceable, and a party cannot be penalized for violating it.** See *United States v. United Mine Workers, 330 U.S. 258, 294 (1947)* ("A court order issued without jurisdiction or in violation of constitutional rights is void and cannot be enforced.").

The Sixth Circuit has repeatedly held that **an injunction cannot prohibit constitutionally protected activities**. See *United States v. Hall, 472 F.2d 261, 265 (6th Cir. 1972)* (holding that "an order that exceeds the constitutional limits of judicial power is void and subject to collateral attack").

Here, Judge Jennings **wrongly assumed that the Preliminary Injunction still controlled** the case, allowing the Plaintiff to **weaponize outdated restrictions** while disregarding the **express equity created by Section 5 of the API.** This **fundamental error voids the court's order under the Collateral Bar Doctrine exception** because:

1. **The Preliminary Injunction was no longer in effect when DE-129 was issued.**

2. **The Agreed Permanent Injunction (API) superseded all prior restrictions and explicitly protected certain uses by Defendant.**

3. **An injunction cannot lawfully suppress speech, association, or historical and educational activities protected by the First Amendment.**

Thus, **Judge Jennings' reliance on a legally void order renders DE-129 unenforceable, and this Court must vacate the ruling in its entirety.**

---

## C. Court's Cannot Extinguish Constitutionally Protected Rights Through Injunctions

Even if the Preliminary Injunction had remained in place, **no court has the authority to extinguish, control or dominate Defendant's inalienable constitutional rights.**

57

**Key Constitutional Principles That the Injunction Violates:**

1. **First Amendment – Right to Speech & Association**

2. **Due Process – Right to Fair Proceedings**

3. **Equal Protection – Prohibiting Selective Enforcement**

Defendant's **creation of an educational cooperative** to share historical and factual information about Kentucky Colonelcy **falls entirely outside the scope of trademark law and cannot be judicially prohibited.** The First Amendment **protects Defendant's right to operate a cooperative, maintain educational resources, and write about Kentucky Colonel history.** No court has the authority to oppress or suppress:

- **Public discussions about Kentucky Colonelcy.**
- **Non-commercial historical publications.**
- **An individual's right to associate with others for educational purposes.**

By issuing **an injunction that reaches into these constitutionally protected activities,** the District Court **far exceeded its jurisdiction and issued an order that is unenforceable on its face.**

## D. Remedy: The Injunction Must Be Declared Void Ab Initio

Because the **District Court relied on a defunct injunction** and failed to account for **the rights granted to Defendant in the API**, this Court must:

1. **Declare the Preliminary Injunction and the MO&O [DE-129] void ab initio** as they conflict with constitutional protections.

2. **Vacate all orders based on these incorrect premises.**

3. **Remand with instructions for the District Court to apply the correct legal standard and recognize the constitutional limits on injunctive relief.**

Allowing an injunction to **suppress constitutionally protected activities and disregard an agreed settlement undermines the legitimacy of the judiciary itself.** This Court must intervene to restore fundamental fairness.

## VI. The District Court's Fundamental Misunderstanding of Trademark Law Resulted in Judicial Overreach and an Unlawful Expansion of Plaintiff's Rights

The **Plaintiff has a registered trademark for "KENTUCKY COLONELS" (plural)**—but the **honorary title "Kentucky Colonel" (singular) is a public designation granted by the Commonwealth of Kentucky, not a trademark.** The District Court **completely ignored this distinction**, allowing Plaintiff to weaponize **its narrow trademark rights it had for products bearing its logo into an unconstitutional monopoly over a publicly recognized title.**

This legal error is **not a minor mistake**—it is **a fundamental misapplication of trademark law** that directly contradicts **the Lanham Act, fair-use doctrine, and decades of case law limiting the scope of trademark rights.**

### A. The Difference Between a Title and a Trademark Matters

**Key Legal Principles Plaintiff Ignored (And the Judge Failed to Recognize):**

1. **A "Kentucky Colonel" is a title of distinction granted by the state, not a private trademark, it is awarded to individuals based on their deeds.**

59

2. **A trademark does not grant ownership over a word or phrase—only its commercial use in a specific context.** See *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004)* ("The burden of proving likelihood of confusion rests with the plaintiff.").

3. **Fair-use doctrine allows the descriptive use of terms in historical, cultural, and non-commercial contexts.** See *Sunmark, Inc. v. Ocean Spray Cranberries, Inc., 64 F.3d 1055, 1058 (7th Cir. 1995)* (trademark law does not prohibit descriptive use of words in their ordinary meaning).

Instead of applying these principles, **Judge Jennings simply assumed without scrutiny that Plaintiff's trademark ownership of "KENTUCKY COLONELS" for products since 2003 gave them exclusive rights over the phrase in all contexts.** This **contradicts established law and must be reversed.**

## B. Plaintiff Used This Trademark Confusion to Engage in Trademark Bullying and Suppress Fair Use

Plaintiff has a long history of **trademark bullying**—using its registered mark as a weapon to silence legitimate, fair uses of "Kentucky Colonel."

**Evidence of Plaintiff's Trademark Abuse:**

- **Plaintiff has repeatedly filed or threatened SLAPP litigation** against individuals and organizations that use "Kentucky Colonel" descriptively, see the TTAB database.

- **Plaintiff has opposed legitimate trademark applications** at the USPTO, not to protect its own brand, but to block descriptive and historical uses by others for activities and products it does not produce.

- **Plaintiff has misrepresented its trademark scope** to courts, claiming exclusive rights over "Kentucky Colonel" despite legal precedent limiting such claims.

The District Court **blindly accepted Plaintiff's exaggerated trademark right claims**, reinforcing **a pattern of anti-competitive behavior that is exactly what trademark law was designed to prevent.**

## C. The District Court's Ruling Violates the Fair-Use Doctrine and Encourages Over-Enforcement

**Under fair-use principles, Defendant has every right to use the term "Kentucky Colonel" in a descriptive or historical manner.**

- **Descriptive fair use**: Defendant's **non-commercial use of "Kentucky Colonel" for educational and historical purposes is legally protected.**

- **Nominative fair use**: Defendant **must be able to reference "Kentucky Colonel" to describe and educate others on its historical significance.** See *New Kids on the Block v. News America Pub., Inc., 971 F.2d 302 (9th Cir. 1992)* (holding that nominative fair use is protected when a trademarked term is the only way to refer to something).

The **Lanham Act does not permit a trademark owner to prohibit fair use**—yet **Judge Jennings' ruling effectively criminalizes Defendant's right to discuss Kentucky Colonelcy.** This **creates an unconstitutional restriction on speech and commerce** and must be reversed.

## D. Remedy: This Court Must Reverse the District Court's Trademark Misinterpretation and Recognize Defendant's Right to Fair Use

**This Court should:**

1. **Clarify that Plaintiff's trademark rights extend only to "KENTUCKY COLONELS ®" as a brand, not the public title "Kentucky Colonel" or the public domain term "Kentucky Colonels."** *See:* **Defendant's Motion for Judicial Notice FRE 201(b) [DE-170, PageID #: 4212-4467].**

2. **Reverse any restrictions on Defendant's fair-use right to reference and discuss "Kentucky Colonel," "Kentucky Colonels," and "Kentucky Colonelcy" in educational, informative, noncommercial, and historical contexts.**

3. **Prevent further abuse of trademark law by ensuring that Plaintiff cannot misrepresent its rights to suppress competition and public discourse by ambiguating its trademarks in the public conversation strategically without the use of the "®" symbol .**

## V. The District Court Exceeded Its Authority by Penalizing Defendant for Using the Common-Law "™" Symbol, Which Is Not Regulated or Controlled by the Lanham Act or the Court

### A. The Unregulated "™" Trademark or Title Mark Symbol Is a Common-Law Designation That Requires No Registration

The District Court's ruling **demonstrates a fundamental misunderstanding of trademark law** by penalizing Defendant for using the **common-law "™" symbol** in reference to "Kentucky Colonel." This ruling is **legally unsound because the Lanham Act does not regulate or prohibit the use of "™."**

**The Legal Facts About the "™" Symbol:**

- **The "™" symbol is not governed by federal trademark law.**

- **Any party can use "™" without registering a trademark—it simply indicates a claim to common-law rights to a name, concept, or idea.**

- **No one has standing in Federal Court to take someone else to court or bring a lawsuit against another for the use of the ™ symbol.**

- **Only the (®) symbol is regulated under 15 U.S.C. § 1111, which applies exclusively to federally registered marks.**

**By penalizing Defendant finding him to be infringing for using "™," the District Court exceeded its judicial authority, imposing a restriction that Congress never enacted.**

## B. Federal Law Governs the (®) Symbol, Not "™"

The Lanham Act **only** provides enforcement mechanisms for **improper use of the (®) symbol** (which signifies a federally registered trademark), under **15 U.S.C. § 1111**:

> "A registrant may give notice that a mark is registered by displaying with the mark the words 'Registered in U.S. Patent and Trademark Office' or 'Reg. U.S. Pat. & Tm. Off.' or the letter R enclosed within a circle (®)."

This statute **explicitly limits** enforcement to the (®) symbol, meaning that **courts do not have the power to impose penalties for the use of "™."**

- **Since the Lanham Act does not regulate "™," the District Court had no legal basis to penalize Defendant for its use.**

- **Any restriction on the use of "™" is an abuse of discretion and must be reversed.**

## C. The District Court's Ruling Creates a Dangerous, Unprecedented Expansion of Trademark Law

If the District Court's ruling is allowed to stand, **it will create a dangerous precedent that empowers courts to police private trademark claims without statutory authority. The Court has made a very clear error here.**

**The danger of this ruling:**

- **It would give trademark owners the ability to weaponize common-law designations against competitors.**

- **It would allow courts to enforce rights that Congress never granted.**

- **It would create judicial uncertainty, allowing judges to make subjective rulings on non-regulated symbols.**

The **Sixth Circuit has repeatedly rejected judicial expansion of trademark law beyond what Congress intended.** See *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc., 931 F.2d 1100, 1105 (6th Cir. 1991)* ("Federal courts do not have the authority to create new trademark laws beyond the scope of the Lanham Act.").

## D. The District Court's Order Must Be Reversed Because It Lacks Any Basis in Trademark Law To Find Infringement based on the Use of Indicia

A ruling that **penalizes conduct which is not prohibited by statute is void ab initio.** See *United States v. Lopez, 514 U.S. 549, 566 (1995)* (holding that **courts must act within the boundaries of statutory authority**).

Because **there is no federal law that prohibits the use of "™,"** the District Court's decision

must be **vacated in its entirety.**

**This Court should:**

1. **Reverse any penalties or restrictions imposed on Defendant for using "™."**

2. **Clarify that common-law trademark designations are not subject to judicial regulation under the Lanham Act.**

3. **Remand with instructions to ensure that future rulings comply with statutory authority before a justice experienced with trademarks, alternatively the Circuit Court can remand this case before the Trademark Trial and Appeal Board based on the District Court's lack of competent authority in this case.**

## VI. The District Court's Finding of Trademark Infringement Was Legally and Factually Unsupported

The District Court's conclusion that Defendant **infringed Plaintiff's trademarks** is **both legally incorrect and unsupported by the evidence.** Instead of conducting a **proper trademark analysis under the Lanham Act**, the court **blindly accepted Plaintiff's exaggerated claims of exclusive rights over "Kentucky Colonel"** and **failed to apply the correct legal standards.**

Trademark law **does not grant ownership over words or phrases in the abstract**—it **only protects against specific uses that create a likelihood of consumer confusion.** See *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004)* (holding that

**trademark owners bear the burden of proving consumer confusion, not merely asserting it**).

Here, Plaintiff **failed to meet that burden**, yet the District Court **granted relief anyway, without applying the required legal analysis.**

## A. The District Court Failed to Apply the Sixth Circuit's "Likelihood of Confusion" Test

The **Sixth Circuit requires courts to apply an eight-factor test** to determine whether trademark infringement has occurred. See *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). These factors include:

1. **Strength of the Plaintiff's Mark**

2. **Relatedness of the Goods or Services**

3. **Similarity of the Marks**

4. **Evidence of Actual Consumer Confusion**

5. **Marketing Channels Used**

6. **Likely Degree of Purchaser Care**

7. **Defendant's Intent in Using the Mark**

8. **Likelihood of Expansion of the Product Lines**

The **District Court ignored this mandatory analysis**, instead issuing a **blanket finding of infringement based on Plaintiff's exaggerated and legally baseless claims.**

## B. Plaintiff Presented No Evidence of Actual Consumer Confusion

One of the **most important factors in any trademark case is whether consumers were actually confused.** See *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 633 (6th Cir. 2002) (discussing the importance of consumer confusion evidence) and (holding that **actual confusion is the "best evidence" of trademark infringement**).

**In this case, there was no evidence of actual consumer confusion.**

- **No survey or polling evidence was provided.**

- **No public consumer testimony was presented, because all of the Plaintiff's customers are its members.**

- **No proof was offered that anyone mistook Defendant's use of "Kentucky Colonel" for a product or service offered by Plaintiff.**

Despite this, the District Court **wrongfully ruled in Plaintiff's favor, ignoring the complete absence of proof, no more than several misinformed people may have been confused based on the HOKC's failure to notify others of its use of the term as a trademark, thereby making it ambiguous with the term.**

## C. The District Court Ignored the Descriptive and Historical Nature of "Kentucky Colonel"

The phrase **"Kentucky Colonel" is a widely recognized historical title**, not an inherently distinctive trademark. Trademarks **that are merely descriptive require secondary meaning to be enforceable.** See *Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992).*

**The problem with Plaintiff's claim:**

- "Kentucky Colonel" is **not a unique or arbitrary phrase**—it is a historical designation used by the Commonwealth of Kentucky.

- **Plaintiff does not own the title itself—only specific commercial uses associated with its registered trademarks.**

- **No evidence was presented that Plaintiff has exclusive secondary meaning in all contexts.**

By failing to recognize the descriptive and historical nature of "Kentucky Colonel," the District Court wrongfully expanded Plaintiff's trademark rights beyond what the law allows.

## D. Remedy: The Finding of Infringement Must Be Reversed

Because the District Court **failed to conduct a proper trademark analysis and ignored the evidentiary record**, this Court should:

1. **Reverse the finding of trademark infringement.**
2. **Clarify that Plaintiff must prove actual confusion before claiming infringement.**
3. **Remand with instructions to apply the proper legal standard for evaluating trademark claims.**

**A trademark does not grant ownership over language, history, or culture.** The District Court's ruling allows Plaintiff to claim a **monopoly over an honorary title that belongs to the people of Kentucky.** This Court must intervene to prevent further abuse of trademark law.

## VII. The District Court's Cumulative Errors Require Full Reversal to Preserve Judicial Integrity and Prevent Further Abuse

The **Sixth Circuit has recognized that cumulative errors can render judicial proceedings fundamentally unfair.** See *United States v. Adams, 722 F.3d 788, 828 (6th Cir. 2013)*:

> **"Even if no single error requires reversal, the cumulative effect of multiple errors can so undermine confidence in the proceedings that reversal is required."**

**This case is a textbook example of a cumulative error doctrine in action.**

Judge Jennings committed **at least 12 independent legal errors**, each of which **seriously prejudiced Defendant**:

1. **Failing to rule on the recusal motion before issuing substantive orders.**

2. **Ignoring binding precedent from *HOKC v. Building Champions* (2004).**

3. **Imposing an unconstitutional prior restraint on speech.**

4. **Applying an expired Preliminary Injunction instead of the Agreed Permanent Injunction.**

5. **Exceeding her authority by regulating Defendant's use of the "™" symbol.**

6. **Misapplying trademark law and failing to scrutinize Plaintiff's overreach.**

7. **Reopening a dismissed case in violation of res judicata.**

8. **Making a legally unsupported finding of trademark infringement.**

9. **Failing to distinguish between commercial and non-commercial use.**

10. **Granting injunctive relief over mere trademark applications, has no legal effect.**

11. **Blindly accepting Plaintiff's false claim that its trademarks are "famous" and "incontestable" without any legal justification.**

**Even if the Sixth Circuit disagrees on any individual error, the combined impact of these errors makes the proceedings fundamentally unreliable.**

## A. The District Court's Rulings Have Encouraged Trademark Bullying and Litigation Abuse

**If this ruling is allowed to stand, it will:**

- **Encourage trademark owners to weaponize litigation against competitors and whistleblowers.**

- **Allow courts to suppress free speech under the guise of trademark enforcement.**

- **Reward fraudulent and misleading claims, rather than punishing them.**

This is **not just about this case**—it is about **the integrity of the judicial system** and the need to **prevent abuse of power.**

## B. Remedy: The Sixth Circuit Must Reverse and Remand With Instructions to Correct These Errors

Given the **unprecedented number of legal missteps**, this Court should:

1. **Vacate all rulings issued by Judge Jennings in this case.**

2. **Remand with instructions for a new judge to review the matter fairly.**

3.  **Clarify that cumulative errors that undermine fairness require reversal.**

**The integrity of the courts depends on this Court taking corrective action.** Anything less than a full reversal would allow an egregious miscarriage of justice to stand.

# REQUEST FOR RELIEF

**WHEREFORE,** Defendant-Appellant, Col. David J. Wright, respectfully requests that this Honorable Court grant the following relief:

1. **Vacatur and Reversal** – Reverse and vacate the District Court's rulings in **[DE-129]** and **[DE-138]** due to legal errors, due process violations, and Plaintiff's fraudulent misrepresentations.

2. **Declare the Agreed Permanent Injunction ("API") Void** – Hold that the API was improperly interpreted and enforced, rendering it void ab initio.

3. **Issue a Declaratory Judgment** clarifying that:

   ○ *"Kentucky Colonels"* is a **public domain honorific, not Plaintiff's exclusive trademark.**

   ○ Appellant's use of the term is **protected fair use.**

   ○ Plaintiff's litigation was an **improper attempt to monopolize a historical designation and suppress lawful expression.**

4. **Award Attorney's Fees and Sanctions** – Order Plaintiff to pay Appellant's reasonable attorney's fees and litigation costs under the **Lanham Act's fee-shifting provision** for exceptional cases due to Plaintiff's **bad-faith litigation.** *See Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545 (2014).*

5. **Remand for Further Proceedings** to determine:

   ○ Damages for **wrongful litigation** and **economic and reputational harm** inflicted by Plaintiff's misconduct.

○ Whether **Plaintiff's trademarks should be canceled** due to fraudulent filings.

6. **Findings Regarding Plaintiff's Fraudulent Conduct** – Issue findings that:

○ Plaintiff **failed to disclose material facts** in its trademark filings and litigation.

○ Plaintiff **used litigation to improperly expand trademark rights.**

○ Plaintiff's **trademarks should be subject to cancellation due to fraud.**

7. **Injunctive Relief Against Further Litigation Abuse** – Bar Plaintiff from:

○ Bringing future lawsuits to claim exclusive rights over *"Kentucky Colonels."*

○ Using trademark law to **suppress fair competition, free speech, or constitutionally protected activities.**

8. **Any Further Relief the Court Deems Just and Proper** – Grant any additional relief necessary to redress the harm caused.

# CONCLUSION & CLOSING STATEMENT

The **cumulative legal and procedural failures in this case demand appellate intervention.** The District Court **failed at every stage of the proceedings to apply the correct legal standards, disregarded binding precedent, and imposed an injunction that is both unconstitutional and legally unsound.**

The **Lanham Act does not grant monopolies over words or historical titles,** yet the District Court's ruling **gives Plaintiff undue control over the honorary title "Kentucky Colonel," contradicting federal law and the principles of fair use.**

Additionally, the **failure to rule on Defendant's recusal motion before issuing substantive orders** raises **serious concerns about judicial bias, fairness, and due process.** Courts have a duty to ensure that **proceedings are free from prejudice, yet Judge Jennings ignored this fundamental obligation.**

If left uncorrected, this case will **set a dangerous precedent where powerful entities can weaponize trademark law to suppress fair competition, silence critics, and erase historical identities.** The **rule of law demands that this Court act to restore justice.**

For these reasons, Defendant respectfully requests that this Court:

1. **Vacate the District Court's injunction and trademark infringement ruling.**

2. **Reverse the attorneys' fees award and all orders based on legally unsound findings.**

3. **Remand with instructions to apply the correct legal standards and to ensure due process is followed.**

The **fundamental integrity of the judiciary requires no less.**

I declare under penalty of perjury that the foregoing Appellate Brief to the Sixth Circuit Court of Appeals is true and correct to the best of my knowledge and belief.

Respectfully submitted,

/s/ Col. David J. Wright

302 General Smith Drive
Richmond, Kentucky 40475

david.wright@globcal.net                    Dated: March 17, 2025
Tel: (859) 379-8277                          Puerto Carreño, Colombia

# CERTIFICATE OF COMPLIANCE

Pursuant to **Federal Rule of Appellate Procedure 32(a)(7)(B)**, I certify that this brief:

1. **Is proportionally spaced** using **Times New Roman 13-point font**;

2. **Uses double-spacing** in compliance with **Rule 32(a)(4)**;

3. **Has one-inch margins** and properly numbered pages;

4. **Contains less 12,872 words**, excluding the portions exempted by **Rule 32(a)(7)(B)(iii)**;

5. **Complies with the Sixth Circuit's page and word limits**, which permit either a **30-page limit** or a **13,000-word limit**, regardless of production method.

I certify that the word count was generated using the word-processing system used to prepare this document.

/s/ Col. David J. Wright
Col. David J. Wright, Pro-se Appellant
March 19, 2025

# CERTIFICATE OF SERVICE

I hereby certify that on **March 19, 2025**, I **submitted** the foregoing brief for filing via **email** to the Clerk of the Court, in accordance with the Court's procedures for pro se litigants. Upon docketing, the Court's **CM/ECF system** will automatically serve all registered ECF users, including counsel for Appellee.

Deborah S. Hunt, Clerk                          /s/ Col. David J. Wright
Sixth Circuit Court of Appeals          David J. Wright, Pro-se Appellant
501 Potter Stewart U.S. Courthouse          DATED: March 19, 2025
100 East Fifth Street
Cincinnati, Ohio 45202-3988