Case No. 23-5795 and 23-6108

# United States Court of Appeals for the Sixth Circuit

HONORABLE ORDER OF KENTUCKY COLONELS, INC.
*Plaintiff-Appellee*

v.

KENTUCKY COLONELS INTERNATIONAL; GLOBCAL INTERNATIONAL;
ECOLOGY CROSSROADS COOPERATIVE FOUNDATION, INC.;
UNKNOWN DEFENDANTS
*Defendants*

DAVID J. WRIGHT
*Defendant-Appellant*

*On Appeal from the U.S. District Court for the Western District of Kentucky's Order Finding the
Appellant in Contempt of an Agreed Permanent Injunction Entered on February 23, 2021 and Awarding
Attorneys' Fees and Costs
Civil Action No. 3:20-cv-00132
Hon. Rebecca Grady Jennings, District Judge*

## BRIEF OF PLAINTIFF-APPELLEE
## HONORABLE ORDER OF KENTUCKY COLONELS, INC.

Cornelius E. Coryell, II
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, Kentucky  40202
(502) 589-5235
ccoryell@wyattfirm.com
jwatts@wyattfirm.com
*Counsel for Plaintiff-Appellee*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## <u>AND FINANCIAL INTERESTS</u>

Pursuant to 6 Cir. R. 26.1 Plaintiff/Appellee, the Honorable Order of Kentucky Colonels, Inc., makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?    <u>NO.</u>

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?    <u>NO.</u>

*/s/ Cornelius E. Coryell, II*
Cornelius E. Coryell, II
Julie Laemmle Watts
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, Kentucky  40202
(502) 589-5235
ccoryell@wyattfirm.com
jwatts@wyattfirm.com

*Counsel for Plaintiff-Appellee The*
*Honorable Order of Kentucky Colonels, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

DISCLOSURE OF CORPORATE AFFILIATION
    AND FINANCIAL INTERESTS .................................................................. ii

TABLE OF CONTENTS .................................................................................. iii

TABLE OF AUTHORITIES .......................................................................... vi

STATEMENT REGARDING ORAL ARGUMENT ............................................ xi

JURISDICTIONAL STATEMENT ....................................................................... xii

STATEMENT OF ISSUES .................................................................... xiii

STATEMENT OF THE CASE.................................................................1

STATEMENT OF FACTS .........................................................................2

    A.    HOKC Has Been Dedicated to Serving the Commonwealth of
        Kentucky and its Citizens for Decades ................................................2

    B.    Protection of the KENTUCKY COLONELS Mark is Essential to
        HOKC's Mission .................................................................................3

    C.    Wright Misappropriated the KENTUCKY COLONELS Mark
        in 2020 .............................................................................................4

    D.    Wright Zealously Defended the Claims Made by HOKC and
        Repeatedly Sought Dismissal of the 2020 Verified Complaint ...........6

    E.    The Action Was Settled with Assistance of the Magistrate Judge .......8

    F.    The Agreed Permanent Injunction was Entered on February 23,
        2021 as Part of the Settlement ...........................................................10

    G.    Wright Began Violating the Agreed Permanent Injunction in
        May 2022 ...........................................................................................13

H.    HOKC Presented Clear and Convincing Evidence of Wright's Violation of the Agreed Permanent Injunction ...................................14

1.  Wright's social media postings violated the Agreed Permanent Injunction .........................................................................14

2.  Wright Violated the Agreed Permanent Injunction Through His Websites .....................................................................16

3.  Wright was Unjustly Enriched Through His Contempt of the Agreed Permanent Injunction ...............................................19

4.  Wright's Use of Marks that are Confusingly Similar to the KENTUCKY COLONELS Mark Continued to Cause Damage to HOKC ..................................................................................20

I.    The District Court Ordered the Parties to Submit Proposed Findings of Fact and Conclusions of Law .........................................22

J.    The District Court Properly Found Wright in Contempt of the Agreed Permanent Injunction ...............................................25

K.    The District Court Properly Awarded HOKC Attorneys' Fees and Costs Associated with Prosecuting the Contempt Motion ...........26

SUMMARY OF THE ARGUMENT .....................................................26

STANDARD OF REVIEW ..................................................................27

ARGUMENT ....................................................................................28

I.    WRIGHT'S ATTEMPT TO RE-ARGUE THE MERITS OF HOKC'S UNDERLYING INFRINGEMENT CLAIM IS IMPROPER ................................................................................28

II.    WRIGHT'S ASSERTION THAT THE DISTRICT COURT FAILED TO RULE ON A RECUSAL MOTION BEFORE ISSUING SUBSTANTIVE ORDERS IS SIMPLY NOT TRUE .......33

iv

III.   THE DISTRICT COURT HAS INHERENT POWER TO ENFORCE THE AGREED PERMANENT INJUNCTION. ...............................37

IV.   HOKC PROVIDED CLEAR AND CONVINCING EVIDENCE OF WRIGHT'S CONTEMPT OF THE AGREED PERMANENT INJUNCTION. ...................................................................38

V.   WRIGHT'S ATTEMPTED JUSTIFICATION OF HIS VIOLATIONS OF THE AGREED PERMANENT INJUNCTION WERE LEGALLY WITHOUT MERIT .............................................42

VI.   WRIGHT FAILED TO ESTABLISH THAT HE WAS UNABLE TO COMPLY WITH THE AGREED PERMANENT INJUNCTION ...................................................................44

VII.   THE DISTRICT COURT APPROPRIATELY SANCTIONED WRIGHT'S CONTEMPT OF THE AGREED PERMANENT INJUNCTION ...................................................................45

VIII.  THE DISRICT COURT PROPERLY AWARDED ATTORNEYS' FEES AND COSTS ASSOCIATED WITH HOKC'S ENFORCEMENT OF THE AGREED PERMANENT INJUNCTION ...................................................................48

CONCLUSION...............................................................49

CERTIFICATE OF COMPLIANCE..................................................50

CERTIFICATE OF SERVICE .......................................................51

APPELLEE'S DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS....................................................................52

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page</u>

*Adock-Ladd v. Sec'y of Treasury*,
    227 F.3d 343, 349 (6th Cir. 2000) ...................................................48

*Balance Dynamics Corp. v. Schmitt Indus., Inc.*,
    204 F.3d 683, 695 (6th Cir. 2000) ...................................................47

*Broderick & Bascom Rope Co. v. Manoff*,
    41 F.2d 353, 354 (6th Cir. 1930) .....................................................32

*Cernelle v. Graminex, L.L.C.*,
    437 F. Supp. 3d 574, 606 (E.D. Mich. 2020) .................................47

*CFE Racing Products, Inc. v. BMF Wheels, Inc.*,
    793 F.3d 571, 598 (6th Cir. 2015) ...................................................27

*Chambers v. NASCO, Inc.*,
    501 U.S. 32, 44 (1991) ....................................................................38

*Easley v. Cromartie*,
    532 U.S. 234, 242 (2001) ................................................................28

*Elec. Workers' Pension Tr. Fund of Loc. Union #58, IBEW v. Gary's Elec.*
    *Serv. Co.*, 340 F.3d 373, 378,379, 382 (6th Cir. 2003) ....................38, 44, 45

*Evans v. Pearson Entrs., Inc.*,
    434 F.3d 839, 853-54 (6th Cir. 2006).............................................35

*Gascho v. Global Fitness Holdings, LLC*,
    875 F.3d 795, 800 (6th Cir. 2017) ..............................................28, 39

*Glover v. Johnson*,
    138 F.3d 229, 244 (6th Cir. 1998) .............................................38, 44

*Glover v. Johnson*,
    934 F.2d 703, 708 (6th Cir. 1991) ...................................................44

*Gnesys, Inc. v. Greene*,
    437 F.3d 482, 493 (6th Cir. 2005) .................................................47

*Harvey v. CNN, Inc.*,
    48 F.4th 257, 277-79 (4th Cir. 2022)..........................................34

*Hensley v. Eckerhart*,
    461 U.S. 424, 433 (1983) ..............................................................48

*In re E. I. du Pont de Nemours & Co.*,
    476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973) .........................43

*In re Pix of Am., Inc.*,
    225 USPQ 691 (TTAB 1985).........................................................43

*Innovation Ventures, LLC v. N2G Distributing, Inc.*,
    763 F.3d 524, 546 (6th Cir. 2014) ....................................31, 32, 33

*Liberte Capital Grp., LLC v. Capwill*,
    462 F.3d 543, 550 (6th Cir. 2006) ................................................27

*McMahan & Co. v. Po Folks, Inc.*,
    206 F.3d 627, 634 (6th Cir. 2000) ................................................48

*Mears v. Montgomery*,
    535 Fed. Appx. 37, 39 (2nd Cir. 2013) ........................................30

*N.L.R.B. v. Cincinnati Bronze, Inc.*,
    829 F.2d 585, 591 (6th Cir. 1987) ................................................39

*North Face Apparel Corp. v. Williams Pharmacy, Inc.*,
    4:09cv2029 RWS, 2012 WL 13055689 *2 (E.D. Miss. Oct. 10, 2012)........30

*Peacock v. Thomas*,
    516 U.S. 349, 356 (1996) ..............................................................37

*Penfield Co. of Cal. v. Sec. & Exch. Com'n*,
    330 U.S. 585, 594 (1947) ..............................................................46

*PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*,
    520 F.3d 109, 118 (2d Cir. 2008) ................................................................. 32

*Qiu v. Anderson Cnty. High School*,
    No. 3:21-cv-00027-GFVT, 2023 WL 6122142, at *1 (E.D. Ky.
    Sept. 12, 2023) ............................................................................................ 35

*Redken Labs. Inc. v. Levin*,
    843 F.2d 226, 229 (6th Cir. 1988) ............................................................... 46

*Rogers v. Webster*,
    776 F.2d 607, 612 (6th Cir. 1985) ............................................................... 47

*Rolex Watch U.S.A., Inc. v. Crowley*,
    74 F.3d 716, 720 (6th Cir. 1996) ................................................................. 44

*Silverburg v. Webb*,
    No. 3:06-cv-P600-H., 2007 WL 1070354 at *1 (W.D. Ky.
    April 4, 2007) .............................................................................................. 35

*Static Control Components, Inc. v. Lexmark Int'l, Inc.*,
    487 F. Supp. 2d 861, 891 (E.D. Ky. 2007) .................................................. 47

*Taubman Co. v. Webfeats*,
    319 F.3d 770, 779 (6th Cir. 2003) ............................................................... 32

*The Honorable Order of Kentucky Colonels v. Building Champions*,
    345 F. Supp.2d 716 (W.D. Ky. 2004) ..................................................... 28, 29

*Toyo Tire & Rubber Co., Ltd. v. Hong Kong Tri-Ace Tire Co., Ltd.*,
    281 F. Supp.3d 967, 984-85 (C.D. Cal. 2017) ............................................ 30

*TWM Mfg. Co., Inc. v. Dura Corp.*,
    722 F.2d 1261, 1273 (6th Cir. 1983) ...................................................... 46, 48

*United States v. Bayshore Assocs., Inc.*,
    934 F.2d 1391, 1400 (6th Cir. 1991) ........................................................... 45

*United States v. Sammons*,
    918 F.2d 592 (6th Cir. 1990) ....................................................................... 37

*United States v. Story*,
716 F.2d 1088, 1091 (6th Cir. 1983) ........................................................35

*United States v. United Mine Workers of America*,
330 U.S. 258, 290, 304 n. 56 (1947) ..............................................38, 45, 46

*Weiss Assocs. Inc. v. HRL Assocs. Inc.*,
902 F.2d 1546 (Fed. Cir. 1990) ...............................................................43

*Wella Corp. v. Wella Graphics, Inc.*,
37 F.3d 46, 48 (2d Cir. 1994) ...................................................................30

*Winner Corp. v. H.A. Caesar & Co.*,
511 F.2d 1010, 1015 (6th Cir. 1975) .......................................................45

*Wolfard Glassblowing Co. v. Vanbragt*,
118 F.3d 1320, 1321-22 (9th Cir. 1997)...................................................31

## Rules

Fed. R. App. P. 28(a)(4) ............................................................................. xii

Fed.R.Civ.P. 7(b)(1)(B)(c) ........................................................................34

## Statutes and Regulations

15 U.S.C. § 1114(1) ................................................................................... xii

15 U.S.C. § 1114(1)(a) ...............................................................................43

15 U.S.C. Section 1125(a) ......................................................................... xii

15 U.S.C. §1125(a)(1)(A) ...........................................................................43

15 U.S.C. § 1125(c) ................................................................................... xii

15 U.S.C. § 1125(d)(1)(A)(ii)(I) .................................................................43

28 U.S.C. Section 1291 ............................................................................. xii

28 U.S.C. Section 1292(a) ........................................................................ xii

28 U.S.C. §144 ........................................................................................ 35

28 U.S.C. §455 ........................................................................... 24, 35, 37

28 U.S.C. §455(a) ......................................................................... 35, 36

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff/Appellee, the Honorable Order of Kentucky Colonels, Inc. ("HOKC"), respectfully submits that oral argument is not necessary in this matter inasmuch as the issues have been extensively briefed and thoroughly treated both in the District Court and in the instant appeal. Oral argument would only generate further unnecessary inconvenience and expense.

## JURISDICTIONAL STATEMENT[1]

(1)    The basis for the District Court's subject matter jurisdiction was the Agreed Permanent Injunction entered by the District Court on February 23, 2021 in Civil Action No.  3:20-CV-132-RGJ, which specifically provides that the District Court retained jurisdiction over the parties as necessary to enforce that Injunction. In addition, the District Court's subject matter jurisdiction was based on Section 32(1) of the Lanham Act; 15 U.S.C. Section 1114(1); Section 43(a) of the Lanham Act; 15 U.S.C. Section 1125(a); Section 43(c) of the Lanham Act; 15 U.S.C. Section 1125(c); and the Anticybersquatting Consumer Protection Act.

(2) The basis for this Court's appellate jurisdiction is 28 U.S.C. Section 1292(a), there having been rendered below an order enforcing the Agreed Permanent Injunction entered by the District Court on February 23, 2021 and finding the Defendant/Appellant David Wright ("Wright") in contempt of that order.  This Court's appellate jurisdiction is 28 U.S.C. Section 1291, there having been rendered below a final Memorandum Opinion and Order awarding HOKC attorneys' fees and costs incurred in prosecuting its motion for contempt.

(3) The Memorandum Opinion and Order was entered by the District Court on August 9, 2023 [8/9/23 Memorandum Opinion [DE 129] PageID #3714-26], and

---

[1] HOKC does not adopt the Statement of Jurisdiction in the Initial Brief of Appellant (the "Wright Brief") because it does not make a detailed showing of the information required by Fed. R. App. P. 28(a)(4).

Defendant's Notice of Appeal was timely filed on August 31, 2023 [Notice of Appeal [DE 131], PageID #3800]. A Memorandum Opinion and Order awarding attorneys' fees was entered by the District Court on November 13, 2023 [11/13/23 Memorandum Opinion and Order [DE 138] PageID #3838-46], and Defendant's Notice of Appeal was timely filed on December 13, 2023 [Supplemental Notice of Appeal [DE 142] PageID #3864-72].

## STATEMENT OF ISSUES[2]

(1) Whether the District Court erred when it found Wright in contempt of the Agreed Permanent Injunction entered by the District Court on February 23, 2021; (2) whether the District Court erred when it ordered Wright to pay $7,500 in compensatory sanctions for failure to abide by the Agreed Permanent Injunction; and (3) whether the District Court erred when it ordered Wright to pay $9,425 in attorneys' fees and $1,052.25 in costs as a sanction for his contempt of the Agreed Permanent Injunction.

---

[2] HOKC does not adopt the Statement of Issues in the Wright Brief because it improperly includes issues relating to the merits of HOKC's underlying infringement claim, which is not within the scope of the instant appeal. In addition, Wright's Statement of Issues contains numerous misstatements of fact and law. Finally, Wright's Statement of Issues is improperly argumentative and disparages both counsel for HOKC and the District Court.

## STATEMENT OF THE CASE[3]

On February 23, 2021, the District Court entered an Agreed Permanent Injunction prohibiting Wright and his affiliates[4] from "using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark" in connection with the sale of goods or services, the solicitation of charitable donations, or the formation of any membership organization or charitable fundraising endeavor. The Agreed Permanent Injunction was negotiated by Wright following a lengthy court-mediated settlement process. In exchange for Wright's agreement to be bound by the Agreed Permanent Injunction, HOKC dismissed its claims against Wright for unlawfully attempting to infringe upon and misappropriate HOKC's registered and protected KENTUCKY COLONELS Mark. Fifteen (15) months later, Wright began violating the Agreed Permanent Injunction through a byzantine network of websites and social media postings. After

---

[3] HOKC does not adopt the Statement of the Case in the Wright Brief because it improperly includes matters relating to HOKC's underlying infringement claim, which is not within the scope of the instant appeal. Further, HOKC does not adopt Wright's Statement of the Case because it insults and disparages both counsel for HOKC and the District Court. Finally, HOKC does not adopt Wright's Statement of the Case because it is inaccurate, incomplete, and argumentative.

[4] The Defendants in the District Court included three (3) entities controlled by Wright: Kentucky Colonels International; Globcal International; and Ecology Crossroads Cooperative Foundation, Inc. The District Court entered default judgment against those parties by Order dated April 22, 2024 for failing to plead or otherwise defend the action after being properly served [4/22/24 Default Judgment [DE 150], PageID #3945].

conducting an extensive evidentiary hearing in which Wright participated and presented proof, the District Court found that Wright's actions violated the Agreed Permanent Injunction and awarded HOKC damages from Wright's contempt of that order. In addition, the District Court awarded HOKC a portion of its attorneys' fees and costs incurred in prosecuting the motion for contempt. The District Court's findings and conclusions were fully supported by the proof of record and should not be disturbed on appeal.

## STATEMENT OF FACTS

### A.    HOKC Has Been Dedicated to Serving the Commonwealth of Kentucky and its Citizens for Decades.

HOKC is a nonpartisan, nonprofit organization dedicated to supporting charitable purposes throughout the Commonwealth of Kentucky. [Verified Compl., [DE 97], PageID #2105]. Since 1951, HOKC has funded more than $60 million in grants to over 1,700 nonprofits. [*Id.*] In 2022 alone, HOKC granted $3.1 million to 314 organizations who, together, serve more than 3.9 million people. [*Id.*] To this day, the Governor of Kentucky serves as the Commander-in-Chief of HOKC, along with a board of trustees. [*Id.*].

For nearly a century, HOKC has pursued its mission of service, a significant aspect of which is promoting and protecting the goodwill of the KENTUCKY COLONELS Mark. [*Id.* at PageID #2106]. From the beginning, the Governor's office recognized HOKC's role, making HOKC responsible for adopting insignia,

seals, and other indicia of the honor. [*Id.* at PageID #2105]. HOKC has carefully guarded the KENTUCKY COLONELS Mark, which is an essential element of protecting the ability of HOKC to serve its charitable function with an unblemished reputation. [*Id.* at PageID #2106].[5]

### B.    Protection of the KENTUCKY COLONELS Mark is Essential to HOKC's Mission.

HOKC has used the KENTUCKY COLONELS Mark since its inception, and that mark plays a critical role in the organization's fundraising efforts. [*Id.*]. The KENTUCKY COLONELS Mark is universally associated with HOKC and with aiding and promoting causes benefiting the health and welfare of Kentuckians. In addition to the KENTUCKY COLONELS Mark, HOKC is also the owner of THE HONORABLE ORDER OF KENTUCKY COLONELS, KENTUCKY COLONELS GOOD WORKS PROGRAM, KENTUCKY COLONELS DAY OF

---

[5] Throughout this litigation, Wright has repeatedly touted his self-proclaimed expertise on the history of the honorary "Kentucky Colonel" title, and he has criticized both the District Court and the United States Patent and Trademark Office for failing to recognize his "right to fair use" of that term. Wright's appeal perpetuates that tactic, even referring this Court to Defendant's Motion for Judicial Notice FRE 201(b) [[DE 170], PageID #4212], a document that was filed in the District Court ***the day before*** the Wright Brief was filed. As the District Court recognized, this case is not about competing historical narratives and the purported "facts" which Wright recites "are irrelevant to the Court's resolution of the matters before it." [8/9/23 Memorandum Opinion and Order [DE 129], PageID #3725]. The filings made by Wright only days before the deadline for his appellate brief [DE 169], [DE 170], and [DE 171], were never before the District Court and are not properly part of the record on appeal. Wright's attempt to confuse and clutter the record should be rejected.

SERVICE, and HOKC logo marks and other registered and unregistered marks, all of which are critical to HOKC's charitable solicitation efforts.[6] HOKC has continuously used the KENTUCKY COLONELS Mark in connection with its philanthropic, membership, and social activities for decades and, as a result, the KENTUCKY COLONELS Mark carries a positive connotation worldwide. [*Id.* at PageID #2106].

## C.   Wright Misappropriated the KENTUCKY COLONELS Mark in 2020.

On February 20, 2020, HOKC filed a Verified Complaint against Wright for his unauthorized use of the KENTUCKY COLONELS Mark in connection with marketing, advertising, promotion, and solicitations regarding alleged services provided by his affiliated entities. [Verified Compl. [DE 1] (the "2020 Verified Complaint"), PageID #1]. The 2020 Verified Complaint sought redress for a scheme led by Wright, under the guise of Globcal International ("Globcal") and an entity

---

[6] Charts reflecting the federal trademark applications and registrations of HOKC for the KENTUCKY COLONELS Mark, as well as the official documentation reflecting those applications and registrations, were attached to the 2020 Verified Complaint [Verified Compl., Ex. 2 [DE 1-2], PageID #27] and HOKC's Verified Complaint filed in 2023 [Verified Compl., Ex. 2 [DE 97-2], PageID #2149]. Those charts specifically described the application, registration, and renewal dates for each trademark and the documents reflecting each application, registration, and renewal were attached to the charts. Both the District Court and Wright were fully aware that the three (3) applications reflected in the chart attached to the 2020 Verified Complaint had been approved for registration by the time the 2023 Verified Complaint was filed.

called Kentucky Colonels International ("KCI") to solicit individuals who had been commissioned as Kentucky Colonels to participate, for a fee, in Wright's newly formed "registry" or organization operating under the infringing KENTUCKY COLONELS INTERNATIONAL mark. [*Id.* at PageID #6]. In misappropriating HOKC's KENTUCKY COLONELS Mark and the goodwill associated therewith, Wright and his affiliated entities used the internet and social media to confuse the public, including individuals commissioned as Kentucky Colonels, and profit from HOKC's KENTUCKY COLONELS Mark. [*Id.* at PageID #6].

On February 21, 2020, HOKC filed its Motion for Temporary Restraining Order seeking to enjoin Wright from his continued unlawful scheme to infringe upon and misappropriate HOKC's KENTUCKY COLONELS Mark. [2/21/20 Motion for Temporary Restraining Order and Preliminary Injunction [DE 7], PageID #147].[7]

---

[7] Contrary to the claims made in the Wight Brief, HOKC did not "fail to disclose pre-litigation discussions" between Wright and HOKC. [Wright Brief, 23]. HOKC specifically advised the District Court that in January 2020, Wright forwarded HOKC a package of documents which included a "Draft Merger, Acquisition and Consolidation Agreement." [*See* Motion for Temporary Restraining Order, and Preliminary Injunction [DE 7], PageID #157 (citing Verified Compl. [DE 1])]. Not surprisingly, Wright's "proposal" included provisions for generous financial payments to himself, his son, and KCI. [*Id.*]. HOKC even provided the Court with a copy of that document [*Id.*]. On January 20, 2020, HOKC notified Wright that it was not interested in his proposal for HOKC's "acquisition of Kentucky Colonels International." [*Id.*]. Shortly thereafter, Wright advised HOKC that he and KCI intended to "move forward with our program and the formalization of the KCI agenda." [*Id.*]. Almost immediately thereafter, Wright accelerated his efforts to promote KCI using the KENTUCKY COLONELS Mark including posting a false representation on the KCI website that "donations to KCI are now tax deductible."

On February 25, 2022, the Court entered a Temporary Restraining Order and scheduled a hearing on HOKC's Motion for a Preliminary Injunction [2/25/20 Temporary Restraining Order [DE 14], PageID #501]. By Order dated March 9, 2020, the action was reassigned to the docket of Judge Rebecca Grady Jennings. [3/9/20 Text Order [DE 25]]. After several extensions of the Temporary Restraining Order, HOKC filed its Supplemental Motion for a Preliminary Injunction on May 22, 2020. [Motion for Preliminary Injunction [DE 39], PageID #848]. After extensive briefing by both parties, the District Court granted HOKC's Motion for a Preliminary Injunction [8/13/20 Order [DE 58], PageID #1218].

### D. Wright Zealously Defended the Claims Made by HOKC and Repeatedly Sought Dismissal of the 2020 Verified Complaint.

Wright repeatedly demanded dismissal of the claims made in the 2020 Verified Complaint, tendering at least six (6) dismissal motions.[8] Each of the dismissal motions offered the same essential arguments that HOKC is not entitled to

---

[Id. at PageID #152]. The District Court was fully aware of the background behind Wright's brazen attempts to hijack the KENTUCKY COLONELS Mark for his own personal financial enrichment. [See Id. at PageID #150-59].

[8] Wright's various dismissal motions were styled Motion for Declaratory Judgment [DE 82], PageID #1819; Motion for Judgment on the Pleadings [DE 65], PageID #1292; Motion for Leave to File Supplement to Amended Motion to Dismiss [DE 52], PageID #1067; Motion to Drop Defendants [DE 51], PageID #1061; Defendants' Amended Motion to Dismiss [DE 47], PageID #1021; Defendants' Motion to Dismiss [DE 37], PageID #834; and Defendants' Motion to Dismiss or Continue with Time Extension [DE 24], PageID #734.

6

protect its KENTUCKY COLONELS Mark because (1) Wright developed a website for Kentucky Colonels in 1998 and a Facebook page for Kentucky Colonels in 2016 thereby establishing a "right of prior use" [Defendant's Motion to Dismiss [DE 37], PageID #835]; (2) the term "Kentucky Colonel" is a "generic term" which "freely exists in the public domain" [Supplemental Amended Motion to Dismiss and/or Motion for Summary Judgment, Ex. 2 [DE 52-2], PageID # 1078]; (3) HOKC's trademark application was fraudulent because it failed to disclose the existence of Wright's prior use [Defendant's Amended Motion to Dismiss [DE 47], PageID #1024]; and (4) any restriction on his use of "Kentucky Colonel" "stifles and violates [his] rights of free speech, freedom to assemble, freedom of the press, and right to redress grievances to the government under the First Amendment of the U.S. Constitution" [[DE 47], PageID #1021].  Wright repeatedly asserted that the "Kentucky Colonel" term "was already very popular, well recognized, legendary, rooted in culture, and carried significant goodwill long before the state began using it as a civilian award, or [HOKC's] particular use."  [Supplement to Amended Motion to Dismiss [DE 52-2], PageID #1077].  Wright further argued that the KENTUCKY COLONELS Mark is not subject to trademark protection because HOKC was "conducting a land grab, hijacking history, and [it's motivation] is inconsistent with Federal and International Law." [*Id.* at PageID #1080]. All of the

arguments made in Wright's dismissal motions were rejected by the District Court

[8/13/20 Order [DE 58], PageID # 1229-33].

### E.    The Action Was Settled with Assistance of the Magistrate Judge.

Pursuant to the Court's order, a telephonic settlement conference was held on

December 29, 2020 with United States Magistrate Judge Regina S. Edwards.

[12/30/20 Report on Settlement Conference [DE 87], PageID #2023].  After several

weeks of extensive discussions and negotiations with the Magistrate Judge, Wright

and HOKC agreed to a Mediator's Proposal in February 2021 resolving the issues

raised in the 2020 Verified Complaint.  [*See* Mediator's Proposal [DE 97-6], PageID

#2611].  The mediator's proposal stated:

> This Mediator's Proposal is to resolve the action *The Honorable Order of Kentucky Colonels, Inc. v. Kentucky Colonels International, et al.*, Civil Action No. 3:20-CV-00132-RGJ-RSE ("Civil Action"), which is currently pending before this Court.   The mediator proposes the following:
>
> •    The Parties acknowledge that they entered into this proposal willingly and that no transfer of assets occurred in connection with the proposal.
>
> . . .
>
> •    The parties will jointly move the Court to enter the **Agreed Permanent Injunction** attached as <u>Exhibit A</u>.   The Agreed Permanent Injunction governs the appropriate use of the KENTUCKY COLONELS Mark.  Court entry of the injunction will make the terms of the Preliminary Injunction granted by the Court on August 13, 2020 permanent. The Parties agree that the Court shall maintain jurisdiction over this matter with regards to enforcing the Agreed Permanent Injunction.

8

- [Wright] agree[s] to not oppose any pending or future trademark or future trademark application by [HOKC] related to the KENTUCKY COLONELS Mark in the spirit of the Agreed Permanent Injunction.

- [Wright] agree[s] not to attempt to cancel any current trademark registrations or future trademark registrations obtained by [HOKC] related to the KENTUCKY COLONELS Mark in the spirit of the Agreed Permanent Injunction.

- [HOKC] agrees not to interfere with [Wright's] use of the honorable title "Kentucky Colonel" as a personal description.

- [HOKC] agrees to release [Wright] from any and all claims, actions, causes of action, demands, obligations, rights, damages, expenses, and/or compensation in relation to the pending Civil Action.

- [HOKC] agrees to execute an Agreed Order of Dismissal dismissing all claims made against [Wright] in the Civil Action with prejudice. Both the Agreed Order of Dismissal and the Agreed Permanent Injunction will state that the Court will maintain jurisdiction over this matter with regards to enforcing the Agreed Permanent Injunction.

. . .

- [HOKC] agree[s] that there will be no interference with any book [Wright] wish[es] to publish regarding the history of the Kentucky Colonel, Kentucky colonels or Kentucky colonelcy so long as the terms of the Agreed Permanent Injunction are abided by.

This Mediator's Proposal shall become effective upon signature of the Parties as indicated below and upon Court's entry of the Proposed Agreed Permanent Injunction. ***By signing the Mediator's Proposal, the Parties represent that they have fully read and understood the provisions of this Proposal***. Nothing contained in this Proposal shall be construed as an admission of liability or fault by either Party.

9

[*Id*. at PageID #2611-13] (emphasis added).  The Mediator's Proposal was signed by both HOKC and Wright.

Wright negotiated the terms of the Agreed Permanent Injunction as part of the settlement of HOKC's claims mediated by the District Court.  He signed the Mediator's Proposal specifically acknowledging, among other things, that he agreed to be bound by the injunction *which was an exhibit to that document*.  Wright knew exactly what the Agreed Permanent Injunction was going to say before it was entered by the District Court.  He agreed to those terms to induce HOKC's dismissal of the claims made in the 2020 Verified Complaint.

### F.    The Agreed Permanent Injunction was Entered on February 23, 2021 as Part of the Settlement.

On February 23, 2021, the District Court entered the Agreed Permanent Injunction, which included the following provisions:

> 1. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, contractors, employees, attorneys, and any other persons in active concert or participation with Defendants, are permanently enjoined and prohibited from using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and KENTUCKY COLONEL FOUNDATION, on or in connection with the sale of any goods or service including, but not limited to, the solicitation of charitable donations and the promotion of charitable and philanthropic causes.

2. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, contractors, employees, attorneys, and any other person in active concert or participation with Defendants, are permanently enjoined and prohibited from using the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and KENTUCKY COLONELS FOUNDATION, on any website, social media page, or blog in such a way as is likely to cause consumers to be confused, mistaken, or deceived into believing that HOKC has sponsored, sanctioned, approved, licensed, or is any way affiliated with Defendants or any organization or cause sponsored or supported by Defendants.

3. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, are permanently enjoined and prohibited from using the domain names [kycolonels.international], [kentucky.colonels.net], or any other domain name that is confusingly similar to [kycolonels.org], or *any domain name* that incorporates the KENTUCKY COLONELS Mark, or any mark that is confusingly similar to the KENTUCKY COLONELS Mark, including, but not limited to, KENTUCKY COLONELS INTERNATIONAL and KENTUCKY COLONEL FOUNDATION.

4. Defendants and anyone acting on their behalf, including their owners, members, officers, agents, contractors, employees, attorneys, and any other persons in active concert or participation with Defendants, are permanently enjoined and prohibited from using Facebook or any other social media platform usernames "Kentucky Colonels International" or "Kentucky Colonel Foundation" or any other

username or handle that is confusingly similar to the trademark KENTUCKY COLONELS for the purposes of forming a membership organization, a civil society association or other non-commercial activity such as an event or charitable fundraising endeavor.

5. Notwithstanding the aforestated prohibitive terms and conditions, this Agreed Permanent Injunction does not prohibit the Defendant, Col. David J. Wright or other Kentucky colonels (as individuals) from using "Kentucky Colonel," "Kentucky colonels" and/or "Kentucky colonelcy" as words or terms to describe Kentucky colonels, as an honorary title, or for editorial, educational, informative, journalistic, literary or other non-commercial purposes so long as the use is not related to the trademark or service mark uses registered, or pending, by the HOKC with the U.S. Patent and Trademark Office.

6. The Court shall retain jurisdiction to enforce this Agreed Permanent Injunction and the terms of the Settlement Agreement entered by the parties for no less than ten (10) years.

[2/23/21 Agreed Permanent Injunction [DE 93], PageID #2056-59].    Thus,

consistent with the Mediator's Proposal, the Agreed Permanent Injunction made

clear that Wright and other Colonels, as individuals, could use "Kentucky Colonel"

or "Kentucky colonels," "as an honorary title, or for editorial, educational,

informative, journalistic, literary, or other ***non-commercial purposes*** so long as the

use is not related to the trademark or service mark uses ***registered, or pending***, by

the HOKC…." [*Id.* at PageID #2058] (emphasis added).  In addition, Judge Jennings

specifically retained jurisdiction to enforce the Agreed Permanent Injunction and the

terms of the Mediator's Proposal for no less than ten (10) years. [*Id.*].

12

### G.    Wright began violating the Agreed Permanent Injunction in May 2022.

Less than fifteen (15) months after entry of the Agreed Permanent Injunction, HOKC became aware that Wright was creating and maintaining various infringing online activities in clear violation of the Agreed Permanent Injunction.  [1/25/23 Verified Compl. [DE 97] (the "2023 Verified Complaint"), PageID #2102].  In an effort to address those issues, HOKC sent a detailed letter to Wright demanding that he "cease and desist from [his] unlawful activities in violation of the Court's [Agreed Permanent] Injunction and [HOKC's] intellectual property rights."  [*Id*. at Ex. 10 [DE 97-10], PageID #2624].  Wright refused to honor HOKC's cease and desist request  [*Id.* at Ex. 11 [DE 97-11], PageID #2633].  Consequently, HOKC filed the 2023 Verified Complaint seeking injunctive relief and damages in January 2023. [DE 97].  On March 13, 2023, HOKC filed its Motion for Temporary Restraining Order and Preliminary Injunction [3/13/23 Motion to Enforce Permanent Injunction Order [DE 99], PageID #2721].  By Memorandum Opinion and Order dated March 30, 2023, the Court directed that HOKC's Motion for a Restraining Order and Preliminary Injunction would be treated as a motion to hold Wright in contempt of the Agreed Permanent Injunction.  [3/30/23 Order [DE 105], PageID #3361].  The Court further scheduled an evidentiary contempt hearing for April 25, 2023.  [*Id*.].

13

### H.    HOKC Presented Clear and Convincing Evidence of Wright's Violation of the Agreed Permanent Injunction.

Evidentiary contempt hearings were held by the Court on April 25, 2023 and May 9, 2023.   Wright attended and participated in those hearings by video conference.   HOKC established that Wright was actively violating the Agreed Permanent Injunction by soliciting donations and using the KENTUCKY COLONELS Mark (or marks confusingly similar thereto) on websites and social media to sell products, services, or memberships in competing organizations. Specifically, HOKC presented evidence of the following:

### 1.    Wright's social media postings violated the Agreed Permanent Injunction

Wright was responsible for the May 2022 Facebook post which prompted HOKC's cease and desist letter.  In that post, under the name Kentucky Colonel, Wright offered to sell "the trademark Kentucky Colonel website with four domains," which Wright was offering "[f]or commercial development for advertising." [Hr'g Tr. Vol. 1 [DE 121], PageID #3522-24; 2023 Verified Compl. [DE 97], PageID #2114].  After receiving the May 16, 2022 cease and desist letter, Wright started a new Facebook page under the same name of Kentucky Colonel. [Hr'g Tr. Vol. 1 [DE 121], PageID #3530]. Wright was also the administrator of the Kentucky Colonel Community Facebook group, the Kentucky Colonel Club Facebook group, and the Kentucky Colonel YouTube page, and was responsible for the Kentucky

Colonel LinkedIn page, the Kentucky Colonel Pinterest account, and the Kentucky Colonel Crunchbase crowd-funding site. [*Id.* at PageID #3525-26].

Wright authored and/or posted various solicitations on the Kentucky Colonel Facebook page, the Kentucky Colonel Community Facebook group, and the Kentucky Colonel Club Facebook group. [2023 Verified Compl. [DE 97], PageID #2110-25]. Specifically, Wright:

    a.  was responsible for the creation of the Kentucky Colonel™ LinkedIn post announcing creation of a "collective licensing program" by the name of Kentucky Colonel Cooperative. [Hr'g Tr. Vol. 2, [DE 122], PageID #3593-95].

    b.  authored a post on the Kentucky Colonel Club Facebook page on December 28, 2022, welcoming newly commissioned colonels and marketing Kentucky Colonel ID cards to members of the Kentucky Colonel Community. [*Id.* at PageID #3594].

    c.  posted on the Kentucky Colonel Facebook group on January 22, 2023 that "it's now the responsibility of the Kentucky Colonel™ group and its members to reach a hundred members prior to printing ID cards." [*Id.* at PageID #3602].

## 2.    Wright Violated the Agreed Permanent Injunction Through His Websites

Wright is the "trustee, registrant, owner and operator" of kycolonelcy.us; colonelcy.org; and colonels.net.  He authored and/or posted various information on the www.kycolonelcy.us website (the "Website"), including the "About Us" page; the "Identification Cards, Badges, and Nameplates" section; the "Kentucky Colonel Directory" page; the "Kentucky Colonel Branches" page; the "Kentucky Colonel Guide (Professional)" page; the "Kentucky Colonel Identification (Photo ID Cards)" page; the "Kentucky Colonel Business Cards" page; the "List of Kentucky Colonels" page; the "Kentucky Colonel Registry" page; and the "Kentucky Colonel Club" page. [*See* 2023 Verified Compl. [DE 97], PageID #2110-25].

Wright "authored" a press release labeled "News for Immediate Release" from the "Office of the Kentucky Colonelcy," which was linked to the Website and included letterhead displaying the Kentucky State Seal and title "Office of the Kentucky Colonelcy." [Hr'g Tr. Vol. 2 [DE 122], PageID #3577-78].  The press release described a "cooperative" of Kentucky Colonels based in Richmond, Kentucky, which is the registered office location for Ecology Crossroads and Globcal International. [*Id.* at PageID #3578-79]. The "News for Immediate Release" authored by Wright touted his "cooperative" as a vehicle for Kentucky Colonels to "be invested as stakeholders entitled to dividends and as owners with equity to a professional role as an Official Kentucky Colonel."  [Hr'g Tr. Vol. 2 [DE 122],

PageID #3577-81]; 2023 Verified Compl. [DE 97], Exhibit 15 [DE 97-14], PageID

#2656-57]. He further described the "cooperative" as a:

> [s]ocial enterprise [that] will issue official ID cards, badges and nameplates; the cooperative colonels will be connected to a virtual workplace, have company email and be required to collaborate online or in the community for 50 hours per year. They will receive the same rate of annual pay as does a United Nations goodwill ambassador and through their investments of time and money can be paid a dividend for their work efforts and collaborative submissions.

[*Id.*].

Wright also authored a page on the Website for "Identification Cards, Badges,

and Nameplates" and testified that he would be the person ordering the ID cards in

batches of 100. [Hr'g Tr. Vol. 2 [DE 122], PageID #3591]. Wright also authored a

page on the Website for the "Kentucky Colonel Registry," which he described as "a

service that is being [made] available to [Wright's] cooperative members [and] is

going to be operated by the Honorificus Foundation," which is another organization

started by Wright. [*Id.*].

Wright further authored the "Kentucky Colonel[TM] User Application" Google

Form linked through the Website (the "User Application"). [Hr'g Tr. Vol. 2 [DE

122], PageID #3596-99]. The User Application purported to offer a position in

exchange for a non-refundable donation to Ecology Crossroads and represented that

all donations are tax deductible. [*Id.* at PageID #3597]. The User Application

17

further stated that after two (2) full years, a member of the cooperative will be able

to sell, transfer, or retire their space based on the actual value of their share. [*Id.*].

The cost of purchasing a membership in the cooperative was described as follows:

> Doing the math a person can join the cooperative now during the charter stage under one of four options to get the ID Card, Company Login, Workplace and Cloud Identity (**Join Us Now** using **PayPal**). PayPal users can adjust their **donation payment** to match the amounts displayed below:
>
> 1.  $1,000 now, then $25 per month in 2023; (Founder)
>
> 2.  $1,000 now, then $250 per year in 2024; (Charter)
>
> 3.  $389.50 now, then $300 per year in 2024; (Professional)
>
> 4.  $164.50 now, then $25 per month; (Ten Percenter)
>
> 5.  $139.50 now, then $25 per month; (Five Percenter) (ends February 28, 2023)

The User Application also provided that:

> All those that join the cooperative will receive legal forms that need to be printed, signed, and photographed during the month of January and then in February as the necessary services become available ID Cards will begin arriving in the mail.  All members must maintain their monthly payments to maintain services and the shares or proportional shares they have accrued, **at the end of 2023 all 5 & 10 percent members are upgraded to Professionals**.

[Hr'g Tr. Vol. 2 [DE 122], PageID #3598-99].

18

According to Wright, you go to the Website to get the User Application, pay whatever amount you choose "[t]o be able to edit the website, to be able to get your own - - own - - own vanity email which is basically name@colonelcy.net or kycolnelcy.us." [*Id*. at PageID #3601]. The User Application referred to "all members" maintaining their monthly payments to maintain services, and Wright testified that they were "members of the group - - of the community." [*Id.* at PageID #3599].

### 3.    Wright was Unjustly Enriched Through His Contempt of the Agreed Permanent Injunction.

Wright "made the start-up initiative profile" on the crowd-funding website crunchbase.com for "Kentucky Colonel$^{TM}$" and admits that the "about" section of the "Kentucky Colonel$^{TM}$" crunchbase.com website represents that the organization "is the source of Kentucky Colonel trademark and license." [Hr'g Tr. Vol. 1 [DE 121], PageID #3544-45]. Wright was responsible for the information on the "Kentucky Colonel$^{TM}$" crunchbase.com website stating that "[a]s a cooperative work group, we require an investment of $10,000 with a 10% good-faith deposit waiver ($1,000) to get into the cooperative and sign the NDA. . . . Any investor that is not a Kentucky Colonel now will become one by investing in this Kentucky business!" [*Id*. at PageID #3547]. The "Kentucky Colonel$^{TM}$" crunchbase.com website stated that $7,500 has been raised. [*Id*. at PageID #3548]. Wright confirmed that the funds raised on the "Kentucky Colonel$^{TM}$" crunchbase.com website "have been spent" on

setting up another group and the artwork, layout, and scale drawings of a new logo or seal for the state of Kentucky "which is what [Defendants are] calling the official Kentucky Colonel seal." [*Id.* at PageID #3545].

Wright candidly acknowledged that his internet and social media activities were intended to extort a payoff from HOKC, testifying that he was looking for a "good faith offer" to provide "all of the intellectual property which [he had] researched and accumulated in [his] Creative Commons encyclopedia" online and on the Website. [Hr'g Tr. Vol. 2 [DE 122], PageID #3610].   This testimony is consistent with Wright's admission that his actions were patterned after an extortionate scheme where he "realized a return of more than $50,000" after cybersquatting on domain names such as "Arborday.com." [Defendant's Motion to Take Judicial Notice [DE 103], PageID #3321].   Wright stated that a similar extortionate payment "may be a good option" for HOKC.  [*Id.*].

> **4.     Wright's Use of Marks that are Confusingly Similar to the KENTUCKY COLONELS Mark Continued to Cause Damage to HOKC.**

HOKC experienced actual confusion as a result of Wright's activities using the infringing marks.  For example, four (4) separate HOKC members contacted HOKC in December 2022 regarding the validity of the KENTUCKY COLONEL Facebook page offering "Kentucky Colonel Photo ID Cards."  [2023 Verified Compl. [DE 97], PageID #2126].  One (1) member contacted HOKC on December

30, 2022 with concerns over Wright's creation of badges. [*Id*.]. Another HOKC member contacted HOKC on January 13, 2023 regarding obtaining a badge similar to those discussed on the KCI Website and Wright's various social media pages. [*Id*.]. Two (2) HOKC members contacted HOKC regarding confusion as to the KENTUCKY COLONEL COMMUNITY Facebook group, the KENTUCKY COLONEL CLUB Facebook group, and the KENTUCKY COLONEL Facebook page, believing the accounts to be run by HOKC. [*Id*.]. One (1) of those members was particularly confused by a post in the KENTUCKY COLONEL COMMUNITY Facebook group regarding "No More Confusion in the 'Kentucky Colonel Community'" understanding the post to mean that HOKC was restarting. [*Id*.]. The individual was also confused as to why he was being asked to contribute financially again. [*Id*.].

Sherry Crose, HOKC's Executive Director, testified that HOKC documented more than one hundred (100) complaints or inquiries regarding Wright's activities from its members since December 2022. [Hr'g Tr. Vol. 2 [DE 122], PageID #3624]. HOKC's members expressed anger, confusion, and concern about Wright's attempts to market the Kentucky Colonels Cooperative, his promotion of other membership organizations targeting Kentucky Colonels, his offers to sell ID cards, badges, and other goods, and his solicitation of funds for Ecology Crossroads and other organizations. [*Id.* at PageID #3621-23]. Finally, Crose confirmed that, while the

21

specific damages resulting from Wright's activities were difficult to quantify, Wright's actions required HOKC to spend in excess of $65,000.00 in attorneys' fees from December 2022 through April 2023. [*Id.* at PageID #3627-28].

## I.    The District Court Ordered the Parties to Submit Proposed Findings of Fact and Conclusions of Law.

After the evidentiary hearing on HOKC's contempt motion, the Court directed the parties to file proposed findings of fact and conclusions of law within thirty (30) days of the filing of the transcript of the hearing. [*See* 5/16/23 Order [DE 120]]. That deadline was extended seven days by Order dated June 22, 2023 [[DE 125], PageID 3667]. HOKC tendered its proposed Findings of Fact and Conclusions of Law on June 28, 2023 [[DE 126], PageID #3668-3691. Wright chose to not file proposed findings of fact or object to HOKC's filing.

On July 31, 2023, seven (7) months after the contempt proceedings were initiated and more than a month after the briefing deadline established by the Court, Wright tendered two filings; (1) Motion for Leave to File Motion to Stay Proceedings on Multiple Grounds and Continuance [[DE 127], PageID #3692] (the "Motion to Stay"), and (2) Motion for Continuance and Time Extension and/or Stay "Stay. [sic] Requested" "Immediate Relief Requested" [DE 128] (the "Motion for Continuance"). Neither motion purported to seek recusal of Judge Jennings. In fact, the Motion to Stay [DE 127] did not even mention recusal or disqualification. The

only reference to recusal was in a strange attachment to the motion purportedly directed "To the Clerk of Court" stating:

> The Court may still dismiss this case based on any one of three timely motions (that were filed earlier in the case) which are still pending in abeyance (unheard either ignored or slighted); however here too in this ***combined special pro se motion*** is included a Motion to Recuse Judge Rebecca Grady Jennings from the case due to the fact that her appointment to the US District Court Judge <u>directly depended on two well-known Kentucky Colonels</u> that are proud members of the Plaintiff's organization Sen. Mitch McConnell and President Donald Trump and Judge Jennings very frequently associates with many other people who are in-fact Kentucky Colonels, and has personal best friends that are Kentucky Colonels, who are also members of the Plaintiff's organization therefore the Clerk is advised to notify the Honorable Greg N. Stivers, Chief Judge of the Court who may also be a 'Kentucky Colonel' himself to consider disposing of this case as one that cannot be fairly tried in a Kentucky Courtroom or the immediate neighboring jurisdiction because of the number of people that are active or inactive members of the Plaintiff's Organization in Kentucky with a Temporary Stay and Change of Venue to Washington, DC where key witnesses (neutral experts) to the allegations in abeyance by the Defendant against the Plaintiff and those in the forthcoming counterclaim can be heard without incurring additional expenses to this case, some of who are government employees.

[[DE 127-1], PageID #3695]. The document was not accompanied by an affidavit or other proof to support any of the statements directed at Judge Jennings and did not include the referenced "combined special pro se motion." No proposed order was tendered with the Motion for Stay. [*See* DE 127].

Likewise, the Motion for Continuance [DE 128] did not request or demand recusal or disqualification of Judge Jennings, and the proposed order tendered

therewith did not provide for recusal or disqualification.  [*See* DE 128-3].  Rather,

the document included a single paragraph on "Recusal of the Judge" stating:

> This case ***may*** also be subject to 28 U.S. Code §455 – 'disqualification of justice, judge, or magistrate judge' (*also see* Rule 2.11: Disqualification) because Judge Rebecca Grady Jennings ***may*** be directly connected or linked to the Plaintiff, possess a financial interest in the Plaintiff's organization, be closely acquainted with members of the Plaintiff's Board of Trustees, or part of another organization that has received grants from the Plaintiff, ***may*** have donated to the Plaintiff, ***may*** have purchased goods from the Plaintiff, ***may*** have received invitations to social functions hosted by the Plaintiff, ***could have*** participated in events hosted by the Plaintiff in Louisville or in association with the Kentucky Derby, and was definitely appointed to become District Court Judge by a Kentucky Colonel (President Colonel Col. Donald Trump), and suggested for the position of US District Court Judge by Senator Col. Mitch McConnell, also a "Kentucky Colonel."  Both members of the Plaintiff's organization at the time the Judge was appointed and prior to taking up this case.

[*Id*. at PageID #3705-06] (emphasis added).  The document went on to state that "the

Defendant ***does not*** move for dismissal or upset on Rule 2.11, ***but will use it if the***

***matter must be appealed***, because the Defendant strongly believes that the court will

dismiss the case, restart the case and/or order arbitration and remediation to preserve

the integrity of the Court Mediated Agreement."  [*Id*.] (emphasis added).  In other

words, Wright specifically stated that he was ***not*** seeking recusal because he

believed Judge Jennings would rule in his favor, but he would ***use*** such a motion on

appeal if she did not.

24

**J.    The District Court Properly Found Wright in Contempt of the Agreed Permanent Injunction.**

The District Court found that HOKC had established by clear and convincing evidence that Wright had violated the Agreed Permanent Injunction.    [8/9/23 Memorandum Opinion and Order [DE 129], PageID #3714.  The District Court held Wright in contempt and ordered Wright to (1) abide by the Agreed Permanent Injunction; (2) cease use of the KENTUCKY COLONELS Mark; and (3) pay $7,500 in compensatory sanctions for failure to abide by the Agreed Permanent Injunction. [*Id.*]  The District Court also directed HOKC to file a motion for attorneys' fees within ten (10) days.  [*Id.*].  The Memorandum Opinion and Order further addressed Wright's pending motion to hold HOKC in contempt and to expedite consideration of the matter [DE 113] and Wright's motion to dismiss the action [DE 116] as well the Motion to Stay [DE 127] and the Motion for Continuance [DE 128], noting that the motions were "contradictory" with one another.  [8/9/23 Memorandum Opinion and Order [DE 129], PageID #3724.  The Court further noted that the Motion for Continuance and the Motion to Stay were untimely because "over seven months have passed, since the start of this enforcement action and this request only comes after all the deadlines for briefing have passed."  [*Id*. at PageID #3725].  The Court held that Wright failed to justify his request for additional time to respond to HOKC's Proposed Findings of Fact and Conclusions of Law and that the request was filed "out of time over a month after such filings were due." [*Id*.]. The Court

25

specifically noted that it had reviewed each of Wright's filings, ***including the Motion for Stay and Motion for Continuance*** and stated "having reviewed each of Wright's filings, the Court concludes that the arguments in Wright's various motions are meritless, and **DENIES** his various motions." [*Id*.].

### K.    The District Court Properly Awarded HOKC Attorneys' Fees and Costs Associated with Prosecuting the Contempt Motion.

The District Court subsequently found that HOKC was entitled to attorneys' fees and costs associated with prosecuting the motion for contempt. [11/13/23 Memorandum Opinion and Order [DE 138], PageID #3838]. While the Court found that $94,254.75 of the attorneys' fees requested by HOKC was reasonable, it awarded only ten percent (10%) of those fees ($9,425) as a result of Wright's alleged inability to pay. [*Id*. at PageID #3844]. In addition, the Court awarded costs totaling $1,052.25. [*Id*. at PageID #3845]. The Court stated that the award was "sufficient to reflect the seriousness of Wright's contemptuous conduct and promote deterrence." [*Id*. at PageID #3844].

### SUMMARY OF THE ARGUMENT

Wright agreed to the injunction that he is now complaining about. He negotiated the terms of the injunction as part of the Court mediated settlement of HOKC's trademark infringement claims. He knew ***exactly*** what the Agreed Permanent Injunction was going to say before it was entered by the Court. Fifteen

(15) months later, he initiated a campaign which violated the Agreed Permanent Injunction by organizing, operating, and soliciting funds for competing organizations and enterprises using the KENTUCKY COLONELS Mark and marks confusingly similar thereto. Wright's infringing organizations were not charities or even registered entities, yet he actively solicited donations from Kentucky Colonels thereby intercepting, or attempting to intercept, relationships that HOKC has built over decades using the KENTUCKY COLONELS Mark.  HOKC attempted to resolve the matter without the District Court's intervention, but Wright disregarded HOKC's cease and desist letter and revved up his online activity, continuing to confuse and mislead hundreds, if not thousands, of Kentucky Colonels.  HOKC provided the District Court with irrefutable evidence that Wright violated the Agreed Permanent Injunction and the District Court properly ordered Wright to cease his improper conduct and disgorge the proceeds of such activities.  HOKC also properly supported its request for attorneys' fees with detailed billing records and other documentation, thereby supporting the Court's award of attorneys' fees and costs. The District Court's determinations on these issues should not be disturbed.

## <u>STANDARD OF REVIEW</u>

An appellate court reviews a district court's finding of civil contempt for an abuse of discretion. *CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015); *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 550 (6th

27

Cir. 2006). Since the decision to hold a party in contempt is within the sound discretion of the district court, the court of appeals will only reverse if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard. *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017). An appellate court will not reverse the district court simply because it would have decided the case differently. Rather, a reviewing court must ask "whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quotation marks and citations omitted).

## ARGUMENT

### I.   WRIGHT'S ATTEMPT TO RE-ARGUE THE MERITS OF HOKC'S UNDERLYING INFRINGEMENT CLAIM IS IMPROPER.

Virtually the entirety of the Wright Brief is devoted to re-litigating the underlying infringement case. Dissatisfied with the arrangement he negotiated to induce HOKC to dismiss the 2020 Verified Complaint, Wright now claims that the District Court erred when it entered the Agreed Permanent Injunction by (1) ignoring *The Honorable Order of Kentucky Colonels v. Building Champions*, 345 F. Supp. 2d 716 (W.D. Ky. 2004), thereby improperly expanding HOKC's trademark rights; (2) imposing an unconstitutional prior restraint on speech in violation of the First Amendment; (3) failing to conduct the required likelihood of confusion analysis

28

before finding trademark infringement; (4) improperly treating HOKC's trademarks as "famous" without legal justification; (5) failing to distinguish between commercial and non-commercial use of the term "Kentucky Colonel"; (6) improperly extending injunctive relief to HOKC's trademark applications; (7) failing to recognize that "Kentucky Colonel" is a historical and honorary title and not properly trademarked; (8) failing to scrutinize HOKC's representations to the USPTO regarding the scope of its trademark rights; and (9) allowing HOKC to engage in fraudulent concealment by failing to disclose the historical use of "Kentucky Colonel" as a title rather than a brand. [Wright Brief, page 16-18]. All of those issues were raised by Wright, or could have been raised by Wright, in the underlying infringement action. The District Court's rejection of those arguments was, no doubt, the reason Wright agreed to settle HOKC's claims through entry of the Agreed Permanent Injunction. Those issues cannot be re-litigated in this appeal.[9]

---

[9] Contrary to Wright's assertions, these issues, to the extent they were raised, were addressed by the District Court. For example, in ruling on HOKC's motion to extend the temporary restraining order, the Court extensively analyzed Wright's reliance on *The Honorable Order of Kentucky Colonels v. Building Champions, LLC*, 345 F. Supp.2d 716 (W.D. Ky. 2004), finding the case distinguishable. [3/23/20 Order [DE 32], PageID #815-16]. Wright's First Amendment and free speech arguments were repeatedly raised in his multiple motions to dismiss, all of which were rejected by the District Court. [8/13/20 Order [DE 58], PageID #1229-33]. The Court also conducted the required confusion analysis in extending the temporary restraining order in March 2020 [3/23/20 Order [DE 32], PageID #813-19]. The other issues were raised by Wright in his various motions to dismiss and/or motions for summary judgment, all of which were denied by the Court prior to entry of the Agreed Permanent Injunction. [*See* 8/13/20 Order [DE 58], PageID #1221-33].

The issue in a contempt proceeding is not whether anyone infringed plaintiff's protected marks, but whether the defendant or its agents violated the injunction. *North Face Apparel Corp. v. Williams Pharmacy, Inc.*, 4:09cv2029 RWS, 2012 WL 13055689 *2 (E.D. Miss. Oct. 10, 2012); *Toyo Tire & Rubber Co., Ltd. v. Hong Kong Tri-Ace Tire Co., Ltd.*, 281 F. Supp. 3d 967, 984-85 (C.D. Cal. 2017). It was not necessary for the District Court to perform a full infringement analysis because the matter was "past the infringement stage." *Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994). The only question at the contempt stage is whether Wright violated the Agreed Permanent Injunction; that is, whether he used the KENTUCKY COLONELS Mark or a "confusingly similar" mark. *Mears v. Montgomery*, 535 Fed. Appx. 37, 39 (2d Cir. 2013). ("The district court did not abuse its discretion in considering only whether Appellant's use of the name 'Philly Intruders' was confusingly similar to the 'The Intruders' mark, rather than conducting a full infringement analysis."). All of Wright's arguments concerning the underlying infringement issues are irrelevant.

When considering a contempt motion, the Court does not look beyond the terms of the injunction itself. *Wella Corp.*, 37 F.3d at 48. It should not retry the merits of the underlying claims by, for example, applying multi-factor confusion tests initially applicable to such claims before the entry of injunctive relief because "[t]he injunction . . . would be of questionable value if enforcement against every

alteration of the infringing mark required a relitigation of the [prima facie infringement] factors." *Id.* It would also lead to the anomaly of a plaintiff, who has already obtained injunctive relief, being required to reprove the merits with clear and convincing evidence to enforce the decree. *Id.*

*Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1321–22 (9th Cir. 1997), instructs that the same rule against relitigating the merits applies equally to both court-initiated injunctions and agreed injunctions: "[A] plaintiff . . . , who already has a judgment establishing that the defendant has infringed, is not required to muster all of the evidence it would need to make out an original infringement case in order to prove contempt." *Id.* at 1322. The plaintiff "would have had no incentive to settle its infringement case if the resulting injunction could not be enforced without renewed litigation of all of the elements of its original infringement claim." *Id.* This procedure "is consistent with the rule that an infringer must keep a fair distance from the 'margin line'" established by the injunction's restrictions. *Id.* at 1323.

Indeed, this Court has repeatedly stated that a party which is subject to an injunction has a duty to keep a safe distance from the line drawn by the injunction, and that the so-called "Safe Distance Rule" is "a well-accepted part of the court's remedial toolkit. *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 763 F.3d 524, 546 (6th Cir. 2014). It "'reliev[es] the reviewing court of the need to retry the entire

31

range of issues that may be relevant in an infringement action for each small variation the defendant makes.'" *Id.* at 544 (quoting *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 118 (2d Cir. 2008)). The Safe Distance Rule may even prevent an enjoined party from engaging in activities that would not be actionable if undertaken by an innocent third party. *Id.*

In *Innovation Ventures*, this Court recognized that "[o]nce a party infringes on another's trademark or trade dress, the confusion sowed 'is not magically remedied' by *de minimis* fixes." *Id.* (quoting *Taubman Co. v. Webfeats*, 319 F.3d 770, 779 (6th Cir. 2003)). This lingering confusion obligates the enjoined defendant "not only to secure a new non-infringing name (or other infringing characteristic) for his product, ***but one so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related***." *Id.* (emphasis added); *see Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353, 354 (6th Cir. 1930) ("The due protection of trade-mark and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves."). "If the law were otherwise, an enjoined party 'could simply make a tiny change and start a new trademark contest all over again in the context of the

contempt hearing as to use of the 'new' format.'"  *Innovation*, 763 F.3d at 544 (citation omitted).

Here, Wright attempted to make a "tiny change," claiming that his omission of the "s" at the end of "Colonel" sufficiently remedied infringement.  [Wright Brief, p. 56].  While the District Court did not expressly rely on the Safe Distance Rule in finding Wright in contempt, it certainly was available as part of the court's "remedial tool kit."  Regardless, Wright's efforts to inject the underlying infringement issues into the instant appeal is completely unavailing.  The Agreed Permanent Injunction would be of no value if every enforcement action against Wright required re-litigation of the merits.

## II.    WRIGHT'S ASSERTION THAT THE DISTRICT COURT FAILED TO RULE ON A RECUSAL MOTION BEFORE ISSUING SUBSTANTIVE ORDERS IS SIMPLY NOT TRUE.

Wright repeatedly asserts that the District Court committed reversible error by failing to rule on his recusal motion before issuing substantive orders.  [Wright Brief, pp. 15 and 34-39].  ***Wright never made a motion to recuse.***  The filings Wright identifies as his "embedded" recusal motion – the Motion to Stay [DE 127] and Motion for Continuance [DE 128] – were directed at topics vastly different from recusal and ***did not*** request or demand Judge Jennings' disqualification.  In fact, the Motion for Continuance [DE 128] stated "the Defendant ***does not*** move for [recusal], but will use it if the matter must be appealed, because the Defendant strongly

believes that the court will dismiss the case, restart the case and/or order arbitration and remediation to preserve the integrity of the Court Mediated Agreement." [[DE 128], PageID #3706 (emphasis added)].  In other words, Wright specifically stated that he was **not** seeking recusal because he believed that Judge Jennings would rule in his favor, but he would demand recusal on appeal if she did not.  Wright's attempt to hedge does not constitute a motion to recuse.

Contrary to Wright's assertion, there is no such thing as an "embedded motion."  Instead, Rule 7(b)(1)(B)(c) of the Federal Rules of Civil Procedure requires a motion to "state with particularity the grounds for seeking the order," and to "state the relief sought."  Neither of the filings that Wright claims constituted his recusal request – the Motion to Stay [DE 127] and the Motion for Continuance [DE 128] – meet that standard.  A request that is not presented as a separate, formal motion and stated with particularity – such as a request made in a footnote – need not be considered by the court.  *Harvey v. CNN, Inc.*, 48 F.4th 257, 277-79 (4th Cir. 2022) (district courts should not rule on "minimally addressed" issue based on arguments raised only in a footnote, as such ruling would be unfair to opposing party and would risk improvident or ill advised opinions).  The particularity requirement is important because it gives notice to the court and the opposing party, providing the opposing party with a meaningful opportunity to respond to the movant's arguments, and providing the court with enough information to process the motion

correctly.  *See Evans v. Pearson Entrs., Inc.*, 434 F.3d 839, 853-54 (6th Cir. 2006).

Here, there was no meaningful opportunity for HOKC to respond or notice to the

District Court because Wright failed to identify and clearly state a request for

recusal.

Even if the Federal Rules of Civil Procedure allowed for an "embedded"

recusal motion, Wright's attempted recusal request utterly failed to offer the

necessary grounds to support such a motion.  Recusal is governed by two (2) federal

statutes.  *See, e.g.*, *Qiu v. Anderson Cnty. High School*, No. 3:21-cv-00027-GFVT,

2023 WL 6122142, at *1 (E.D. Ky. Sept. 12, 2023).  The first, 28 U.S.C. § 144

provides that a judge shall recuse if a party files a timely affidavit which establishes

that the judge has "personal bias or prejudice against him or in favor of an adverse

party."  The second, 28 U.S.C. § 455, imposes upon judges "an independent, self-

executing duty to recuse."  *Silverburg v. Webb*, No. 3:06-cv-P600-H., 2007 WL

1070354, at *1 (W.D. Ky. April 4, 2007) (citing *United States v. Story*, 716 F.2d

1088, 1091 (6th Cir. 1983)).  Recusal under this second statutory method should

happen *sua sponte* by the judge him or herself, not by motion.  *See id.* (citing *Story*,

716 F.2d at 1091) ("Generally, a party may move to recuse a judge under 28 U.S.C.

§ 144, whereas, a judge has an independent, self-executing duty to recuse himself

under 28 U.S.C. § 455."); *see also* 28 U.S.C. § 455(a) ("Any justice, judge or

35

magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.").

Wright did not tender an affidavit with either the Motion to Stay [DE 127] or the Motion for Continuance [DE 128].[10] So, apparently, the second method – which does not happen by motion – is the method Wright contends should have occurred. But neither the Motion to Stay [DE 127] nor the Motion for Continuance [DE 128] provided ***factual*** grounds necessary to trigger consideration of recusal. Indeed, Wright merely stated that recusal should be considered because Judge Jennings ***may*** have donated to HOKC, ***may*** be linked to HOKC, ***may*** have received invitations from social functions hosted by HOKC, and ***could have*** participated in events sponsored by HOKC. [Motion for Continuance [DE 128], PageID #3705-06]. Such speculation hardly constitutes the facts necessary to satisfy the high threshold required for judicial disqualification.

Moreover, even if Wright's so-called "embedded" recusal motion provided grounds for the request, there is no Sixth Circuit caselaw requiring a recusal motion to be ruled on before the Court can proceed to substantive rulings. Wright cites one

---

[10] In a transparent attempt to fabricate a record, Wright filed a one hundred and eleven (111) page document styled Defendant's Motion for Recusal of Judge Rebecca Grady Jennings Under 28 U.S.C. §§ 455(a) and 144 ***the day before the deadline for filing his appellate brief***. [*See* Defendant's Motion for Recusal of Judge Rebecca Grady Jennings Under 28 U.S.C. §§ 455(a) and 144] [DE 170]]. Prior to March 18, 2025, Wright had not tendered any affidavit supporting a demand for Judge Jennings' recusal or provided any legitimate grounds for disqualification.

(1)  case for that proposition, *United States v. Sammons*, 918 F.2d 592 (6th Cir. 1990).  Wright states that, under *Sammons*, "a trial court must decide a motion for recusal before issuing any substantive rulings." [Wright Brief, p. 34].  But *Sammons* ***does not*** say that.  The section of *Sammons* that Wright cites discusses recusal, but it merely lays out the standard for recusal under 28 U.S.C. § 455 and then applies the standard to the particular facts of that case.  It does not say, or even suggest, that a recusal motion is a threshold issue that must be resolved before a court can rule on any other matter.

Finally, contrary to Wright's assertions, Judge Jennings ruled on both the Motion to Stay [DE 127] and the Motion for Continuance [DE 128], specifically denying the motions in her August 9, 2023 Memorandum Order and Opinion [DE 129].  Indeed, the Court specifically noted that the motions were "contradictory" with Wright's request that the Court expedite review of this matter. [8/9/2023 Memorandum Order and Opinion [DE 129], PageID #3724].  Wright's argument that the Court improperly failed to consider recusal is completely without merit.

## III.  THE DISTRICT COURT HAS INHERENT POWER TO ENFORCE THE AGREED PERMANENT INJUNCTION.

A federal court possesses inherent power to enforce its judgments. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("We have reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments. Without jurisdiction to enforce a judgment

entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.") (internal quotation marks and citation omitted).  Moreover, "it is firmly established that the power to punish for contempt is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  Absent the ability to hold a party in contempt for willful violations of court orders, a court is made "impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *United States v. United Mine Workers of America*, 330 U.S. 258, 290 n.56 (1947) (internal citation omitted).  A court's contempt power is "one weapon in its arsenal" that may be deployed to enforce its orders. *Elec. Workers' Pension Tr. Fund of Loc. Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003).

## IV.    HOKC PROVIDED CLEAR AND CONVINCING EVIDENCE OF WRIGHT'S CONTEMPT OF THE AGREED PERMANENT INJUNCTION.

A party seeking a civil contempt order "must prove by clear and convincing evidence that the respondent violated the court's prior order." *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998).  "Clear and convincing evidence is not a light burden and should not be confused with the less stringent, proof by a preponderance of the evidence." *Elec. Workers' Pension Tr. Fund of Loc. Union #58, IBEW*, 340 F.3d at 379.  The movant must show that the non-movant "violated a definite and specific order of the court requiring him to perform or refrain from performing a

particular act or acts with knowledge of the court's order." *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (internal quotation omitted). "The burden of showing that an order is definite and specific is heavy." *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017). The standard "guards against arbitrary exercises of the contempt power" and helps ensure that the sanction is "reserved for those who 'fully understand[ ]' the meaning of a court order and yet 'choose[ ] to ignore its mandate.'" *Id.*

Here, HOKC established, by clear and convincing evidence through Wright's own testimony and written discovery responses, as well as the testimony of others, that (1) Wright was fully aware of the Agreed Permanent Injunction because the Parties stipulated and agreed to its entry; (2) the Agreed Permanent Injunction was definite and specific; (3) Wright knowingly and consciously violated the Agreed Permanent Injunction; (4) Defendants did not take reasonable steps to comply with the Agreed Permanent Injunction or provide evidence as to why they were categorically unable to comply with the Agreed Permanent Injunction; and (5) an award of damages is warranted.

The Agreed Permanent Injunction prohibits Wright from using the KENTUCKY COLONELS Mark or any mark that is confusingly similar to the KENTUCKY COLONELS Mark in connection with (1) the sale of goods or services; (2) the solicitation of charitable donations; (3) the promotion of charitable

or philanthropic causes; (4) the promotion of membership organizations; or (5) any other commercial purpose. [DE 93, ¶1].[11]  Wright knowingly and consciously violated the Agreed Permanent Injunction by, among other things, publishing the "Kentucky Colonel™ User Application" on the Website offering memberships in the Kentucky Colonel cooperative; using the Website to tout the Kentucky Colonel cooperative as a vehicle for commissioned Kentucky Colonels to become professional Kentucky Colonels; using the Website and his Kentucky Colonels cooperative to market badges, nameplates, and a Kentucky Colonels registry; and using the "Kentucky Colonel™ User Application" to solicit donations to Ecology Crossroads.

---

[11] In his misguided analysis of the "Collateral Bar" rule – a doctrine that has no application to the instant action – Wright states that the District Court "acted as if the preliminary injunction still controlled the case" by "failing to account for the existence of Section 5 [of the Agreed Permanent Injunction]." [Wright Brief, p. 57]. The District Court's opinion on the contempt order did not quote Section 5 of the Agreed Permanent Injunction because that provision was not implicated in HOKC's contempt motion.  Wright never asserted that any of the violations at issue constituted "editorial, educational, informative, journalistic, literary, or other noncommercial" activities related to the honorary Kentucky Colonel title.  Indeed, his creation of a collective "licensing program" known as the Kentucky Colonel Cooperative, his solicitation of newly commissioned Kentucky Colonels to become members of the Kentucky Colonel Community organization *for a fee*, and his marketing of Kentucky Colonel ID cards, Kentucky Colonel business cards, Kentucky Colonel plaques, Kentucky Colonel badges, and a Kentucky Colonel registry, *all in exchange for payment*, hardly constitute educational, noncommercial activities.  Contrary to Wright's assertions, Judge Jennings was enforcing the applicable provisions of the Agreed Permanent Injunction and did not, as Wright contends, "wrongly assume that the preliminary injunction still controlled." [Wright Brief, p. 58].

Wright also consciously violated the Agreed Permanent Injunction by establishing the "Kentucky Colonel$^{TM}$" crunchbase.com crowdfunding website, representing that "Kentucky Colonel$^{TM}$" is the "source of Kentucky Colonel Trademark and License," soliciting funds through the "Kentucky Colonel$^{TM}$" crunchbase.com crowdfunding website, and then using those funds for his own personal enrichment. Wright knowingly violated the Agreed Permanent Injunction when he posted an offer to sell "the trademark Kentucky Colonel website (w/4 domains)" on the Kentucky Colonel Facebook page stating that the website and accompanying social media accounts were "ripe for commercial development." And Wright violated the Agreed Permanent Injunction in January 2023 when he used his Kentucky Colonel LinkedIn page to promote a "collective licensing program" for Kentucky Colonels which promised Kentucky Colonels over 21 years of age a program to "have a professional career as a Kentucky Colonel and make your old career secondary." [Hr'g Tr. Vol. 1 [DE 121], PageID #3534].

The Agreed Permanent Injunction prohibited Wright from using Facebook or any other social media platform usernames or handles that are confusingly similar to the trademark KENTUCKY COLONELS for the purposes of forming a membership organization. [DE 93, ¶4]. The District Court correctly found that all of Wright's Facebook, LinkedIn, and other social media postings concerning his Kentucky Colonels cooperative blatantly violated this prohibition.

## V.    WRIGHT'S ATTEMPTED JUSTIFICATION OF HIS VIOLATIONS OF THE AGREED PERMANENT INJUNCTION WERE LEGALLY WITHOUT MERIT.

It was Wright's position that he was not violating the Agreed Permanent Injunction when not using "s" at the end of "colonel" because "using the term Kentucky Colonel is not confusingly similar to the KENTUCKY COLONELS Mark." [Hr'g Tr. Vol. 1 [DE 121], PageID #3521].  When asked whether it was his "position that [he] could start and promote an organization using the term Kentucky Colonel without an s that does not violate the injunction order," Wright stated:

> Yeah, I believe so. As long as we're - - we're very clearly disambiguating ourselves from the Honorable Order of Kentucky Colonels. So we went ahead and added the TM symbol because that's an unregistered form of a trademark and we're calling it title mark because essentially by using that we're telling everyone that we are unregistered and we're also individuals. We're using that in the sense of common law which is essentially the same way it's used on the certificates that are granted by the governor; Kentucky Colonel.

[*Id.* at PageID #3522].  Thus, Wright claimed he could sell goods and services, solicit charitable donations, form membership organizations, and engage in all types of commercial activity as long as he used the term "Kentucky Colonel" without an "s." The District Court properly rejected that argument.

The Lanham Act prohibits any person from using "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods

or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).  Further, the Lanham Act prohibits the false designation of origin that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another . . . or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A).  The Lanham Act also provides for civil liability for any person who "registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to" a registered mark. 15 U.S.C. § 1125(d)(1)(A)(ii)(I).

A likelihood of confusion analysis involves an analysis of certain factors, although only those relevant factors for which there is evidence in the record need be considered, with the main two (2) factors being the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation, and commercial impression; and the relatedness of the goods or services. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973).

Notably, marks may be confusingly similar in appearance despite the addition, deletion, or substitution of letters or words. *See, e.g.*, *Weiss Assocs. Inc. v. HRL Assocs. Inc.*, 902 F.2d 1546 (Fed. Cir. 1990); *In re Pix of Am., Inc.*, 225 USPQ 691 (TTAB 1985) (finding NEWPORTS and NEWPORT to be essentially identical in

appearance).  The District Court properly ruled against Wright's attempt to justify his actions by omitting an "s" at the end of "Colonel."

## VI.   WRIGHT FAILED TO ESTABLISH THAT HE WAS UNABLE TO COMPLY WITH THE AGREED PERMANENT INJUNCTION.

"Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order." *Elec. Workers' Pension Tr. Fund of Loc. Union #58, IBEW*, 340 F.3d at 379.  The respondent can assert an inability to comply, but the "defendant must show 'categorically and in detail' why he or she is unable to comply with the court's order." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996).  "Willfulness is not an element of civil contempt, so the intent of a party to disobey a court order is irrelevant to the validity of [a] contempt finding." *Id.* (internal quotation omitted).  "[T]he test is not whether defendants made a good faith effort at compliance but whether 'the defendants took all reasonable steps within their power to comply with the court's order.'" *Glover*, 138 F.3d at 244 (citing *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991)).  Good faith is not a defense to a civil contempt action. *Id.*  An officer of a corporation responsible for its affairs is "subject to the court's order just as the corporation itself." *Elec. Workers' Pension Tr. Fund of Loc. Union #58, IBEW*, 340 F.3d at 382.

Here, Wright did not even attempt to establish that he was unable to comply with the Agreed Permanent Injunction. Rather, Wright candidly and repeatedly acknowledged that his actions were intended to promote a competing membership organization for Kentucky Colonels; market ID Cards, badges, and other types of products as inducements to prospective members of that organization; generate donations for Ecology Crossroads; and generate money for his own personal enrichment using marks, domain names, social media handles, and other identifiers confusingly similar to the KENTUCKY COLONELS Mark. In fact, Wright specifically acknowledged that his activities were intended to, among other things, coerce HOKC to buy his social media handles and website.

## VII. THE DISTRICT COURT APPROPRIATELY SANCTIONED WRIGHT'S CONTEMPT OF THE AGREED PERMANENT INJUNCTION.

When it has been established that a party has violated the court's order, the court may impose both coercive and compensatory sanctions as a civil remedy. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947). A compensatory fine is payable to the complainant while a coercive fine is payable to the court. *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991); *Winner Corp. v. H.A. Caesar & Co.*, 511 F.2d 1010, 1015 (6th Cir. 1975) ("Contempt awards to private complainants are to be compensatory."). A compensatory "fine must of course be based upon evidence of complainant's actual

loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." *United Mine Workers of Am.*, 330 U.S. at 304; *Penfield Co. of Cal. v. Sec. & Exch. Com'n*, 330 U.S. 585, 594 (1947) ("When the court imposes a fine as a penalty, it is punishing yesterday's contemptuous conduct.").

In contrast, when a fine is coercive, the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers of Am.*, 330 U.S at 304.  Sanctions imposed for civil contempt are meant "to compel obedience to a court order and compensate for injuries caused by noncompliance." *Redken Labs. Inc. v. Levin*, 843 F.2d 226, 229 (6th Cir. 1988) (quoting *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983)).

The District Court's award of damages was completely supported by the record.[12]  The District Court correctly found that HOKC submitted proof that Wright raised $7,500 using the KENTUCKY COLONELS Mark.  [*See* 1/25/23 Verified Compl., Ex. 12 [DE 97-11] PageID #2637; Hr'g Tr. Vol. 1 [DE 121], PageID #3545-

---

[12] HOKC argued that the Court should treble the actual damages awarded under the Lanham Act, 15 U.S.C. § 1117(b).  The District Court declined that request on the grounds that it was attempting to "insure the sanction is compensatory and coercive but not punitive."  [8/9/23 Memorandum Opinion and Order [DE 129], PageID #3723].  Unfortunately, the compensatory damages award has not had the desired affect inasmuch as Wright continued to violate the Agreed Permanent Injunction Order even after being found in contempt.

49]. HOKC further proved that Wright's "Kentucky Colonel™" crunchbase.com website raised $7,500 by infringing on HOKC's mark. [*Id*. at 3545-47]. Wright testified that all funds raised on that website "have been spent" on what the Court determined to be an infringing use. [*Id*. at PageID #3545]. He further presented no evidence that his income from the website or the $7,500 amount was overstated. Therefore, the District Court's finding actual damages of $7,500 was correct.

In trademark cases, "[d]isgorgement of profits is a traditional remedy." *Cernelle v. Graminex, L.L.C.*, 437 F. Supp. 3d 574, 606 (E.D. Mich. 2020) (citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 695 (6th Cir. 2000)). Disgorgement of profits "is intended to compensate, not to punish." *Id.* (citing *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 487 F. Supp. 2d 861, 891 (E.D. Ky. 2007)). Disgorgement is available in contempt proceedings, wherein the court may consider "the state of mind of the contemnor" in fashioning an appropriate sanction, even though willfulness was not an element of the underlying civil contempt. *Id.* at 606-07 (quoting *Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir. 2005) (citing *Rogers v. Webster*, 776 F.2d 607, 612 (6th Cir. 1985))).

HOKC was entitled to disgorgement of Wright's profits from his infringing activities. The proof of record clearly established that Wright secured funds totaling at least $7,500 from his crunchbase.com crowdfunding website. If anything, the

compensatory damages award was low in light of the fact that Wright's contempt was knowing and willful.

**VIII.  THE DISTRICT COURT PROPERLY AWARDED ATTORNEYS' FEES AND COSTS ASSOCIATED WITH HOKC'S ENFORCEMENT OF THE AGREED PERMANENT INJUNCTION.**

The Sixth Circuit recognizes that an award of reasonable attorney's fees and expenses to a successful plaintiff in civil contempt proceedings may be appropriate. *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983) (citation omitted); *see also McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000) ("[A]n award of attorney's fees is appropriate for civil contempt in situations where court orders have been violated.").

When considering an award of fees, a court must first determine what fee is "reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A reasonable award is "one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) ("[g]enerally, a 'strong presumption' favors the prevailing lawyer's entitlement to [their] lodestar fee.") *Adock-Ladd*, 227 F.3d at 350 (citations omitted).

The District Court performed a thorough analysis of HOKC's fee request applying the legally appropriate standards. [11/13/23 Memorandum Opinion and Order [DE 138], PageID #3841]. Despite Wright's failure to object to or dispute the

48

calculation of fees, the District Court performed the required analysis of the fee request finding that fees totaling $94,254.75 were "reasonable and not duplicative." [*Id*. at PageID #3843]. Nevertheless, the District Court awarded only ten percent (10%) of those fees ($9,425) based on Wright's alleged inability to pay. [*Id*. at PageID #3844].[13] While the District Court's discount might have been overly generous, the fee award itself was legally justified and supported by the record.

HOKC attempted to resolve Wright's violations of the Agreed Permanent Injunction without court intervention. Because Wright refused and continued to violate the Agreed Permanent Injunction, HOKC was forced to initiate additional court proceedings. [*See, e.g.*, Hr'g Tr. Vol. 2 [DE 122], PageID #3627]. The District Court correctly determined HOKC was entitled to legal expenses it incurred in an effort to secure Wright's compliance with the Agreed Permanent Injunction.

## CONCLUSION

Wright repeatedly attempted to misappropriate HOKC's valuable trademark and use it for his own personal financial enrichment. Through the misappropriation of HOKC's KENTUCKY COLONELS Mark, Wright solicited "deductible charitable contributions" via social media and the internet, thereby intercepting, or

---

[13] Wright inexplicitly represents to the Court that "the District Court improperly awarded nearly $97,000 in attorneys' fees without considering Defendant's financial hardship …." [Wright Brief, p. 12]. Like many other statements in the Wright Brief, that statement is simply not true.

attempting to intercept, relationships that HOKC has built for decades using the KENTUCKY COLONELS Mark.  In order to avoid the repercussions of his infringing conduct, Wright agreed to restrict any future use of HOKC's protected mark or any mark similar thereto through the Agreed Permanent Injunction.  [2/19/21 Agreed Permanent Injunction [DE 91], PageID #2051].  When he violated that injunction, the Court held him accountable.  [8/9/23 Memorandum Opinion and Order [DE 129], PageID #3714].  Wright's attempts to misappropriate the goodwill of HOKC's protected mark and then avoid the consequences of violating restrictions to which he agreed is no way comparable to a civil rights action. The District Court did not err when it found Wright in contempt of the Agreed Permanent Injunction or when it ordered Wright to pay sanctions, attorneys' fees, and costs associated with his contempt. This Court should affirm the District Court's rulings.

## CERTIFICATE OF COMPLIANCE

1.     The undersigned hereby certifies that this brief complies with the type-volume litigation requirements of FRAP 32(a)(7)(B), as this brief contains 11,469 words according to a word count by the word-processing system used to produce this brief, exclusive of sections of this brief exempted by FRAP 32(a)(7)(B)(iii).

2.     The undersigned hereby certifies that this brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP

32(a)(6), as this brief has been prepared in a proportionally spaced typeface using

Microsoft Word in Times New Roman, font size 14.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that a true and correct copy of the foregoing has been served upon the following, via electronic mail, on the 14th day of April, 2025:

David J. Wright
david.wright@globcal.net
Edificio Torre 997, Local B
San Juan, Caracas
Distrito Capital, Venezuela 1021

*/s/ Cornelius E. Coryell II*
*Counsel for Plaintiff, The Honorable*
*Order of Kentucky Colonels, Inc.*

51

## PLAINTIFF/APPELLEE'S
## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| DESCRIPTION | RECORD ENTRY | PAGE ID# RANGE |
|---|---|---|
| Verified Complaint | 1 | 1-6 |
| Federal Trademark Registrations and Applications Chart | 1-2 | 27 |
| 2/21/20 Motion for Temporary Restraining Order and Preliminary Injunction | 7 | 147-159 |
| 2/25/20 Temporary Restraining Order | 14 | 501 |
| Defendants' Motion to Dismiss or Continue with Time Extension | 24 | 734 |
| 3/9/20 Text Order | 25 | Text Order |
| 3/23/20 Order | 32 | 813-819 |
| Defendants' Motion to Dismiss | 37 | 834-835 |
| Motion for Preliminary Injunction | 39 | 848 |
| Defendants' Amended Motion to Dismiss | 47 | 1021-1024 |
| Motion to Drop Defendants | 51 | 1061 |
| Motion for Leave to File Supplement to Amended Motion to Dismiss | 52 | 1067 |
| Supplemental Amended Motion to Dismiss and/or Motion for Summary Judgment | 52-2 | 1077-1080 |

| | | |
|---|---|---|
| 8/13/20 Order | 58 | 1218-1233 |
| Motion for Judgment on the Pleadings | 65 | 1292 |
| Motion for Declaratory Judgment | 82 | 1819 |
| 12/30/20 Report on Settlement Conference | 87 | 2023 |
| 2/23/21 Agreed Permanent Injunction | 93 | 2056-59 |
| 1/25/23 Verified Complaint | 97 | 2102-2126 |
| TM & USPTO Docs. | 97-2 | 2149 |
| Mediator's 2021 Proposal | 97-6 | 2611-2613 |
| PayPal Screenshot | 97-10 | 2624 |
| Charitable Organizations in Kentucky | 97-11 | 2633-2637 |
| News for Immediate Release | 97-14 | 2656-5267 |
| 3/13/23 Motion to Enforce Permanent Injunction Order | 99 | 2721 |
| Defendant's Motion to Take Judicial Notice | 103 | 3321 |
| 3/30/23 Order | 105 | 3361 |
| 5/16/23 Order | 120 | Text Order |
| 4/25/23 Show Cause Hearing Transcript Vol. 1 | 121 | 3521-3549 |
| 5/9/23 Show Cause Hearing Transcript Volume 2 | 122 | 3577-3628 |
| 6/22/23 Order | 125 | 3667 |

| | | |
|---|---|---|
| HOKC Findings of Fact and Conclusions of Law | 126 | 3668-3691 |
| Motion for Leave to File Motion to Stay Proceedings on Multiple Grounds and Continuance | 127 | 3692 |
| Cover Letter | 127-1 | 3695 |
| Motion for Continuance | 128 | 3705-3706 |
| Proposed Order | 128-3 | 3705-06 |
| 8/9/23 Memorandum Opinion and Order | 129 | 3714-26 |
| Notice of Appeal | 131 | 3800 |
| 11/13/23 Memorandum Opinion and Order | 138 | 3838-46 |
| Supplemental Notice of Appeal | 142 | 3864-72 |
| 4/22/24 Default Judgment | 150 | 3945 |
| Defendant's Motion for Judicial Notice FRE 201(b) | 170 | 4212 |

101282874.1