# IN THE UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

**RECEIVED**
5/5/2025
KELLY L. STEPHENS, Clerk

### Case Nos. 23-5795 & 23-6108

**HONORABLE ORDER OF KENTUCKY COLONELS, INC.,**

Plaintiff-Appellee,

v.

**COL. DAVID J. WRIGHT,**

Individually and on behalf of all other similarly titled individuals.

**Defendant-Appellant**

---

## <u>APPELLANT'S MOTION FOR LEAVE</u>

## MOTION FOR LEAVE TO FILE SUPPLEMENTAL MOTIONS INCLUDING REVISED JUDICIAL NOTICE BASED ON HISTORICAL EVIDENCE AND FRAUD (2020–2024)

**COMES NOW** Appellant, Col. David J. Wright, appearing *pro se* and *in forma pauperis*, and respectfully moves this Honorable Court for leave to file additional motions that are essential to the just and complete resolution of this appeal, including but not limited to a revised Motion for Judicial Notice grounded in 19th-century historical government records and multiple evidentiary pleadings relating to allegations of fraud perpetrated by Appellee from 2020 through 2025.

This Motion for Leave is to file the Judicial Notice Motion within 14-days following the Reply Brief because the Appellant-Defendant notified this Honorable Court of **Judicial Suppression and Adverse Action by the US District Court (See Document 36)**:

- Motion to Introduce New Evidence or, in the Alternative, for Judicial Notice of Essential Facts Required for Adjudication

To Address the Errors by the Court and the Fraud by the Appellee

- Motion to Expand the Record from <u>DE-99 through DE-138</u> to <u>DE-1 through DE-183</u>

The these motions are necessary because this case:

- **Involves exceptional circumstances** that directly affect the **validity of the district court's orders**, including **judicial bias, fraud upon the court, deference towards the Plaintiff, and due process violations**.

- **Requires new evidence** and **reframing** to ensure that the **correct legal framework** is applied to this appeal for the reasons it was brought.

- **Will be flawed upon review or will be materially incomplete or inaccurate if these issues are not considered**, and delaying consideration until the final merits panel **could cause substantial injustice**.

## GROUNDS FOR MOTION

1. **Factual Allegations of Fraud Have Been Consistently Raised Since 2020 —** Appellant has consistently alleged fraud on the court, misleading the court to make inaccurate assumptions of fact, and fraudulent concealment of material facts by Appellee (and counsel) beginning in 2020. These allegations are well-documented in the following filings on the District Court docket:

   - [DE 23] Response to Plaintiff's Motion for TRO and Preliminary Injunction

   - [DE 24] Motion to Dismiss or Continue with Time Extension

- [DE 47] Amended Motion to Dismiss and/or Motion for Summary Judgment

- [DE 52] Motion for Leave to File Supplement to Amended Motion to Dismiss

- [DE 56] Reply to Plaintiff's Opposition to Supplement

- **[DE 62] Answer and Affirmative Defenses**

- **[DE 65] Motion for Judgment on the Pleadings**

- [DE 66] Motion to Stay Discovery

- **[DE 82] Motion for Declaratory Judgment**

- [DE 101] Response to Plaintiff 98, 99, and 100

- **[DE 103] Motion to Take Judicial Notice of Adjudicative Facts**

- **[DE 113] Emergency Motion for Expedited Consideration**

- **[DE 116] Special Motion to Dismiss SLAPP Action**

- [DE 127] Motion for Leave to File

- [DE 128] Motion to Stay Proceedings and for Recusal

- **[DE 170] Motion for Recusal**

- **[DE 171] Motion for Judicial Notice**

- **[DE 176] Rule 11 Motion for Sanctions**

- **[DE 181] Amended Objection to Sanctions and Return of Bond**

- [DE 182] & [DE 183] Orders Denying Judicial Notice, Recusal and Sanctions

Each of the above filings identifies and substantiates in some form of misconduct, concealment,

misrepresentation, violations of legal doctrines, or other acts by the Plaintiff that constitute fraud

under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and warrant relief even post-judgment under the Sixth Circuit's equitable authority.

2. **District Court Refused to Adjudicate Alleged Fraud —** Despite receiving multiple formal challenges with a preponderance of evidentiary support, the District Court has refused to examine or adjudicate the allegations of fraud. In particular, *DE 183* outright denied all relief without substantive consideration, including judicial notice of adjudicative facts under **Fed. R. Evid. 201(b)** and allegations of systemic suppression. This constitutes suppression of exculpatory evidence and creates a record that must be corrected for the Sixth Circuit to render a just and informed decision.

3. **Revised Judicial Notice is Necessary to Correct the Historical Record —** Appellant seeks leave to file a newly revised Motion for Judicial Notice focused on 19th-century public documents, government publications, and uncontested documentary evidence proving that the Plaintiff's 1813 origin narrative is materially false. The Plaintiff's reliance on this false history formed the foundation of its claims in both litigation and trademark proceedings. Judicial notice is mandatory under **Fed. R. Evid. 201(d)** where the adjudicative facts are not subject to reasonable dispute.

Appellant's *Notice of Judicial Suppression and Adverse Action*, filed in the instant appellate docket on April 16, 2025, further memorializes the District Court's consistent refusal to address substantiated allegations of misconduct, and underscores the need for leave to present additional filings to preserve constitutional and procedural rights.

4. **Proposed Future Motions (Subject to Court's Leave) —** Appellant anticipates filing the following narrowly drawn motions, each tailored to correct the record, assert constitutional defenses, or reveal misconduct by Appellee and the District Court:

- **Motion for Judicial Notice** (with authenticated 19th-century exhibits);

- **Motion to Declare Injunctions Void as Prior Restraints under the Collateral Bar Doctrine Exception** (violating First Amendment);

- **Motion for Leave to File Amicus Briefs or Scholarly Evidence**;

- **Motion to Reopen Sanctions Orders Based on Legal Misconduct**;

- **Motion to Introduce Evidence of Reverse-Torpedoing and USPTO Fraud**;

- **Motion for Independent Expert Review of Historical Title Use**;

- **Motion for Confidential Court-Ordered Mediation under 6 Cir. R. 33**.

5. **Judicial Economy and Fairness Favor Leave —** Allowing Appellant to present additional filings on leave will ensure the Sixth Circuit has a complete record of unresolved constitutional and factual issues. The requested leave will also clarify factual misconceptions resulting from the District Court's refusal to hear or address core claims raised in good faith under *Fed. R. Civ. P. 11(b)(2)–(3)* and *Fed. R. App. P. 10(e)(2)(B)*.


# LEGAL BASIS FOR GRANTING LEAVE

## A. Exceptional Circumstances Warrant Granting Leave

The **Sixth Circuit has the discretion to consider motions that affect the validity of district court orders** under **Federal Rule of Appellate Procedure 27**.

Courts have recognized that **fraud upon the court is a basis for introducing new evidence at the appellate level** (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)).

The Supreme Court has held that **judicial bias is a due process violation requiring heightened scrutiny on appeal** (*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)).

## B. The Sixth Circuit Can Consider the Motions Without Delaying the Appeal

Granting leave will **allow the Court to decide whether the motions should be ruled on before review of the merits of the Appellate Brief**, ensuring the appeal proceeds in an efficient manner.

The **Appellant's pending Reply Brief has been filed timely within the prescribed timeline**, regardless of whether these motions are granted.

## C. The Appellee Will Not Be Prejudiced

The Plaintiff-Appellee has already filed multiple responses objecting to Appellant's motions and has **had ample opportunity to challenge the arguments presented in the District Court**.

## STATEMENT ON SUPPLEMENTAL PROCEEDINGS AND ANTICIPATED MOTIONS

Appellant moves under Federal Rules of Appellate Procedure 10(e)(2)(B) and 27, and Federal Rule of Evidence 201(b), to correct the record, introduce adjudicative facts, and preserve procedural integrity in this appeal. This motion accompanies Appellant's Reply Brief, which addresses matters of record through January 2025, and is submitted in anticipation of additional motions necessary to complete the evidentiary and legal framework omitted or suppressed in the District Court.

Following the District Court's summary denial of multiple post-judgment motions—including a Recusal Motion under 28 U.S.C. § 144, a Rule 11 Motion for Sanctions, a Judicial Notice Motion, and objections related to the return of Appellee's bond—Appellant filed a Notice of Judicial Suppression with this Court on April 16, 2025. That filing outlined the procedural irregularities and factual exclusions that now require limited supplementation of the record and judicial review of previously ignored or dismissed claims.

Appellant anticipates filing the following narrowly tailored motions in support of appellate and ancillary relief:

- A Motion for Judicial Notice of adjudicative facts, including trademark fraud, false USPTO filings, and suppressed historical evidence;

- A Motion for USPTO Trademark Review under 15 U.S.C. §§ 1064 and 1119;

- A Motion for Court-Mediated Resolution aimed at equitable clarification and reform of injunctive enforcement procedures.

These forthcoming motions are necessary to address fundamental procedural failures below, including the District Court's reliance on a superseded Preliminary Injunction, its omission of the binding Mediator's Proposal and Stipulations in the Agreed Permanent Injunction (API), and its refusal to adjudicate critical motions raising fraud, misconduct, and due process violations.

Appellant may also seek leave to file a Sur-Reply should Appellee introduce new factual claims or arguments in response to the expanded record.

This statement is offered to ensure transparency with the Court and to preserve Appellant's right to full and fair appellate review. The goal of these proceedings remains the correction of a materially distorted record and the restoration of procedural and constitutional safeguards essential to just adjudication.

Additionally, Appellant submits **Exhibit A** to this Motion: a **Memorandum of Law on the Misrepresentation of Legal Membership Status by The Honorable Order of Kentucky Colonels, Inc.**, which documents longstanding misrepresentations regarding the organization's claimed "membership" structure. This memorandum provides factual and legal context showing that Appellee's assertions of goodwill, consumer association, and brand control—relied upon in both its USPTO filings and litigation posture—are materially false and were accepted by the District Court without scrutiny.

The Memorandum is submitted in support of this Motion for Leave and the anticipated Motion for Judicial Notice, as it addresses adjudicative facts under Federal Rule of Evidence 201(b) and further supports the record expansion request under Federal Rule of Appellate Procedure 10(e). Appellant respectfully requests that the Court consider the attached **Exhibit A Memorandum** in evaluating the need for record supplementation, judicial notice, and further equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Appellant respectfully prays this Honorable Court:

1. **GRANT** leave to file additional motions, including a revised and improved Motion for Judicial Notice to clarify the immutable historical record;

2. **ACCEPT** such motions as timely supplemental filings to ensure a complete and accurate appellate record;

3. **GRANT** such further and additional relief as law, equity, and due process require.

Respectfully submitted this 5th day of May, 2025,

Puerto Carreño, Colombia


**Col. David J. Wright**

Defendant-Appellant, Pro Se

# CERTIFICATE OF SERVICE

I hereby certify that on **May 5, 2025**, I **submitted** the foregoing Motion for Leave for filing via **email** to the Clerk of the Court, in accordance with the Court's procedures for pro se litigants. Upon docketing, the Court's **CM/ECF system** will automatically serve all registered ECF users, including counsel for Appellee.

Deborah S. Hunt, Clerk                                  /s/ Col. David J. Wright
Sixth Circuit Court of Appeals                  David J. Wright, Pro-se Appellant
501 Potter Stewart U.S. Courthouse                  DATED: May 5, 2025
100 East Fifth Street
Cincinnati, Ohio 45202-3988

# EXHIBIT A — Memorandum of Law on the Misrepresentation of Legal Membership Status by The Honorable Order of Kentucky Colonels, Inc.

Submitted in support of Appellant's Motion for Leave to file judicial notice under Fed. R. Evid. 201(b) and record expansion under Fed. R. App. P. 10(e).

---

## INTRODUCTION

This memorandum is submitted in support of Appellant's Motion for Leave and forthcoming Motion for Judicial Notice, as part of the record supplementation necessary under Fed. R. App. P. 10(e). It supports Appellant's position that the Appellee's use of the term "member" has materially misled courts, donors, and regulatory bodies, including in the present litigation.

This misrepresentation has influenced **judicial findings** and is integral to HOKC's branding, donor engagement, and trademark enforcement strategy. HOKC's conduct constitutes an **organized strategy to mislead** individuals commissioned as Kentucky Colonels into believing they are legal members of a greater body, thus creating the illusion of inclusion and governance while maintaining **centralized control solely under its board of directors**. The issuance of "membership cards" and repeated court filings referring to donors as "active members" perpetuate this **false identity**. This memorandum will further examine the legal and factual implications of these representations.

---

## I. ISSUE

Whether the Honorable Order of Kentucky Colonels, Inc. (HOKC) has misled courts and the public by **falsely representing itself as a membership organization**, and whether such conduct undermines its claims to legal status, donor transparency, and trademark enforcement grounded in associative identity.

## II. BRIEF ANSWER

HOKC is **not a genuine membership organization** under governing nonprofit law of Kentucky or the United States Internal Revenue Service or the Code of Federal Regulations. Its 1992 Restated Articles of Incorporation explicitly **disclaim the existence of voting members**, and its operational structure stated therein confirms the **absence of member governance rights**. Nonetheless, HOKC has **repeatedly claimed and led the court to falsely assume** in federal court filings—including the initial complaint pleadings in *The Honorable Order of Kentucky Colonels, Inc. v. Kentucky Colonels International,* Case Nos. 3:20-cv-132 and 3:23-cv-043—that individuals become "members" of the organization after being commissioned as Kentucky Colonels. These statements are **false and misleading**, intended to create the appearance of a structured membership organization to strengthen claims of **trademark legitimacy and public trust**.

The organization transformed from an unincorporated honorary society (1933–1957) into a **non-member charitable corporation** in 1957, after which any prior associative member structure was legally extinguished.

## III. BACKGROUND FACTS

- **Pre-1957 (1933–1957):** HOKC functioned as an unincorporated voluntary association and civil society organization. It did not issue membership cards during this period, as the concept of honorary "membership" materialized only after formal incorporation.

- **1957 Incorporation:** The association formally incorporated as a nonprofit in Kentucky, thereby relinquishing any associative or collective structure based on general membership. Around 1957 or 1958, it began issuing honorary "membership cards" to Kentucky Colonels as a symbolic gesture tied to its donor appeals.

- **1992 Restated Articles:** Declares in **Article VI—Membership** unequivocally that "**The Corporation [The Honorable Order of Kentucky Colonels] shall have no voting members.** Any provisions pertaining to non-voting members shall be as set out in the Bylaws." thereby codifying the organization's non-membership structure in binding legal form.

- **Current Practice:** Donors receive honorary designations or ceremonial "memberships" without governance rights or legal membership standing, the names and addresses of new colonels are delivered by the state to the private organization. Starting in 1960, the organization began printing the year on each card to encourage annual donations and the reissuance of updated cards. These individuals are misled into believing they belong to a greater body with influence, when in fact they possess no legal rights or voice within the organization.

---

# IV. APPLICABLE LAW

The distinction between a true membership organization and a donor-based honorary body carries weight under nonprofit corporate law, trademark law, and standards of ethical legal practice. The analysis that follows draws on both state statutory frameworks and examples of industry-standard organizations to establish the legal benchmarks that HOKC does not meet.

## A. Nonprofit Membership Structures

Under **Kentucky law (KRS Chapter 273)** and federal standards (**26 U.S.C. § 501(c)(3)**), nonprofit corporations may be structured with or without members. Where members are authorized, they must be conferred rights including:

- **Voting on directors** (KRS § 273.193)
- **Amending bylaws** (KRS § 273.197)
- **Inspection of corporate records** (KRS § 273.233)
- **Participation in annual and special meetings** (KRS § 273.203)

## B. Characteristics of Genuine Membership Organizations

Real membership organizations include:

**Professional Associations:**

- **American Bar Association (ABA):** Members vote in elections, serve on committees, and influence policy.

- **National Association of Realtors (NAR):** Members meet ethical standards, pay dues, and vote for leadership.

**Labor Unions:**

- **AFL-CIO:** A federation of numerous unions
- **International Brotherhood of Teamsters:** Transportation and other industries

**Cooperative Organizations:**

- **Certain cooperatives,** such as agricultural or consumer cooperatives, are owned and governed by their members.
- **Credit Unions:** Members are financial stakeholders with voting rights and governance access.

These organizations hold regular meetings, operate under bylaws that grant members formal legal status and participatory authority.


## C. Membership Organization Comparison to the Honorable Order of Kentucky Colonels

The following table provides a side-by-side comparison between bona fide membership organizations—those formed under nonprofit law with private participatory governance—and the Honorable Order of Kentucky Colonels (HOKC), which is legally incorporated as a non-membership organization. The intent of this chart is to show in practical terms the stark difference in rights, governance, and legal recognition of what is understood to be a member in law. While genuine membership organizations empower their members with democratic participation, oversight, and formal

rights, HOKC grants its so-called "members" no more than ceremonial recognition, primarily tied to financial donations or commercial sales through their third-party store. These distinctions are not superficial; they affect matters of organizational legitimacy, accountability, and the foundation for claims such as collective goodwill or associational standing under trademark law.

| Membership Feature | Membership Organization | HOKC (Honorary Membership) |
|---|---|---|
| **Voting Rights** | Yes | No |
| **Membership Dues** | Yes (required) | No (voluntary donations only) |
| **Participation in Governance** | Yes | No |
| **Power to Amend Bylaws** | Yes | No |
| **Member Meetings** | Yes | No |
| **Invitational Events** | Yes | Yes, with donation. |
| **Legal Recognition of Members** | Yes | Disclaimed in incorporation documents |
| **Statutory Member Rights (KRS § 273.203)** | Yes | None |

## V. MISLEADING THE COURT BY FALSE IMPLICATION OF MEMBERSHIP STATUS BY FALSE IMPLICATION OF MEMBERSHIP

Despite being legally structured as a **non-membership organization**, HOKC has repeatedly represented itself in federal court filings as though it is composed of "members" in the traditional sense. For example:

- In its 2020 Motion for Temporary Restraining Order (Document 7), HOKC states: "This grant-making function is in turn funded by the generous donations of HOKC's **active members**…"

- In its 2023 Motion for Injunctive Relief (Document 99), HOKC again asserts: "After receiving this great honor, individual Kentucky Colonels then become **members** of HOKC…"

These statements **contradict HOKC's own 1992 Restated Articles of Incorporation**, which declare unequivocally that it "has no members." Such conduct implicates **Rule 11(b)** of the **Federal Rules of Civil Procedure**, which prohibits parties from presenting factual contentions without evidentiary support, and **ABA Model Rule 3.3**, which obligates attorneys to maintain candor toward the tribunal. Use of the term "members" in the HOKC cases is unlawful and misleading.



The image above is a blank HOKC "so-called membership card" from 1958, it demonstrates the flattery and ego-boost a person receives carrying this in their wallet or with identification. (No one is actually "in the Honorable Order of Kentucky Colonels" ; they are just acknowledging that a person is a "Colonel" and that they "hold a commission" from the Governor.)

In 1979 after experiencing a big boost from the American Bicentennial the membership card evolved again, however the legal statement of the card only supports the idea of "membership" with the only real members being those listed on the reverse side of the card, the person carrying the card believes they are members of the Honorable Order, but they are recognized as donors by virtue of possessing the card, not members. Below is what the membership card states on the reverse.



By **strategically planting the notion of membership** through repeated language in its letters, invitations, and public relations materials; and now in its pleadings, HOKC has **misled the Court** into construing its structure as one composed of actual members. This has a **material effect** on judicial perception and understanding, as evidenced in the *Building Champions* decision. The failure to clarify this legal distinction—while leveraging it to protect a contested trademark—**undermines the Court's ability to evaluate standing, reputation, and associative rights**.

Such tactics should be scrutinized as **misrepresentations** made in violation of both ethical standards and procedural duties. **Competent legal counsel had an affirmative duty to use the term 'donors' or 'supporters' instead of 'members'** when referring to individuals who contribute financially to HOKC but hold no legal rights of membership. A copy of HOKC's 1992 Restated Articles of Incorporation,

confirming the **absence of legal members**, should be included with this memorandum marked as an **Attachment**.

---

This is the reverse side of the Appellant's first membership card in 1997. Take note that the word "Membership" was removed since the restated Articles of Incorporation in 1992.



This next image is what the Appellant's HOKC "so-called membership" card looked when the Appellant last received one in 2020, one month after making a donation and getting a new membership card the Appellant was sued.



# VI. CONCLUSION

The Honorable Order of Kentucky Colonels, Inc., as incorporated in 1957 and restated in 1992, is **legally and structurally <u>a non-membership charitable organization</u>**. Its use of the term "*member*" refers to **honorary, donation-based participants** without rights or governance control. These honorary designations are **materially distinct from the legal concept of membership** under nonprofit corporate law and before the U.S. Courts. The issuance of "membership cards," particularly when free of charge, deceptively implied **organizational belonging and participation** that never legally existed.

Such representations, though flattering to the individual recipient's ego and sense of reciprocal duty, create a **misleading impression of organizational inclusion, loyalty, and prestige**. While cultivating an illusion of exclusive membership may be **permissible in public fundraising contexts**, it becomes **materially misleading in judicial proceedings**. By using the term 'members' in court filings, HOKC has led the Court to believe the organization is composed of 'tens of thousands' or even 'hundreds of thousands' **of legal members**, when in fact it is governed solely by its board of directors, president, vice-president, secretary, and treasurer that holds to **no such member class**. This distinction is **critical for proper evaluation of standing, governance, and associative identity**.

This misrepresentation was notably accepted by the court in *Honorable Order of Kentucky Colonels v. Building Champions, LLC*, 345 F. Supp. 2d 716 (W.D. Ky. 2004), where the court, likely unaware of the internal structure, stated that the organization is "composed of individuals" who received the title of Kentucky Colonel. Such **erroneous conclusions**, encouraged by HOKC's language and branding, **perpetuate the myth of membership**, reinforcing a **long-standing strategy of public deception**.

Consequently, HOKC cannot claim the **privileges or legal status** of a genuine membership organization, nor can it truthfully refer to itself as such in legal contexts. Any contrary assertion **risks misleading the public, courts, and regulatory bodies**, particularly when these representations cause the judiciary to operate under the mistaken belief that HOKC is composed of a structured body of voting, participatory members. The United States District Court, having relied on HOKC's repeated

invocation of the term 'members,' has demonstrably internalized this language as fact—a consequence that undermines the integrity of legal proceedings and calls into question the candor of those who allowed that implication to go uncorrected.

These misrepresentations are not merely semantic; they directly affect the legal foundation of Appellee's standing, its claimed goodwill under the Lanham Act, and its equitable posture in seeking injunctive relief. The record should reflect the true legal structure of HOKC and its historical use of "membership" as a non-legal term to advance charitable fundraising.

## Attachment — Restated Articles of Incorporation (1992) for The Honorable Order of Kentucky Colonels, Inc. a Private Non-Membership Corporation

This attachment contains the governing document of record for the Honorable Order of Kentucky Colonels, Inc., as restated in 1992 and filed with the Commonwealth of Kentucky. It confirms the organization's legal status as a **non-membership corporation** governed solely by a board of directors.

Relevant clause from page four (4) in **Article VI — Membership**:

> *"The Corporation shall have no voting members. Any provisions pertaining to non-voting members shall be as set out in the Bylaws."*

This language is unequivocal and binding, establishing that **no class of members holds statutory rights**, including governance, voting, or participatory privileges. Any use of the term "members" by the organization or its counsel in judicial proceedings must be understood as honorary and non-legal in nature, and any contrary implication constitutes a material misrepresentation of its legal structure.

23672

RECEIVED & FILED

*Ck ³/16ᵉ*

Aug 3 3 56 PM '92

### AMENDED AND RESTATED
### ARTICLES OF INCORPORATION
### OF
### THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.

*# 23673* ...........

Pursuant to the provisions of KRS 273.267 and 273.273, the undersigned Corporation hereby executes these Amended and Restated Articles of Incorporation.

FIRST:    The name of the Corporation is THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.

SECOND: The Articles of Incorporation of the Corporation are amended and restated to read in their entirety as follows:

### ARTICLE I

### Name

**683333**

The name of the Corporation is THE HONORABLE ORDER OF KENTUCKY COLONELS, INC. (the "Corporation").

### ARTICLE II

### Purposes and Powers

The purposes for which the Corporation is formed, the business and objects to be carried on and promoted by it, and the powers granted to it, are as follows:

(a)    The purposes of the Corporation include:

(i)    To aid, promote and assist charitable, educational and cultural activities in a manner that is consistent with the Corporation's charitable purposes;

(ii)    To establish, maintain and support charitable and educational activities and charitable organizations by conducting such activities that include, but are not limited to, the making of contributions to charitable organizations,

and the founding and support of scholarships in institutions of learning;

(iii)   To preserve and protect the heritage and tradition of The Honorable Order of Kentucky Colonels, including its tradition of good works and community minded endeavors;

(iv)   To collect and preserve historical documents and other books, papers and objects pertaining to the Commonwealth of Kentucky or any institution or subdivision thereof and therein;

(v)   To carry out such other activities as are consistent with the Corporation's charitable purposes as the Board of Trustees may determine; and

(vi) To do and perform any and all such objects, either alone or in cooperation with institutions, societies, organizations, clubs and persons having purposes similar or complementary to the Corporation.

(b)   The Corporation is irrevocably dedicated to and is organized and operated exclusively for charitable purposes within the meaning of Section 501(c)(3) of the Code (or its successor provision).   The Corporation may receive contributions and fees, and shall distribute its funds for public, charitable, educational, cultural, humanitarian and/or scientific purposes, as set forth in these Articles.   In carrying out its corporate purposes, the Corporation shall have all the powers allowed corporations by the Kentucky Nonprofit Corporation Act, KRS 273.161 et seq.; provided, however, that the Corporation shall not have or exercise any power

2

inconsistent with or prohibited by the provisions of Paragraphs (b), (c), (d), and, if applicable, (e).

(c)  As limited by Section 501(c)(3) of the Code, it is expressly not the purpose of the Corporation, and the Corporation is not empowered, to participate or intervene in (including the publication or distributing of statements) any political campaign on behalf of any candidate for public office, nor to devote more than an insubstantial part of its activities to carrying on propaganda or otherwise attempting to influence legislation.

(d)  Any other provision of these Articles to the contrary notwithstanding, the Corporation shall have no capital stock and no power to issue certificates of stock nor to declare dividends; no part of the net earnings of the Corporation shall inure to the benefit of any private shareholder or individual; and the Corporation shall not carry on any activities denied to: [i] a corporation described in Section 501(c)(3) of the Code, including prohibited transactions defined in Section 503 of the Code; or [ii] a corporation, contributions to which are deductible under Section 170(c)(2) of the Code.

(e)  Any other provision of these Articles to the contrary notwithstanding, this Corporation shall, if the following provisions of law are applicable to it:  [i] distribute its income for each fiscal year at such time and in such manner as not to be subject to the tax under Section 4942 of the Code; [ii] not engage in any act of self dealing as defined in Section 4941 of the Code; [iii] not retain any excess business holdings as defined in Section 4943 of the Code; [iv] not make any investments in such manner as to subject the Corporation to tax under Section 4944 of the Code;

3

and [v] not make any taxable expenditures as defined in Section
4945 of the Code.

## ARTICLE III

### Registered Office and Agent

The street address of the Corporation's registered office
and the name of its registered agent at that address is:

> Robert J. Carlsen
> 6100 Dutchmans Lane
> Louisville, Kentucky 40250

## ARTICLE IV

### Principal Office

The mailing address of the Corporation's principal office
is:

> 6100 Dutchmans Lane
> P.O. Box 20702
> Louisville, Kentucky 40250-0702

## ARTICLE V

### Duration

The Corporation shall have perpetual existence.

## ARTICLE VI

### Membership

The Corporation shall have no voting members.  Any provi-
sions pertaining to nonvoting members shall be as set out in the
Bylaws.

## ARTICLE VII

### Trustees

The Corporation shall be governed by a Board of Trustees
consisting of not less than three (3) nor more than twenty-one (21)
members, the exact number to be set in the manner provided in the
Bylaws.  Each Trustee shall continue as Trustee until the earlier

4

of such time as he or she [i] voluntarily removes himself or herself as Trustee by written notice to the Corporation; [ii] dies or becomes permanently disabled and as a result of such disability is no longer able to perform his or her duties as Trustee; or [iii] is removed by the Board of Trustees as set out hereinbelow.    A member of the Board may be removed, with or without cause, by the affirmative vote of three-fourths (3/4) of the then qualified members of the Board.

### ARTICLE VIII

### Officers

The officers of the Corporation shall be as provided in the Bylaws.

### ARTICLE IX

### BYLAWS

The Bylaws of the Corporation shall be adopted, and may be amended or repealed, by the Board of Trustees.

### ARTICLE X

### Contracts or Transaction
### of Business with Trustees

No pecuniary profit shall be received by any Trustee from the operations of the Corporation by reason of his or her status as a Trustee.    Any contract or transaction of business between the Corporation and one or more of its Trustees, or with any corporation or association in which any of its Trustees is a stockholder, director or officer, shall not be invalidated or affected solely by the fact that such Trustee or Trustees have or may have interests therein which are or might be adverse to the interests of the Corporation; provided, however, a Trustee having an interest

5

adverse to that of the Corporation shall disclose such interest to the Board of Trustees, and shall not vote on any matter involving such interest, although he or she may be counted in determining the existence of a quorum.

## ARTICLE XI

## Indemnification

Each person who is or was a member, director, trustee or officer of the Corporation, whether elected or appointed, and each person who is or was serving at the request of the Corporation as a member, director, trustee or officer of another corporation, whether elected or appointed, including the heirs, executors, administrators or estate of any such person, shall be indemnified by the Corporation to the full amount against any liability, and the reasonable cost, or expense (including attorneys' fees, monetary or other judgments, fines, excise taxes or penalties and amounts paid or to be paid in settlement) incurred by such person in such person's capacity as a member, director, trustee, officer or employee or arising out of such person's status as a member, director, trustee, officer or employee; provided, however, that no such person shall be indemnified against any such liability, cost or expense incurred in connection with any action, suit or proceeding in which such person shall have been adjudged liable on the basis that personal benefit was improperly received by such person or if such indemnification would be prohibited by law. Such right shall be a contract right and shall include the right to be paid by the Corporation the reasonable expenses incurred in defending any threatened or pending action, suit or proceeding in advance of its final disposition; provided, however, that such

6

advance payment of expenses shall be made only after delivery to the Corporation of an undertaking by or on behalf of such person to repay all amounts so advanced if it shall be determined that such person is not entitled to such indemnification.  Any repeal or modification of this Article shall not affect any rights or obligations then existing.  If any indemnification payment required by this Article is not paid by the Corporation within ninety (90) days after a written claim has been received by the Corporation, the member, director, trustee, officer or employee may at any time thereafter bring suit against the Corporation to recover the unpaid amount and, if successful in whole or in part, such person shall be entitled to be paid also the expense of prosecuting such claim. The Corporation may maintain insurance, at its own expense, to protect itself and any such person against any such liability, cost or expense, whether or not the Corporation would have the power to indemnify such person against such liability, cost or expense under the Kentucky Nonprofit Corporation Act or under this Article, but it shall not be obligated to do so.  The indemnification provided by this Article shall not be deemed exclusive of any other rights which those seeking indemnification may have or hereafter acquire under any Bylaw, agreement, statute, vote of members or Board of Trustees or otherwise.  If this Article or any portion thereof shall be invalidated on any ground by any court of competent jurisdiction, then the Corporation nevertheless shall indemnify each such person, to the full extent permitted by any applicable portion of this Article that shall not have been invalidated or that remains enforceable under any other applicable law.

## ARTICLE XII

## Dissolution

Dissolution shall be accomplished in accordance with Chapter 273 of the Kentucky Revised Statutes or its successor. Upon dissolution of the Corporation, the Board of Trustees shall, after paying or making provisions for the payment of all liabilities of the Corporation, dispose of all corporate assets by distributing such assets to organizations that are organized and operated exclusively for charitable purposes and at the time qualify as exempt organizations under Section 501(c)(3) of the Code, or its successor provision, or to such organizations described under Section 170(c)(1) of the Code, or its successor provision, as the Board of Trustees shall determine. If possible, the purposes of such charitable donee or donees should be substantially similar to the charitable purposes of the Corporation. Any such assets not disposed of by the Board of Trustees shall be disposed of by the Circuit Court of the County in which the principal office of the Corporation is then located, to such organization or organizations organized and operated exclusively for charitable, educational or scientific purposes as shall, at that time, qualify as exempt organizations or as organizations under Section 501(c)(3) of the Code, or its successor provision. If possible, the Court shall cause such remaining assets to be transferred to a donee or donees that have purposes that are substantially similar to the charitable purposes of the Corporation.

8

## ARTICLE XIII

### Limitation of Trustee Liability

No Trustee shall be personally liable to the Corporation for monetary damages for breach of his or her duties as a Trustee except for liability:

(a)   For any transaction in which the Trustee's personal financial interest is in conflict with the financial interests of the Corporation;

(b)   For acts or omissions not in good faith or which involve intentional misconduct or are known to the Trustee to be a violation of law; or

(c)   For any transaction from which the Trustee derives an improper personal benefit.

If the Kentucky Revised Statutes are amended after approval of this Article to authorize corporate action further eliminating or limiting the personal liability of Trustees, then the liability of a Trustee of the Corporation shall be deemed to be eliminated or limited by this provision to the fullest extent then permitted by the Kentucky Revised Statutes, as so amended.   Any repeal or modification of this Article shall not adversely affect any right or protection of a Trustee of the Corporation existing at the time of such repeal or modification.

THIRD:   The Honorable Order of Kentucky Colonels, Inc. has no members.   The foregoing amendment and restatement was adopted by the unanimous affirmative vote of all of the members of the Board of Trustees of the Corporation currently in office on June 26, 1992, pursuant to KRS 273.263 and 273.273, these members being National Commanding General H. Lynn Ledford, General Jan M.

9

Camplin, General W. Judson Gibbs, General Walter I. Gibbs, General Mary Ann Hamilton, General James H. Molloy, General George W. Packowski, General Robert Gaylord Price, and General George H. Sullivan.

FOURTH:  These Amended and Restated Articles of Incorporation shall be effective as of the date and time of filing with the Secretary of State of the Commonwealth of Kentucky.

FIFTH:  The following articles have been amended to read in their entirety as set forth herein: Articles I through XIII. Pursuant to KRS 273.273(2)(c), Article XI as heretofore amended has not been restated herein.

SIXTH:  The foregoing Amended and Restated Articles of Incorporation were duly adopted as required by law, correctly set forth without change the corresponding provisions of the Articles of Incorporation as heretofore and herein amended, and supersede the original Articles of Incorporation and all amendments thereto.

Dated as of June 26, 1992.

THE HONORABLE ORDER OF
KENTUCKY COLONELS, INC.

By: _____
H. Lynn Ledford
National Commanding General

THIS INSTRUMENT PREPARED BY:

Theodore T. Myre, Jr.
WYATT, TARRANT & COMBS
2800 Citizens Plaza
Louisville, Kentucky  40202
(502) 589-5235

I:\TTM\COLONELS.ART

10