**RECEIVED**
5/5/2025
KELLY L. STEPHENS, Clerk

Case Nos. 23-5795 & 23-6108 Combined

# In the United States Court of Appeals for the Sixth Circuit

**THE HONORABLE ORDER OF KENTUCKY COLONELS, INC.**
Plaintiff-Appellee

v.

KENTUCKY COLONELS INTERNATIONAL; GLOBCAL
INTERNATIONAL; ECOLOGY CROSSROADS COOPERATIVE
FOUNDATION, INC.; UNKNOWN DEFENDANTS (Defendants)
by
**COL. DAVID J. WRIGHT, KENTUCKY COLONEL**
on behalf of himself and individuals similarly titled.
Defendant-Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE CIVIL DIVISION

DISTRICT COURT ORDERS IN CASE NUMBERS

3:20-cv-00132 and 3:23-cv-00043

**REPLY BRIEF OF THE APPELLANT**

Col. David J. Wright
Goodwill Ambassador for the Commonwealth of Kentucky
302 General Smith Drive | Richmond, Kentucky 40475

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................2

SUMMARY AND PRELIMINARY STATEMENT........................................4

STANDARD OF REVIEW.............................................................5

FIRST REPLY BRIEF BY APPELLANT...............................................6

    Introduction to the Appellant's Reply Brief..................................6

    I. HOKC's Failure to Rebut Material Allegations Warrants Further Review Under Controlling Law................................................................7

    II. Appellee's Narrow Framing of the Case Ignores Material Procedural and Constitutional Issues.........................................................9

    III. The District Court Erred by Relying on a Superseded Preliminary Injunction and Misinterpreting the Scope of the Agreed Permanent Injunction.............................11

    IV. The Contempt Finding Misapplies and Overreaches Trademark Law and Equitable Doctrines in the Absence of Commercial Use, Procedural Safeguards, and Constitutional Fair-Use Protections.........................................13

    V. Judicial Suppression, Entrenched Bias, and Post-Judgment Suppression of Record-Critical Motions Denied Appellant Due Process and Fair Review...............16

    VI. The District Court Misapplied Trademark Law and Failed to Account for First Amendment Protections............................................19

    VII. This Appeal Properly Encompasses Constitutional, Jurisdictional, and Equitable Issues Ignored by the District Court.........................................21

    VIII. The Record Requires Supplementation, and the Contempt Judgment Must Be Reversed or Vacated Based on Procedural and Constitutional Grounds...................24

STATEMENT REGARDING ORAL ARGUMENT.......................................27

REQUEST FOR RELIEF..............................................................27

CONCLUSION......................................................................29

CERTIFICATE OF COMPLIANCE.....................................................32

# TABLE OF AUTHORITIES

## Case Law Citations

| | | |
|---|---|---|
| **Bosley Med. Inst., Inc. v. Kremer** | 403 F.3d 672 (9th Cir. 2005) | 15, 21 |
| **Chambers v. NASCO, Inc.** | 501 U.S. 32 (1991) | 20 |
| **Demjanjuk v. Petrovsky** | 10 F.3d 338 (6th Cir. 1993) | 13, 25, 26 |
| **Frisch's Restaurants, Inc. v. Elby's Big Boy** | 670 F.2d 642 (6th Cir. 1982) | 19 |
| **Gascho v. Glob. Fitness Holdings, LLC** | 875 F.3d 795 (6th Cir. 2017) | 13 |
| **Gonzalez v. Crosby** | 545 U.S. 524 (2005) | 24, 26 |
| **Hazel-Atlas Glass Co. v. Hartford-Empire** | 322 U.S. 238 (1944) | 18, 25, 26 |
| **Honorable Order of Kentucky Colonels, Inc. v. Building Champions, LLC** | 345 F. Supp. 2d 716 (W.D. Ky. 2004) | 16 |
| **In re Bose Corp.** | 580 F.3d 1240 (Fed. Cir. 2009) | 9 |
| **Liteky v. United States** | 510 U.S. 540 (1994) | 18 |
| **Logan v. Zimmerman Brush Co.** | 455 U.S. 422 (1982) | 24 |
| **Matal v. Tam** | 582 U.S. 218 (2017) | 14, 20 |
| **Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.** | 324 U.S. 806 (1945) | 20 |
| **Sammons v. United States** | 918 F.2d 592 (6th Cir. 1990) | 17, 18 |
| **SEC v. First Jersey Sec., Inc.** | 587 F. Supp. 535 (S.D.N.Y. 1984) | 9, 11 |
| **Securities & Exchange Comm'n v. Chenery Corp.** | 318 U.S. 80 (1943) | 25 |
| **Taubman Co. v. Webfeats** | 319 F.3d 770 (6th Cir. 2003) | 10, 15, 23 |
| **T. Marzetti Co. v. Roskam Baking Co.** | 2010 WL 2162903 (S.D. Ohio), aff'd, 680 F.3d 629 (6th Cir. 2012) | 15 |
| **Therma-Scan, Inc. v. Thermoscan, Inc.** | 295 F.3d 623 (6th Cir. 2002) | 19 |
| **United Mine Workers v. Bagwell** | 512 U.S. 821 (1994) | 14, 25 |
| **United States v. Armour & Co.** | 402 U.S. 673 (1971) | 6, 11, 23 |
| **United States v. Hardage** | 982 F.2d 1436 (10th Cir. 1992) | 9 |

**United States v. Real Property Located at 475 Martin Lane**    545 F.3d 1134 (9th Cir. 2008)    8

**United States v. Tennessee Air Pollution Control Bd.**    185 F.3d 529 (6th Cir. 1999)    5

**Vanguards of Cleveland v. City of Cleveland**    753 F.2d 479 (6th Cir. 1985)    12

**Walker v. City of Birmingham**    388 U.S. 307 (1967)    13, 25

## Statutes and Rules

| | | |
|---|---|---|
| **15 U.S.C. § 1125(a)** | Lanham Act – False designation of origin | 14, 21 |
| **28 U.S.C. § 1291** | Final decision jurisdiction of courts of appeals | 22, 23 |
| **28 U.S.C. § 1331** | Federal question jurisdiction | 22 |
| **28 U.S.C. § 144** | Disqualification of judge for bias or prejudice | 17, 18 |
| **28 U.S.C. § 455** | Disqualification of judges for appearance of impropriety | 17 |
| **Fed. R. Civ. P. 11** | Sanctions for bad-faith or misleading court filings | 17 |
| **Fed. R. Civ. P. 60(b)** | Relief from judgment based on fraud, mistake, or new evidence | 23, 26 |
| **Fed. R. App. P. 10(e)** | Correction or supplementation of the appellate record | 24, 25 |
| **Fed. R. Evid. 201** | Judicial notice of adjudicative facts | 17 |

# SUMMARY AND PRELIMINARY STATEMENT

Appellant David J. Wright respectfully submits this Reply Brief in response to the Brief of Appellee, The Honorable Order of Kentucky Colonels, Inc. ("HOKC"), pursuant to Rule 28(c) of the Federal Rules of Appellate Procedure. Appellant proceeds pro se and in forma pauperis. This Reply Brief is concurrently filed with a Motion for Leave to Supplement the Record pursuant to Fed. R. App. P. 10(e), a Motion for Judicial Notice under Fed. R. Evid. 201(b), and a Notice of Judicial Suppression documenting adverse actions and omissions affecting record integrity.

Appellee's Brief misrepresents critical facts, misapplies legal authority, and ignores the significant procedural and constitutional defects embedded in the record. Contrary to Appellee's narrow framing, this case is not simply about contempt or trademark enforcement—it involves the misuse of judicial process to entrench a mediated settlement by suppressing evidence, overlooking fraud, and denying due process.

The District Court not only deferred to the Appellee's representations without factual scrutiny, but failed to adjudicate sworn allegations of fraud on the court, perjury, and litigation abuse. By invoking procedural and jurisdictional pretexts to avoid ruling on motions central to record integrity—including motions for recusal, sanctions, and judicial notice—the Court effectively abdicated its supervisory responsibility. These omissions constitute a constructive denial of due process, especially where the Court had a duty to assess fraud and apply equitable principles to ensure that mediated concessions were not enforced outside their intended scope.

The contempt order itself was premised on a critical legal error: it relied on language from a vacated Preliminary Injunction [DE-58], ignoring the terms of the operative Agreed Permanent

Injunction [DE-93] negotiated through confidential court-assisted mediation. That mediation resulted in an enforceable agreement—incorporating the Mediator's Proposal—which included explicit protections for Appellant's non-commercial, educational, and expressive use of the honorary title "Kentucky Colonel." The District Court's failure to review or apply those terms directly violated settled Sixth Circuit precedent.

Trademark doctrines were misapplied to expressive conduct that falls squarely within First Amendment protection. Appellant's use of "Kentucky Colonel" occurred in nonprofit, civic, and historical contexts. No commercial use or material consumer confusion was shown. The Lanham Act cannot be weaponized to suppress cultural identity or monopolize public heritage, particularly in the absence of infringement or market harm.

This case presents not only legal error but structural due process failure. It raises constitutional questions about the limits of judicial power, the protection of speech, and the integrity of the federal record. The contempt finding must be reversed, the record corrected, and the underlying enforcement reconsidered in light of fraud, suppression, and equitable limitations binding on the District Court.

---

# STANDARD OF REVIEW

To the extent the District Court's findings of fact are challenged, this Court reviews for clear error. Legal conclusions, including interpretations of consent judgments, determinations of due process, and constitutional rights, are reviewed de novo. See *United States v. Tennessee Air*

*Pollution Control Bd.*, 185 F.3d 529, 533 (6th Cir. 1999). Where fraud, judicial bias, or constitutional rights are implicated, appellate review must be searching and independent.

---

# FIRST REPLY BRIEF BY APPELLANT

## Introduction

This case presents a **serious departure from judicial standards**—one not limited to a misapplication of trademark law, but arising from institutional failures that began just five days after the complaint was filed, and three days before that, when Appellee applied for three trademarks in bad faith to manufacture the very basis of this action. Appellant Col. David J. Wright, a Kentucky Colonel engaged in constitutionally protected civic, historical, and educational activities and cultural expression, has been subjected to legal proceedings that raise **substantial questions under the First Amendment, the Lanham Act, and principles of due process**. The Appellee's Response does not address **core procedural and factual disputes** raised in the Initial Brief—specifically, the foundation of its trademark claims, the chronology and substance of its USPTO filings, and the scope and enforceability of the injunctions issued below. Instead, Appellee resorts to procedural deflection, mischaracterization of the permanent injunction, and a silence that, in appellate law, is rightly construed as a concession.

One of the most consequential oversights in this case occurred during the contempt hearing itself, when the District Judge indicated she had not reviewed the Mediator's Proposal—the very document that governed and conditioned entry of the Agreed Permanent Injunction ([DE-93]). That Proposal was not merely a negotiation artifact, but a signed, court-endorsed

agreement that formed the operative foundation of the injunction. Once the API was entered by the Court, the Mediator's Proposal became binding and must be interpreted under established principles governing consent judgments. See *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971). The District Court's failure to review or interpret the Proposal led directly to its misapplication of the Preliminary Injunction ([DE-58]) and the imposition of contempt sanctions based on superseded and inapplicable terms.

Accordingly, Appellant requests that this Court examine the procedural record and determine whether the lower court's rulings properly accounted for the **limits of trademark enforcement** in light of **constitutional protections** and the **public nature** of the title *Kentucky Colonel*.

## I. HOKC's Failure to Rebut Material Allegations Warrants Further Review Under Controlling Law

In the recent District Court litigation the Appellee does not respond to, and therefore concedes:

- That its claimed *"1813"* origin is unsupported by historical evidence.

- That its USPTO applications omitted known facts, concealed competing users, falsely claimed first-use dates, and falsely claimed exclusivity.

- That Appellee falsely claims it is the lawful successor to a 1931 civic body and that this assertion underpins its 2020 fraudulent trademark applications and public misrepresentations. Appellee failed to rebut this history-based succession fraud in the District Court and remains silent on appeal.

- That Appellant's independent cultural and educational use of the term *"Kentucky Colonel"* predates and is not derived from Appellee's identity or its fictional origin.

- That the District Court failed to analyze or acknowledge these factual disputes prior to entering judgment.

In both District Court proceedings and its Appellee Brief, HOKC failed to respond to substantial and specific allegations challenging the integrity of its asserted trademark rights. This silence includes its failure to contest evidence that:

- HOKC's claimed "1813" origin has no basis in historical or governmental records or even in Kentucky folklore.

- USPTO applications submitted by HOKC in 2020 omitted known third-party users, falsely claimed exclusivity, and backdated first use dates.

- HOKC established in 1933, asserted lineage from a 1931 association, without any enabling statute, merger agreement, gubernatorial act, or judicial finding establishing continuity.

These allegations were supported by exhibits and declarations submitted to the District Court and referenced in Appellant's Rule 11 Motion for Sanctions [DE-176], Motion for Judicial Notice [DE-171], and during the contempt proceeding within time-sensitive motions [DE-103], [DE-104], [DE-113], [DE-116] all held in abeyance during the contempt hearing by the District Court at the Plaintiff's request on May 15, 2023; from May 16, 2023 through August 9, 2023, yet the court issued no findings on these points or the points raised in [DE-127] and [DE-128] prior to entering judgment with its Memorandum Opinion & Order [DE-129].

HOKC's silence on appeal regarding these core disputes—especially those involving the foundation of its trademark rights—functions as appellate concession. See *United States v. Real Property Located at 475 Martin Lane*, 545 F.3d 1134, 1141 (9th Cir. 2008) ("A party fails

to adequately brief a claim when he does not even argue the issue in his appellate brief. As a result, the claim is waived.").

In *The Honorable Order of Kentucky Colonels v. Building Champions*, 345 F. Supp. 2d 716 (W.D. Ky. 2004), the court found that "Kentucky Colonel" and "Kentucky Colonels" were not protectable absent confusion with HOKC's registered marks. HOKC has never disputed that decision's holding, nor has it obtained a contrary ruling from any court. Its attempt to assert exclusive control over these public-facing designations—through litigation rather than USPTO opposition—demands close scrutiny.

This Court should remand for factual findings regarding whether the Appellee obtained or enforced its trademarks through material misrepresentations, and whether such conduct constitutes fraud under *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009) (requiring proof of knowingly false, material representations made with intent to deceive the USPTO).

## II. Appellee's Narrow Framing of the Case Ignores Material Procedural and Constitutional Issues

HOKC's brief characterizes this appeal as a straightforward enforcement of an Agreed Permanent Injunction (API), ignoring broader procedural and constitutional irregularities that materially affect the enforceability and fairness of that judgment.

Specifically, the contempt finding entered by the District Court in August 2023 [DE 129] echoed language from a preliminary injunction [DE 58] that had been extinguished by the parties' mediated settlement and the resulting API [DE 93]. It is black-letter law that preliminary injunctions are merged into and replaced by final orders. See *SEC v. First*

*Jersey Sec., Inc.*, 587 F. Supp. 535, 537 (S.D.N.Y. 1984) ("Once a final judgment is entered, the preliminary injunction merges into the final judgment and is superseded.").

Despite this, the contempt order imported terms, conditions, and prohibitions from the earlier, non-final order—undermining the finality of the API and raising serious questions about the legal basis for contempt.

Moreover, HOKC's description of the API omits the context of its negotiation and entry: the API was the product of a confidential court-mediated settlement conducted under substantial pressure, following a pattern of procedural rulings adverse to Appellant starting with an ex-parte TRO [DE-14] five days after the case began amd a preliminary injunction [DE-58] on August 13, 2020 less than two weeks before his Answer and Affirmative Defenses [DE-62] were due. Courts evaluating consent judgments must ensure they reflect "a voluntary, deliberate, and informed agreement" free from coercion. See *United States v. Hardage*, 982 F.2d 1436, 1441 (10th Cir. 1992). Where judicial findings or the record suggest the agreement was reached under unequal conditions or without independent judicial assessment, appellate scrutiny is appropriate.

Finally, by framing the contempt as solely a matter of injunctive violation, HOKC's brief avoids addressing whether the underlying injunction impermissibly restrained protected expressive activity. Appellant's use of the term "Kentucky Colonel" occurred in civic, historical, literary, and educational contexts—distinct from commercial trademark use—and is thus subject to heightened First Amendment protection. See *Taubman Co. v. Webfeats*, 319 F.3d 770, 777 (6th Cir. 2003).

Accordingly, the Appellee's framing of this case elides multiple issues that strike at the enforceability, fairness, and constitutional validity of the judgment on appeal. This Court should reject that narrowed framing and review the procedural and expressive rights implicated by the contempt ruling.

## III. The District Court Erred by Relying on a Superseded Preliminary Injunction and Misinterpreting the Scope of the Agreed Permanent Injunction

The District Court's contempt order [DE-129] is legally infirm because it relies on language from the Preliminary Injunction [DE-58] that was extinguished and superseded by the later-entered Agreed Permanent Injunction (API) [DE-93]. This alone constitutes reversible error.

It is well established that a preliminary injunction merges into and is replaced by a final judgment or consent decree. See *SEC v. First Jersey Securities, Inc.*, 587 F. Supp. 535, 537 (S.D.N.Y. 1984); *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971). Yet [DE-129], the contempt finding, draws key operative terms directly from the superseded [DE-58] order, ignoring or mischaracterizing the negotiated language of the API and the court-approved **Mediator's Proposal** upon which it was based.

The Agreed Permanent Injunction was not a unilateral reissuance of the preliminary relief—it was the product of a confidential court-assisted mediation that introduced essential stipulations, created a new balance of rights, and resolved the case without finding liability. The Mediator's Proposal, signed by both parties and incorporated into the API, confirms:

- That *no transfer of assets or admissions of liability* occurred;

- That Defendants retained the right to use the **honorary title "Kentucky Colonel"** and related civic terms for **non-commercial, journalistic, and educational purposes**;

- That the injunction would be enforced only in accord with these **preserved expressive rights**.

Specifically, **Stipulation 5** of the API states that nothing shall prohibit Col. Wright or other colonels from using "Kentucky Colonel" in non-commercial, educational, or editorial contexts. This language is absent from the Preliminary Injunction [DE-58], and the District Court failed to even reference it in [DE-129]. Instead, the Court reinstated the strict terms of the Preliminary Injunction [DE-58]—without notice or hearing—imposing an enforcement regime contrary to the agreed-upon limitations of [DE-93].

Appellee's argument that the API remains clear and enforceable disregards its negotiated and contingent nature. The Mediator's Proposal explicitly characterizes the injunction as a compromise—not an adjudication of wrongdoing. The record does not show that Appellant consented to a waiver of his First Amendment rights or to the permanent suppression of civic uses of an honorary title bestowed by the Commonwealth of Kentucky. The Court's application of [DE-58] thus undermines not only the integrity of the mediated agreement but the core doctrine that injunctions must be construed according to **contract principles**. See *Armour*, 402 U.S. at 681; *Vanguards of Cleveland v. City of Cleveland*, 753 F.2d 479, 485 (6th Cir. 1985).

This misapplication had direct consequences. The contempt finding punished activity—such as online commentary, civic branding, and the use of "Kentucky Colonel ™"—that would have been at least partially protected under the API's carve-outs and subject to evidentiary review. But the District Court disregarded this context, denied an evidentiary hearing, and reinstated

[DE-58] by implication, enforcing harsher standards than those negotiated and accepted by the parties in settlement.

This misreading of the operative injunction created ambiguity, deprived Appellant of clear notice, and violated the principle that contempt must rest on **definite, specific terms**. See *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017). The District Court's approach blurred the boundaries of contractually defined obligations and constitutional fair-use protections—thereby exposing expressive conduct to sanction without valid legal basis.

This alone is enough to warrant vacatur. The Court must reverse the contempt finding and remand for a proper interpretation of the Agreed Permanent Injunction in light of its mediated origin, Stipulations 5 and 6, and the parties' settled expectations.

The District Court's admitted failure to review the Mediator's Proposal at the time of the contempt hearing confirms that the record was not properly evaluated. This omission invalidates the finding of "clear and convincing evidence" and compels vacatur.

## IV. The Contempt Finding Misapplies and Overreaches Trademark Law and Equitable Doctrines in the Absence of Commercial Use, Procedural Safeguards, and Constitutional Fair-Use Protections

Appellee's three core claims — that Appellant's use of the term "Kentucky Colonel" violated the Agreed Permanent Injunction (API), resulted in unjust enrichment, confused the public, and constituted trademark infringement — collapse under scrutiny. These contentions rely on misstatements of law, mischaracterizations of fact, and judicial findings unsupported by clear and convincing evidence of misinterpreted legal reasoning.

**First**, Appellant's use was not in connection with the sale of goods or services, nor did it represent any attempt to pass off or trade on Plaintiff's goodwill. Rather, as a member of a community of titleholders (in a private Facebook Group) and in the context of organizational identity, Appellant used the term to express heritage, affiliation with the title, and personal identity — activities squarely protected under the First Amendment. See *Matal v. Tam*, 582 U.S. 218, 230 (2017) ("[T]rademarks are private, not government speech, and the government may not suppress expressive content…"). The District Court made no finding that Appellant's activities met the statutory definition of "use in commerce" under 15 U.S.C. § 1125(a), nor did it consider whether his conduct qualified for First Amendment protection — despite binding precedent requiring such inquiry. See *Taubman Co. v. Webfeats*, 319 F.3d 770, 777–78 (6th Cir. 2003).

**Second**, no evidence of material consumer confusion was presented to the District Court. Appellee introduced no survey, affidavit, or witness testimony showing that members of the public mistook Appellant's nonprofit or expressive use for official endorsements, commercial offerings, or affiliated fundraising. Instead, it relied on speculation and anecdotal impressions from its own members who perceived Appellant's civic expression as duplicative of their institutional identity. Such insular opinion is not a substitute for evidence. See *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("Where the defendant is not using the mark to brand or sell goods or services, the Lanham Act does not apply."). Nor did the court identify any reputational harm, economic loss, or public deception traceable to Appellant's expressive activity.

**Third**, the District Court grounded its contempt finding in an overbroad reading of the API and selectively interpreted terms of the mediated settlement without resolving key factual or legal

objections raised by Appellant. Despite claiming to rely on the API [DE-93], the court reverted to language and logic drawn from the Preliminary Injunction [DE-58], without accounting for the mutually negotiated and court-assisted resolution reflected in the API and the mediator's written proposal. This selective enforcement ignores the equitable limits inherent in consent orders and substitutes rigid enforcement for thoughtful adjudication. See *United Mine Workers v. Bagwell*, 512 U.S. 821, 833–34 (1994).

The court also misapplied trademark principles in its analysis of Appellant's use of "Kentucky Colonel™." The decision cites the presence of a "TM" symbol as dispositive evidence of infringement, failing to acknowledge that use of the TM symbol is legally permissible to signal common-law rights and is not exclusive to registered mark holders. See *T. Marzetti Co. v. Roskam Baking Co.*, 2010 WL 2162903, at *3 (S.D. Ohio), aff'd, 680 F.3d 629 (6th Cir. 2012). The court conflated expressive use with commercial appropriation, disregarding that the expressive use of a civic title — especially one conferred by a state — falls outside the Lanham Act's scope.

**In sum**, Appellee's theory of unjust enrichment fails because it lacks (1) evidence of commercial activity, (2) demonstrable consumer confusion or marketplace harm, and (3) any gain attributable to deception or misappropriation. The contempt finding, in turn, fails because it rests on the judicial mischaracterization of civic speech and nonprofit affiliation as infringement.

Appellant's expressive use — embedded in nonprofit websites, social media, literature, news, and civic storytelling — is protected under the First Amendment and falls beyond the reach of trademark litigation. Courts must avoid interpreting injunctions so broadly as to become tools

of censorship or monopolization of public language. In the absence of actionable infringement, willful defiance, or commercial exploitation, the contempt order is unsupportable in law and must be reversed.

## V. Judicial Suppression, Entrenched Bias, and Post-Judgment Suppression of Record-Critical Motions Denied Appellant Due Process and Fair Review

Appellant filed a Notice of Judicial Suppression on April 16, 2025, documenting **procedural concerns** related to the District Court's decision not to recuse, denial of judicial notice, and rejection of Rule 11 sanctions—all despite evidence of perjury and fabricated trademark claims. Orders [DE-182] and [DE-183], entered after the filing a Motion to Recuse [DE-170] and the Notice(s) of Appeal [DE-132] and [DE-142], are void before Judge Jennings under the Ultra-Vires Act as an adverse action. The District Court refused to acknowledge Appellant's sworn declaration of judicial bias [DE-170.1], failed to address objections to the return of the TRO bond [DE-181], denied a Motion for Judicial Notice [DE-171] (including an exhibit from the US Congress) and denied Rule 11 relief in contradiction of binding Sixth Circuit precedent. See *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990).

The Appellee also failed to disclose a prior federal case involving the same Plaintiff — *Honorable Order of Kentucky Colonels, Inc. v. Building Champions, LLC*, 345 F. Supp. 2d 716 (W.D. Ky. 2004) — in which the Court evaluated the enforceability of HOKC's trademarks and declined to adopt the sweeping exclusivity theory now advanced here. That case undermined HOKC's claim to sole control over the "Kentucky Colonels" name and title and emphasized limits on injunctive reach and expressive overlap. Appellee's failure to disclose this binding and directly relevant decision raises a serious concern under the attorney's duty of candor to

the tribunal. Had that case been disclosed—as it should have been—this litigation would likely not have survived the pleading stage. The District Court's failure to reference it further underscores the pattern of judicial suppression and factual distortion now at issue on appeal.

This appeal no longer presents a mere dispute over injunctive enforcement. It now implicates systemic due process violations and judicial suppression of material filings that directly impact record completeness, adjudicative fairness, and constitutional legitimacy of the proceedings.

Between February 26, 2025 and April 14, 2025 — well after the Notices of Appeal were filed in 2023 — Appellant submitted several post-judgment motions supported by new evidence of fraud on the court and the USPTO, judicial bias, and constitutional violations. These included:

- a **Motion for Recusal** under 28 U.S.C. §§ 144 and 455, supported by a sworn affidavit and extensive factual evidence;

- a **Motion for Judicial Notice** under FRE 201(b) containing historically verifiable public records rebutting Plaintiff's trademark claims;

- a **Rule 11 Motion for Sanctions** identifying false statements made to the Court and the USPTO;

- and an **Amended Objection to Return of Bond** raising active equitable defenses under Fed. R. Civ. P. 65(c).

The District Court denied all of these motions in two terse rulings [DE 182] and [DE 183], mischaracterizing them as "frivolous" and claiming a lack of jurisdiction — despite the fact that the motions were filed post-appeal and did not seek to disturb the appeal's merits. The

court simultaneously granted Appellee's request to return a $1,000 TRO bond — a contested asset tied to an injunction whose legality is actively on appeal.

Worse still, the **judge ruled on her own disqualification motion**, in direct violation of the mandatory reassignment procedures set out in 28 U.S.C. § 144. That statute, along with binding Sixth Circuit precedent, requires that once a facially sufficient affidavit is filed, the matter must be referred to another judge. See *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990). The judge's denial of recusal — without a hearing or external referral — violated this duty and entrenched the appearance of partiality. It also allowed the Court to reject all related motions without scrutiny.

These actions reflect **judicial suppression** in its legal and constitutional dimensions: a deliberate foreclosure of access to procedural remedies and the preservation of a distorted trial record. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) (fraud on the court overrides finality); *Demjanjuk v. Petrovsky*, 10 F.3d 338, 354 (6th Cir. 1993) (suppression of evidence and procedural irregularities justify reopening proceedings). A judge who is the subject of credible disqualification cannot lawfully continue to rule on motions whose outcomes affect the integrity of appellate review.

The Court's conduct created the very harm that doctrines like § 144 and Rule 60(d)(3) were designed to prevent: insulating judicial missteps by suppressing the evidence and procedural avenues required to expose them. Instead of referring the recusal motion, the judge preemptively foreclosed all avenues for evidentiary correction, institutional review, or equitable relief.

This is no longer simply a question of bias—it is an institutional effort to preserve a tainted uniformed judgment by silencing dissent, ignoring sworn factual declarations, and shielding the prevailing party's demonstrable misconduct from scrutiny. The record has been suppressed, and due process denied.

Appellant respectfully requests this Court recognize these events not as harmless error, but as structural due process violations requiring correction. The Court should vacate the contempt ruling, remand for consideration of the fraud and bias-based motions, and instruct the District Court to recuse the presiding judge from further proceedings on remand.

The Court possesses **inherent power** to vacate decisions secured by fraud and abuse of process. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991); *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).

## VI. The District Court Misapplied Trademark Law and Failed to Account for First Amendment Protections

Appellee claims ownership of the phrase *"Kentucky Colonels"* despite the term's long-standing public domain usage as an honorary title of civic identity applied to individuals dating back more than a century prior to the emergence of the Honorable Order of Kentucky Colonels in 1933. By using trademark law as a tool to silence criticism and restrict cultural speech, Appellee seeks to convert the Lanham Act into a vehicle for **private censorship**. This violates the Supreme Court's clear holding in *Matal v. Tam*, 582 U.S. 218 (2017), that trademarks are subject to First Amendment constraints and cannot be used to suppress expressive content.

The District Court's analysis underlying the contempt finding rests on a legally unsupported application of trademark doctrines and fails to account for the constitutional

limits on trademark enforcement. Specifically, the court did not apply the Sixth Circuit's multi-factor test for likelihood of confusion, and it ignored the fact that Appellant's speech fell outside the commercial conduct that trademark law regulates.

Under *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642 (6th Cir. 1982), a finding of infringement requires a fact-specific inquiry into whether the defendant's use of a mark is likely to cause consumer confusion. Relevant factors include strength of the mark, similarity of the marks, relatedness of the goods, marketing channels used, evidence of actual confusion, and defendant's intent. None of these were meaningfully addressed by the court below. See also *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630 (6th Cir. 2002) (confusion analysis must be grounded in specific findings).

Furthermore, Appellant's activities—maintaining educational websites, publishing historical materials, and participating in civic advocacy—do not constitute "use in commerce" as defined by the Lanham Act. See 15 U.S.C. § 1125(a), nor do they regulate the Appellant's descriptive or generic use applied to a class of people. Courts have recognized that expressive use of marks in non-commercial contexts falls outside the Lanham Act's scope. In *Taubman Co. v. Webfeats*, 319 F.3d 770, 777 (6th Cir. 2003), the court held that critical or informational websites using a mark are constitutionally protected where no commercial use is involved. Similarly, in *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005), the court rejected a Lanham Act claim where the defendant's website was noncommercial and expressive in nature.

The District Court compounded this legal error by failing to apply First Amendment scrutiny before enjoining Appellant's use of historically descriptive language. As the

Supreme Court reaffirmed in *Matal v. Tam*, 582 U.S. 218 (2017), trademark law must yield where its enforcement would suppress expressive speech. Appellant's use of the title "Kentucky Colonel," a designation historically conferred by the Commonwealth of Kentucky, constitutes personal, cultural, and civic expression—not commercial branding. The blanket enjoinment of such use constitutes an impermissible prior restraint.

The contempt order penalizes noncommercial speech protected under the First Amendment, applies trademark law beyond its legal scope, and fails to evaluate the actual likelihood of confusion. These fundamental legal errors warrant reversal and remand for proper application of trademark standards and constitutional scrutiny.

## VII. This Appeal Properly Encompasses Constitutional, Jurisdictional, and Equitable Issues Ignored by the District Court

Although this matter is procedurally styled as a trademark enforcement action, Appellant respectfully asserts that the true nature of the case is—and has always been—a **civil rights dispute** grounded in constitutional speech and the right to publicity, not a conventional trademark matter which was used to contravene the Appellant's activities. The Appellant has never sought or applied for a trademark, and the named identity of his unincorporated association was underpinned by the Appellee's unilateral trademark applications, assertions, and unsubstantiated claims of fame, officialdom, and incontestability taken at face value without scrutiny or judicial equity.

The underlying claims and defenses have consistently focused on:

- The First Amendment rights of Appellant to publish, petition, assemble peers, and engage in public historical discourse;

- Procedural and due process violations under the Fifth and Fourteenth Amendments;

- Judicial overreach and inequity, particularly in how the injunctions were interpreted and enforced notwithstanding a Court Mediated Agreement;

- SLAPP-style litigation tactics, intended to chill protected speech and public advocacy.

Appellant emphasizes that the only substantive outcome of the District Court's actions was the expansion of Appellee's trademark rights beyond their lawful scope—permitting those marks to operate as tools of **prior restraint** and **speech suppression**. This case has never involved a genuine contest between two trademark holders or trademark users.

This Court is not bound to accept the District Court's framing of the action as a trademark dispute, especially given that:

- The case never proceeded to trial on the merits of the trademark claims;

- The controlling order [DE-129] was based on a contempt finding under a misapplied injunction, not on adjudicated trademark infringement;

- The Plaintiff has invoked judicial mechanisms in a manner that effectively imposed private constraints on public language, historical identity, and expressive association.

The Appellee frames this appeal as limited to enforcement of a valid Agreed Permanent Injunction (API), arguing that Appellant merely challenges a contempt finding. That framing mischaracterizes both the nature of the appeal and the issues preserved below. Appellant

challenges the scope, validity, and constitutional enforceability of the API itself, as well as the procedural irregularities that tainted the orders enforcing it.

## A. Jurisdiction to Enforce the Injunction Was Conditioned Procedurally

While the District Court retained jurisdiction to enforce the API under its own terms and under 28 U.S.C. § 1331 and § 1291, that jurisdiction does not extend to enforcing unconstitutional or void injunctions. Consent judgments, while enforceable as contracts, cannot be used to waive constitutional rights or exceed the court's equitable authority. See *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). An injunction entered through a mediated agreement must still comply with constitutional limits and procedural due process. See *Demjanjuk v. Petrovsky*, 10 F.3d 338, 354 (6th Cir. 1993) (relief warranted when judgment was obtained by fraud or serious procedural irregularity).

The District Court never ruled on Appellant's pending motions, including a motion for recusal, a Rule 11 motion, and a request for judicial notice—all of which raised concerns central to the legitimacy of the injunction and Appellant's expressive rights. These unresolved motions undermine the finality and legitimacy of the API as a basis for contempt.

## B. The Appeal Raises Constitutional and Equitable Issues That Extend Beyond Rule 70 Enforcement

Although this appeal includes a challenge to a civil contempt order (ordinarily reviewed under 28 U.S.C. § 1291), it also implicates constitutional protections under the First and Fourteenth Amendments, and equitable doctrines under Rule 60(b). See *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005) (Rule 60(b) relief appropriate for correcting unjust final judgments). Where an

injunction limits expressive conduct, courts must scrutinize its impact under the First Amendment. See *Walker v. City of Birmingham*, 388 U.S. 307 (1967).

Appellant's use of the "Kentucky Colonel" designation is protected expressive activity tied to his civic identity and historical documentation. The API, as interpreted and enforced by the District Court, restrains that speech in ways that the First Amendment does not permit. This appeal therefore requires not only review of the contempt order, but also clarification of the lawful bounds of the injunction and the record on which it rests.

In light of the above, this Court has jurisdiction to review not only the contempt finding, but the constitutionality and enforceability of the underlying injunction. A remand is warranted to correct the procedural omissions and clarify the limits of enforceable relief under constitutional and trademark law.

In *Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003), the Sixth Circuit held that speech critical of a plaintiff's business was protected by the First Amendment and could not be enjoined under the Lanham Act. This precedent underscores that trademark laws cannot be used to suppress constitutionally protected speech.

Furthermore, in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982), the Supreme Court emphasized that procedural due process is violated when a claimant is denied a hearing on the merits due to the state's failure to comply with its own procedural requirements. This principle applies here, where Appellant was denied a fair opportunity to present constitutional claims.

## VIII. The Record Requires Supplementation, and the Contempt Judgment Must Be Reversed or Vacated Based on Procedural and Constitutional Grounds

The record is materially incomplete and was shaped through judicial bias or suppression. Under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993), and *Gonzalez v. Crosby*, 545 U.S. 524 (2005), this Court has authority to set aside judgments tainted by fraud, remand for factual development, and permit supplementation under Fed. R. App. P. 10(e)(2).

The *collateral bar doctrine* does not protect unconstitutional prior restraints or judicial acts that violate First Amendment safeguards. See *United Mine Workers v. Bagwell*, 512 U.S. 821 (1994); *Walker v. City of Birmingham*, 388 U.S. 307 (1967).

To ensure the **integrity and completeness** of the appellate record, Appellant must pursue limited and narrowly tailored motions under FRE 201(d) and FRAP 10(e), solely to rectify omissions and clarify adjudicative facts essential to constitutional review. These efforts are intended to **conserve judicial resources** by addressing record defects that otherwise impair finality and frustrate review on the merits.

Appellant respectfully requests that the Court consider granting relief on two fronts: (1) vacatur of the contempt finding based on legal error and procedural irregularities, and (2) remand with instructions to address unresolved motions and permit supplementation of the record necessary for fair adjudication.

## A. The Record Is Incomplete and Requires Limited Supplementation

Appellant filed a timely motion under Federal Rule of Appellate Procedure 10(e) seeking to correct and expand the record to include relevant motions and exhibits submitted prior to the contempt order—including a Motion for Judicial Notice, a time sensitive Anti-SLAPP Motion, and various documents challenging the Appellee's trademark history. These filings, though docketed, were never substantively ruled upon or incorporated into the trial court's analysis.

Rule 10(e) permits supplementation where "anything material to either party is omitted from the record by error or accident." This applies here. The appellate court may direct the district court to certify and transmit these materials for consideration. See *Securities & Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 88 (1943) (decisions must rest on a fully developed record).

## B. Reversal or Vacatur Is Required Due to Legal and Constitutional Error

The contempt order must be reversed because it rests on an injunction that was (1) applied beyond the bounds of trademark law, (2) enforced without clear evidence of commercial use or confusion, and (3) issued in a procedurally defective context. As explained in prior sections, the District Court did not adjudicate key motions, failed to address Appellant's First Amendment defenses, and applied standards inconsistent with controlling precedent.

The appropriate remedy is to reverse the contempt finding outright or, at minimum, vacate it and remand for further proceedings under proper procedural and constitutional standards. On remand, the District Court should be directed to:

- Rule on all pending motions relevant to Appellant's defenses, including the recusal motion and constitutional objections;

- Clarify the scope of the Agreed Permanent Injunction in light of the First Amendment and *Building Champions* precedent;

- Permit submission of supplemental evidence relevant to the intent and meaning of the mediated settlement.

## C. Appellant Also Preserves the Right to Seek Relief Under Rule 60(b)

In light of the procedural anomalies and factual omissions in the record, Appellant intends to file a Rule 60(b) motion in the District Court seeking relief from the underlying judgment on the grounds of mistake, newly discovered evidence, litigation misconduct, and fraud on the court. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *Gonzalez v. Crosby*, 545 U.S. 524 (2005).

This Court's recognition of those pending rights—and its preservation of jurisdiction to review any post-remand proceedings—will ensure fairness and protect the constitutional issues raised by this case.

---

# STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Sixth Circuit Rule 34(a), to resolve this matter, Appellant shall upon request of the Court participate in an oral argument via Zoom. Given the complexity of constitutional,

equitable, and procedural issues—alongside allegations of judicial bias and record suppression—oral argument may materially assist the Court in evaluating the merits.

---

# REQUEST FOR RELIEF

WHEREFORE, Defendant-Appellant, Col. David J. Wright, respectfully requests that this Honorable Court grant the following relief:

1. **Vacate the contempt finding** entered by the District Court on August 9, 2023 [DE 129], and any related sanctions or orders enforcing the Agreed Permanent Injunction, based on:

   a. Fraud on the Court through materially false representations by Appellee;

   b. Fraud on the USPTO through misstatements and omissions that undermined the basis for the asserted trademark rights;

   c. The District Court's failure to rule on Appellant's Motion for Recusal, Rule 11 Motion, Motion for Judicial Notice, and other filings prior to issuing substantive judgments;

   d. Enforcement of an injunction that operates as an unconstitutional prior restraint on protected expressive activity;

2. **Declare the Agreed Permanent Injunction unenforceable** or void ab initio to the extent it:

   a. Was procured or interpreted through fraud or concealment;

   b.  Contradicts the scope of permissible trademark enforcement under *Building Champions*, *Matal v. Tam*, and *Taubman Co. v. Webfeats*;

   c.  Suppresses the historical, civic, or educational use of the honorary title "Kentucky Colonel";

3.  **Order remand** with instructions that the District Court:

   a.  Reopen proceedings for full evidentiary review of Appellant's constitutional, factual, and procedural objections;

   b.  Address the full scope of Appellant's pending motions, including for sanctions, recusal, Anti-SLAPP dismissal, and declaratory relief;

   c.  Determine whether fraud on the court or abuse of process warrants further relief under Fed. R. Civ. P. 60(b) or the Court's inherent authority;

4.  **Refer the matter to the USPTO or authorize comprehensive judicial review** of the disputed trademarks under 15 U.S.C. §§ 1064 and 1119, including whether cancellation, restriction, or disclaimer is warranted due to misrepresentation, abandonment, or overreach;

5.  **Supplement the record on appeal** pursuant to Fed. R. App. P. 10(e), including all motions and filings excluded or left unresolved below that are material to this Court's review;

6.  **Award Appellant costs and any equitable relief** the Court deems just and proper, including but not limited to public findings related to misuse of litigation to suppress constitutionally protected expression and public domain titles. Award Appellant litigation costs under the Lanham Act's exceptional case provision. See Lanham Act 15 U.S.C. § 1117(a).

7. **Bar Further Litigation Abuse** – Enjoin Appellee from asserting exclusive rights over the inherently descriptive phrase "Kentucky Colonels" in future speech-based actions and in public facing documents it distributes or publishes online.

8. **Declaratory Judgment** – Declare:

   a. "Kentucky Colonels" is a public domain honorific.

   b. Appellant's descriptive and editorial use is lawful.

   c. Appellee's litigation was a bad-faith attempt to monopolize cultural speech.

9. **Additional Relief** – Grant any further equitable relief the Court deems just and proper.

---

# CONCLUSION

This Reply Brief has demonstrated that the Appellee has failed to rebut core allegations of fraud, First Amendment suppression, judicial suppression of evidence, and misuse of procedural mechanisms. The Appellee has relied on superficial focused framing, unexamined assertions, and a weaponized injunction derived from a contempt proceeding not from a lawful trial on the merits, but from a series of coercive and selectively enforced orders originating in a deeply flawed District Court process.

This is not a trademark case—it is a civil rights appeal brought by a pro se defendant whose identity, history, and protected speech have been unconstitutionally chilled and suppressed by trademark rights and constructive prohibition. The District Court adopted an extreme posture of judicial deference, failing to adjudicate the factual disputes, misapplying its own record, and

denying equitable relief in violation of constitutional and evidentiary standards. That pattern has been further entrenched by recent ultra vires rulings entered after the Notice of Appeal.

Appellant respectfully urges this Court to reverse the contempt ruling, vacate all post-appeal orders, and remand with instructions for full reconsideration consistent with due process, equity, and the First Amendment. The Court should not only correct the record, but also restore confidence in judicial neutrality and the rule of law.

This is not an ordinary trademark appeal but a case that demands judicial intervention to prevent further entrenchment of unconstitutional restraints on civic identity and public speech.

I declare under penalty of perjury that the foregoing Reply Brief to the Sixth Circuit Court of Appeals was prepared in good-faith, it is true and correct to the best of my knowledge and belief.

Respectfully submitted,

/s/ Col. David J. Wright

302 General Smith Drive
Richmond, Kentucky 40475

david.wright@globcal.net                    Dated: May 5, 2025
Tel: +1 (859) 379-8277                       Puerto Carreño, Colombia

# CERTIFICATE OF COMPLIANCE

Pursuant to **Federal Rule of Appellate Procedure 32(a)(7)(B)**, I certify that this brief:

1. **Complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)** because, excluding the parts of the document exempted by Rule 32(f), this brief contains fewer than **6,500 words**, as verified by the word count function of the word processing system used to prepare it counted 6,428 words; and

2. **Complies with the typeface requirements of Fed. R. App. P. 32(a)(5)** and the type style requirements of **Rule 32(a)(6)** because it has been prepared in a proportionally spaced typeface using Google Docs in a 13-point Times New Roman font.

I certify that a word count of "fewer than 6,500 words" was verified using the word-processing system used to prepare this document prior to submission.

/s/ Col. David J. Wright
Col. David J. Wright, Pro-se Appellant
May 5, 2025

# CERTIFICATE OF SERVICE

I hereby certify that on **May 5, 2025**, I submitted the foregoing **Reply Brief** for filing via email to the **Clerk of the Court,** in accordance with the Court's procedures for pro se litigants. Upon docketing, the Court's CM/ECF system will automatically serve all registered ECF users, including counsel for Appellee.


Deborah S. Hunt, Clerk                                    /s/ Col. David J. Wright
Sixth Circuit Court of Appeals              David J. Wright, Pro-se Appellant
501 Potter Stewart U.S. Courthouse                   DATED: May 5, 2025
100 East Fifth Street
Cincinnati, Ohio 45202-3988