# UNITED STATES COURT OF APPEALS

# FOR THE SIXTH CIRCUIT

### CASE NOS. 23-5795 and 23-6108

### HONORABLE ORDER OF KENTUCKY COLONELS, INC.

**Appellee-Plaintiff**

v.

### COL. DAVID J. WRIGHT, A KENTUCKY COLONEL

Individually and on behalf of similarly titled individuals,

**Appellant-Defendant**

---

# NOTICE OF PRO-SE APPELLANT'S POSITION, EXPERTISE, AND BASIS FOR CONTINUING APPEAL

---

COMES NOW, Appellant Col. David J. Wright, appearing pro se in forma pauperis, and respectfully submits this Notice to inform the Court of his status, his extensive knowledge of the historical, legal, and procedural aspects of this case, and the substantial issues of constitutional, procedural, and ethical significance that demand the Court's full and fair consideration.

This Notice is not merely procedural; it serves as a clear presentation of the Appellant's position, the factual and legal foundation of his appeal, and a request for judicial recognition of the profound concerns raised by this matter.

1

# STATEMENT OF ISSUES

This case presents profound issues of **fraud, bad faith, and abuse of judicial process**, demanding this Court's full and fair review. Specifically, the Appellant, Col. David J. Wright, asserts the following:

## 1. Fraud Upon the Court and the Creation of a False Historical Narrative

- Did the Honorable Order of Kentucky Colonels (HOKC) conceptualized by Gov. Ruby Laffoon, engage in conduct constituting **fraud upon the court** by falsely claiming to be the "discoverer" of the title "Kentucky Colonel" in 1813 or by claiming the "1931 minutes" of another organization despite having no historical connection to those dates?

- Did HOKC's deliberate misrepresentation of history—presented to the United States Patent and Trademark Office (USPTO) and the federal court—constitute a calculated scheme to manufacture a basis for litigation?

## 2. Bad-Faith Trademark Applications Designed to Suppress Lawful Speech

- Did HOKC file three trademark applications for the term "Kentucky Colonels" just three days before initiating litigation, with false first-use dates and without a *bona fide* intent to use all three of the marks in commerce?

- Did HOKC violate its duty of candor to the USPTO by concealing the existence of other users of the term "Kentucky Colonel," including the Appellant, who had been lawfully using "Kentucky Colonels International" for over a decade?

## 3. Reverse Torpedo Attack: Exploiting Confidential Information to Manufacture a Lawsuit

- Did HOKC misuse confidential information disclosed by the Appellant during merger negotiations—information shared under the expectation of good faith—to file bad-faith trademark claims and initiate a SLAPP (Strategic Lawsuit Against Public Participation) action?

## 4. The Invalid and Overbroad Agreed Permanent Injunction

- Is the Agreed Permanent Injunction legally defective because it is vague, contradictory, and overbroad, extending beyond the legitimate scope of trademark law?

- Does the injunction unlawfully suppress the Appellant's educational, civic, and historical activities, in direct violation of his First Amendment rights?

- Did the injunction violate the terms of the Mediator's Proposal combined with Stipulation 5 of its terms, which guaranteed the Appellant's right to use the title "Kentucky Colonel" for educational purposes without interference?

## 5. The Sixth Circuit's Duty to Address Fraud Upon the Court

- Does this Court have an inherent duty to uncover and correct fraud upon the court, as recognized in *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)*?

- Should the Sixth Circuit vacate the fraudulent Agreed Permanent Injunction, sanction HOKC for its misconduct, and restore the Appellant's rights and reputation?

---

# I. INTRODUCTION: WHY THIS CASE MATTERS

This appeal raises profound constitutional questions involving **First Amendment rights**, **judicial integrity, fraud upon the court**, and the **misuse of trademark law as a weapon of censorship**. This appeal presents questions of judicial integrity, free speech, and the abuse of trademark law as a weapon against lawful, educational, and civic activities of a duly recognized Kentucky Colonel engaged in the free-exercise of his civil and constitutional rights. Appellant, Col. David J. Wright, is not merely a *pro se* litigant but a defender of historical truth and free expression. What began as an unjust SLAPP (Strategic Lawsuit Against Public Participation) action by the Honorable Order of Kentucky Colonels (HOKC) **has evolved into a case of systematic procedural issues and a pattern of decisions unfavorable to the Appellant, prejudice against the Defendant, misuse of federal procedures, and the**

**monopolization of a public domain title—"Kentucky Colonel."** The Sixth Circuit has a unique opportunity to affirm that justice cannot be bought, the public domain cannot be misappropriated, history cannot be rewritten through litigation, and show federal courts are not tools for private censorship or placing prior restraints against constitutionally protected activities.

**Without this Court's decisive intervention, if not corrected, this matter may result in the entrenchment of fraudulent claims under judicial authority, suppress free speech, leave the Appellant irreparably harmed, and transform federal courts into instruments of private oppression for corporations.**

## A. Constitutional Free Speech Violations

The First Amendment of the United States Constitution protects the right of free speech against governmental and private encroachments through judicial enforcement of overbroad or misapplied laws. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) the Supreme Court held that robust and open debate on public issues is essential to a free society, even if such debate may be uncomfortable.

## B. The Problem of Strategic Lawsuits Against Public Participation (SLAPP)

This case fits the pattern and exemplifies a classic **SLAPP (Strategic Lawsuit Against Public Participation)**, where HOKC has used the judicial process in a manner that suppresses lawful, educational, and civic discourse under the pretext of trademark protection. Such abusive litigation is a recognized threat to free speech and public participation; complicated with retaliation the effect is multiplied. In April 2022, Kentucky adopted a version of the Uniform Public Expression Protection Act (UPEPA), codified at **KRS §§ 454.460–454.478**. This statute is designed to protect individuals and entities from strategic lawsuits against public participation (SLAPPs) that aim to suppress free speech and petition rights. codifies legislative recognition of SLAPP suits as a direct threat to constitutional rights in the Commonwealth of Kentucky.

4

## C. The Sixth Circuit's Unique Role

This Court has an opportunity to clarify that federal courts are not venues for private censorship or monopolization of public symbols and titles. It must affirm that the judiciary is a bulwark of free expression and historical integrity, not a tool for suppressing lawful civic activity.

---

# II. CASE BACKGROUND

- **Initial Filing and Prejudice:** On February 20, 2020, HOKC initiated a 500+ page lawsuit against Appellant, securing an ex parte Temporary Restraining Order (TRO) within five days—without fair notice or opportunity to be heard. This TRO resulted in a procedural imbalance, creating the appearance of judicial favoritism, and abuse of injunctive relief. This unilateral process inherently violates the principle of **due process** as articulated in *Fuentes v. Shevin*, 407 U.S. 67 (1972), where the Supreme Court emphasized that due process requires a meaningful opportunity to be heard before being deprived of property or rights.

- **Financial Barriers to Representation:** Appellant, as a pro se litigant, faced insurmountable barriers to obtaining counsel, with initial legal fees exceeding $25,000. Pro bono options were inaccessible due to the case's complexity and SLAPP characteristics. The Sixth Circuit has acknowledged that pro se litigants are entitled to fair treatment without discrimination, as highlighted in *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991).

- **Settlement and Renewed Conflict:** Despite a court-mediated settlement and the subsequent discussions resulting in the Court Mediated Agreement in January and February 2021, HOKC revived litigation in January 2023 with a new SLAPP case, transforming it into a complex contempt proceeding against Appellant, further weaponizing the court's processes. In *SHH Holdings, LLC v. Allied World Specialty Ins. Co.*, No. 22-3283 (6th Cir. Apr. 21, 2023) the Sixth Circuit addressed the issue of a settlement agreement that later became the subject of dispute because of ambiguities in its terms. The court reaffirmed that settlement agreements, like any contract, must be interpreted according to their clear terms, but where terms are ambiguous or enforcement is challenged, judicial intervention is necessary to determine the parties' intent.

- **Judicial Bias and Procedural Abuse:** This case has been marked by clear indications of judicial favoritism toward HOKC, improper suppression of exculpatory evidence, and disregard for Appellant's First Amendment rights. *Liteky v. United States*, 510 U.S. 540 (1994) provides that judicial impartiality is a fundamental tenet of due process, and any indication of favoritism undermines the integrity of the judiciary, the decision held that judicial bias must be clear and direct, and not simply a result of unfavorable rulings.

---

# III. APPELLANT'S STATUS AND EXPERTISE

Appellant is not an ordinary pro se litigant. Over the past five years, he has conducted extensive academic and legal research on federal civil procedure, trademark law, historical rights, and fraud upon the court. Appellant has developed substantial knowledge of federal civil procedure, trademark law, and fraud upon the court; his filings reflect a disciplined, well-researched, and procedurally sound approach to seeking justice. This Court is asked to consider his arguments **on their merit, not through the lens of his pro se status or his lack of a law degree**, the Appellant is a certified non-profit administrator with a university background in philosophy.

---

# IV. BASIS FOR CONTINUING APPEAL

This matter must be continued in the interest of justice and due the extent the Appellant-Defendant has been permanently harmed and irreparably injured.

1. **Fraud Upon the Court:** HOKC has systematically misrepresented the historical origins of the title "Kentucky Colonel," falsely asserting exclusive trademark rights while suppressing Appellant's truthful historical narrative. Judicially ignoring this fraud allows it to persist under a false veneer of legitimacy. Fraud upon the court is a fundamental violation of due process, as outlined in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) where it was

established that "fraud upon the court occurs when a party's conduct corrupts the integrity of the judicial process itself".

2. **Trademark Fraud:** The Appellant asserts that Appellee-Plaintiff HOKC has committed trademark fraud, as defined under the Lanham Act, 15 U.S.C. §§ 1051, 1120, and 1125. Specifically, HOKC has engaged in a pattern of misrepresentations and omissions designed to deceive the USPTO and the courts, thereby improperly securing and enforcing trademark rights. To establish trademark fraud, it must be shown that the applicant or registrant knowingly made a false, material representation with the intent to deceive the USPTO, *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009). This intent to deceive is a crucial element; mere negligence or mistake is insufficient to constitute fraud.

3. **First Amendment Conflict with Trademark Law:** HOKC has exploited trademark law to silence Appellant's educational and civic activities, including the formation of an independent organization of Kentucky Colonels which operated for more than a decade on Facebook with acquiescence, infringing on his constitutional rights. The Sixth Circuit has emphasized that even where a party asserts a legitimate legal right, such as a trademark, it must be balanced against the fundamental protections of free speech. The Appellant asserts that his First Amendment rights were not adequately protected by the District Court.

4. **SLAPP Litigation Abuses:** HOKC's legal actions are a textbook example of a SLAPP suit, weaponizing the legal system to burden, silence, and punish lawful free speech. The HOKC case was tactically used to retaliate against a failed merger negotiation with the Appellant for the Kentucky Colonel Registry and a competing membership program. Appellant contends that HOKC's actions were a direct response to a failed merger negotiation. This Court has recognized the chilling effect of such abusive litigation in *Woolslayer v. Driscoll*, 22 F.4th 129 (6th Cir. 2022), emphasizing the judiciary's role in protecting public participation.

5. **Public Domain Misappropriation:** The title "Kentucky Colonel" is a historical public honor, rooted in civic tradition, which HOKC has attempted to monopolize through three bad-faith trademark claims applied for just three-days before bringing suit. In *Hensley Manufacturing, Inc. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009), the Sixth Circuit held that the misuse of trademark law to assert exclusive rights over a term or concept that is part of the public domain

violates fundamental principles of trademark law. The court recognized that a party cannot monopolize generic or descriptive terms or titles that have become part of the public vernacular.

6. **Judicial Integrity at Stake:** The lower court's repeated procedural rulings unfavorable to the Appellant, procedural irregularities, and failure to recognize fraud upon the court have compromised the integrity of this litigation. In *United States v. Smith*, 561 F.2d 8 (6th Cir. 1977) the Sixth Circuit emphasized that judicial integrity is paramount and that any appearance of bias or procedural irregularities can compromise the integrity of the judicial process. The court must be vigilant against any conduct that undermines fair proceedings.

7. **Judicial Inaction May Entrench Fraud:** Absent this Court's corrective action, the fraud perpetrated by HOKC can become entrenched further as judicially endorsed fact, corrupting the integrity of both the trial and appellate records. In *United States v. Hoffa*, 349 F.2d 20 (6th Cir. 1965) the Sixth Circuit emphasized that judicial inaction in the face of known fraud effectively legitimizes the fraudulent conduct, transforming it into a legally recognized fact.

---

# V. RESPECTFUL REQUEST FOR FAIR CONSIDERATION

Appellant respectfully urges this Honorable Court to recognize that this case is not merely a dispute over a title but a struggle to preserve judicial integrity, free speech, and historical truth against a well-funded, abusive litigant. Despite his pro se status, Appellant's disciplined preparation, legal research, and compelling evidence deserve full and fair consideration.

---

# VI. DAMAGES SUFFERED BY APPELLANT DUE TO COURT ORDERS WEAPONIZED AGAINST HIM

Appellant Col. David J. Wright has suffered substantial and continuing damages as a direct result of the District Court's Orders, which were obtained through misrepresentations and weaponized by the

Honorable Order of Kentucky Colonels (HOKC) to suppress his speech, destroy his reputation, and eliminate his educational and historical discourse and work. The following damages have occurred:

## 1. Suppression of Free Speech and Educational Activities

- Appellant's constitutionally protected speech, including his historical and educational work related to the title "Kentucky Colonel," has been unlawfully suppressed.

- Social media platforms, including Facebook, were legally compelled and obligated by the Appellee to remove Appellant's content [and profile] under color of judicial authority, silencing his lawful and truthful educational publications.

## 2. Financial and Economic Losses

- Appellant has been unable to lawfully engage in his historical education projects, educational publications, and civic activities that previously generated income.

- Efforts to obtain legal counsel were obstructed by the overwhelming cost of representation, with retainer demands exceeding $25,000—a prohibitive barrier for a pro se litigant.

- The judicial actions against Appellant have effectively destroyed his ability to engage in his professional work, causing severe financial harm.

## 3. Reputational Harm and Public Defamation

- Appellant's name and credibility have been irreparably damaged by false accusations of trademark infringement and contempt, which have been weaponized by HOKC in public forums like Facebook, via email to its donor and customer base, and in the public media.

- HOKC has perpetuated a false historical narrative, branding Appellant as a violator of their fraudulent trademark rights, misleading over 500,000 individuals and defaming Appellant's historical work.

## 4. Judicial Suppression of Evidence and Denial of Fair Process

- Over 20 dispositive, affirmative, and protective motions filed by Appellant were ignored, denied without the heightened scrutiny they deserved, or held in abeyance, denying him the opportunity to present his defense.

- Appellant's Answer and Affirmative Defenses, timely submitted, were entirely ignored as an oversight by the District Court, effectively stripping him of any meaningful opportunity to defend himself.

## 5. Loss of Historical Integrity and Public Trust

- HOKC's fraudulent misrepresentation of the title "Kentucky Colonel" has distorted public understanding of this historic title, substituting a false narrative for the actual true civic origins of the honorable title.

- Appellant's attempts to preserve and educate the public on the authentic history of the Kentucky Colonelcy have been obstructed by court-ordered censorship.

## 6. Severe Emotional and Psychological Distress

- As a result of this protracted, abusive litigation, Appellant has experienced severe emotional distress, including anxiety, humiliation, and the loss of his reputation as a historian, storyteller, negotiator, and educator.

- The knowledge that a federal court's orders have been weaponized to destroy his life's work and historical contributions has caused profound and lasting harm.

## 7. Infringement of Civil Rights and Procedural Due Process

- Appellant's fundamental civil rights, including his First Amendment right to free speech and his right to a fair hearing, have been systematically violated by the misuse of judicial orders.

- The denial of procedural fairness and the suppression of exculpatory evidence have rendered the District Court proceedings a travesty of justice.

# VII: WHAT THE SIXTH CIRCUIT SHOULD UNCOVER ABOUT HOKC UPON APPELLATE DE NOVO REVIEW

1. **Retaliatory SLAPP Litigation Designed To Silence Public Discourse:** The Honorable Order of Kentucky Colonels (HOKC) initiated this litigation not as a good-faith effort to protect any legitimate right, but as a calculated and retaliatory measure to suppress lawful educational speech and public discourse. Characteristic of a Strategic Lawsuit Against Public Participation (SLAPP), HOKC's lawsuit weaponized judicial processes to silence Appellant's factual historical presentation. The HOKC's misuse of an ex parte Temporary Restraining Order (TRO), obtained without fair notice or opportunity for Appellant to be heard, exemplifies this retaliatory strategy, depriving Appellant of due process while transforming the Agreed Permanent Injunction (API) into an instrument of further abuse.

2. **Fraudulent Misrepresentation of Origin And Rights Under Title 15 U.S.C. § 1125:** The HOKC deliberately fabricated a false historical narrative of 1813, asserting itself as the "discoverer" or exclusive source of the title "Kentucky Colonel," a public and civic honor that predates their unincorporated formation in 1933. Immediately prior to 2003, HOKC devised a new strategy for the term "Kentucky Colonels" by fraudulently claiming the history, meeting minutes, and even the very legal existence of a competing organization 1931 as its own. This narrative was fraudulently advanced before the United States Patent and Trademark Office (USPTO), the U.S. District Court, its donors, and this Court. Specifically, the HOKC fraudulently applied for three separate trademarks 88800020, 88800035, and 88800038 for the phrase "Kentucky Colonels" just three days before initiating litigation against Appellant—clear evidence of a bad-faith scheme designed to create a false history and monopolize a public honor; as well as manufacture its standing to bring this claim.

   This scheme directly violated Title 15 U.S.C. §§ 1051 (Lanham Act) making a bad-faith application for registration; which further under 1120 created civil liability for false or fraudulent registration, and under 1125 which prohibits false representations of origin and deceptive trade practices. Under 1119 these trademarks must be cancelled.

3. **Deception and Fraud Upon the Court:** The HOKC's calculated falsehoods and misrepresentations extend beyond the public. The HOKC presented fraudulent claims to the U.S.

District Court and this Court, asserting exclusive rights over the title "Kentucky Colonel," despite clear historical evidence that the title is a public honor and not a private trademark. These misrepresentations were knowingly false and were used to manipulate judicial processes, constituting fraud upon the court—a violation so severe it threatens the integrity of judicial proceedings themselves. HOKC's misrepresentations have misled not only courts but also historians, educators, and over 500,000 Kentucky colonels, displacing truthful historical knowledge with a fictitious narrative.

4. **Pattern of Abusive Legal Tactics and Procedural Manipulation:** HOKC's conduct demonstrates a deliberate pattern of abusive litigation, including: (a) initiating a SLAPP lawsuit under the guise of trademark protection; (b) filing a TRO without notice; (c) transforming a preliminary injunction into a contempt proceeding without proper due process; (d) subverting the intent of the Court Mediated Agreement (CMA) by weaponizing its terms to maintain perpetual litigation repression; and (e) reviving litigation in January 2023 as a contempt action, distorting a settled dispute into a weaponized process. These actions expose a pattern of bad faith and judicial manipulation designed to overwhelm Appellant through sheer procedural abuse.

5. **Public Deception and Institutional Fraud:** The HOKC has knowingly propagated a false historical narrative of its exclusive right to the title "Kentucky Colonel," deceiving over 500,000 individuals, misinforming the public, and misleading donors into believing that the HOKC is the legitimate source of this civic honor. This deception is not limited to the courtroom—it extends to educational institutions, public historians, and digital platforms. The HOKC has actively weaponized social media, using judicial orders to silence Appellant's educational content, including the forced removal of historically and factually accurate content from Facebook under color of judicial authority.

6. **The Sixth Circuit's Mandate: Correcting Fraud and Protecting Free Speech:** Upon *de novo* review, the Sixth Circuit must uncover and correct HOKC's fraudulent misrepresentation of the title "Kentucky Colonel" and the name phrase "Kentucky Colonels" ensuring that judicial processes are not exploited as instruments of censorship. The Court must recognize that trademark law cannot be used to monopolize public symbols and that free speech—including the right to present historical and educational content—is a constitutionally protected right. Judicial

integrity demands that HOKC's fraudulent narrative be rejected, and that this Court act decisively to preserve the principles of free speech, historical truth, and due process.

---

# VIII. CONTROVERSY EXCEEDING A SIMPLE CASE

This matter is not a mere legal disagreement but a public controversy implicating fundamental rights, judicial ethics, and the preservation of historical truth. The Sixth Circuit must recognize that the lower court's rulings, if left uncorrected, will judicially entrench fraud, and establish a dangerous precedent for the suppression of public discourse through procedural manipulation and retaliatory litigation.

---

# IX. JURISDICTION OF THIS COURT

This Honorable Court has jurisdiction to hear this appeal under multiple foundational principles of federal law:

## A. Federal Question Jurisdiction (28 U.S.C. § 1331)

This case presents significant questions of federal law, including but not limited to:

- **First Amendment (U.S. Const. amend. I):** The Appellant's right to free speech has been unlawfully suppressed through judicial orders weaponized by the Honorable Order of Kentucky Colonels (HOKC), which used trademark law to silence lawful educational activities.

- **Due Process (U.S. Const. amend. V and XIV):** The Appellant's fundamental right to a fair hearing has been systematically denied. Specifically:

  - The initial Temporary Restraining Order (TRO) was granted ex parte without meaningful notice or an opportunity to be heard.

- ○ Over 20 dispositive, affirmative, and protective motions filed by Appellant were ignored, denied without explanation, or held in abeyance.

- ○ The Appellant-Defendant's Answer and Affirmative Defenses were never considered and summarily disregarded by the District Court despite their timeliness.

## B. Diversity Jurisdiction (28 U.S.C. § 1332)

The diversity of citizenship exists between the parties:

- The Appellant, **Col. David J. Wright**, is a Kentucky Colonel and US citizen, resident of Kentucky and Colombia, while HOKC is a Kentucky corporation.

- The amount in controversy exceeds $75,000, considering the extensive economic, reputational, and constitutional damages alleged.

## C. Appellate Jurisdiction (28 U.S.C. § 1291)

This Court has jurisdiction over this appeal as it seeks review of final orders of the United States District Court for the Western District of Kentucky, which adversely affected the Appellant's rights. These orders are final and appealable because they effectively resolved the issues raised without granting the Appellant equity or a fair opportunity to present his case.

## D. Jurisdiction Over Claims of Fraud Upon the Court

Fraud upon the court is a grave violation that implicates the integrity of the judicial process itself (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)). The Appellant asserts that HOKC committed fraud upon the court by:

- Falsely representing the historical origins of the title "Kentucky Colonel" to the United States Patent and Trademark Office (USPTO), to the media, and the district court.

- Misleading the court into believing it holds exclusive *famous and incontestable* trademark rights over a public domain title.

- Engaging in deceptive practices designed to manipulate judicial processes, including the misuse of judicial orders to silence lawful speech and concealing material facts.

The Sixth Circuit has recognized that federal courts possess inherent authority to address and correct fraud upon the court (*Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993)). This Court has a duty to review the proceedings for indications of fraud and take corrective action where necessary.

## E. Jurisdiction Over Violations of Procedural Due Process

The Appellant's right to be heard, a cornerstone of procedural due process, has been repeatedly violated:

- An ex parte TRO was issued without notice to the Appellant, violating the principles of due process set forth in *Fuentes v. Shevin*, 407 U.S. 67 (1972).

- The District Court's failure to consider or address the Appellant's numerous motions denied him any meaningful opportunity to defend himself.

- The Appellant's well-reasoned arguments and defenses were ignored solely because of his pro se status, contrary to the principles of fair treatment established in *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991).

## F. Jurisdiction to Address Abusive Litigation Practices (SLAPP)

The Court has jurisdiction to review and remedy the abuse of judicial processes as exemplified by this case's nature as a Strategic Lawsuit Against Public Participation (SLAPP). Kentucky's adoption of the Uniform Public Expression Protection Act (UPEPA), codified at **KRS §§ 454.460–454.478**, expressly recognizes the threat of SLAPP suits to constitutional rights. The Appellant asserts that:

- Honorable Order of Kentucky Colonels' lawsuit was filed with the primary purpose of silencing lawful educational, informational, and civic discourse.

- The misuse of judicial processes to maintain an unlawful monopoly over a public title represents a textbook example of SLAPP litigation.

15

## G. Jurisdiction to Protect the Integrity of the Judicial Process

This Court has an inherent duty to ensure that its processes are not used as instruments of fraud, censorship, or oppression. Judicial integrity is a fundamental value protected by the Sixth Circuit, which has repeatedly emphasized that courts must prevent and correct fraud upon the court *(Liteky v. United States*, 510 U.S. 540 (1994)).

## H. Request for De Novo Review

The Appellant respectfully requests that this Honorable Court conduct a de novo review of all factual and legal issues, ensuring that the Appellant's constitutional rights are fully protected and that the fraudulent misuse of judicial processes by HOKC is exposed and corrected.

---

# X. THE PRELIMINARY AND AGREED PERMANENT INJUNCTIONS: UNLAWFUL, AMBIGUOUS, AND OVERBROAD

The Agreed Permanent Injunction entered against the Appellant is fundamentally flawed and incompatible with established principles of trademark law, constitutional protections, and equitable relief. The injunction is unlawful, ambiguous, and fails to provide the Honorable Order of Kentucky Colonels (HOKC) with the legitimate protection they may have been entitled to while overreaching their actual rights under the Lanham Act governing trademark rights. Further the District Court in its final ruling did not legally interpret its terms balanced with a separate Court Mediator's Proposal making its enforcement ambiguous, unclear, untenable and obscured.

## A. The Injunction is Unlawful Under Trademark Law

1. **Overreach Beyond Commercial Use:** Trademark law **(15 U.S.C. § 1125 - Lanham Act)** is designed to protect consumers from confusion about the source of goods or services in

commerce. It does not extend to suppressing non-commercial, educational, historical, or expressive uses of a term.

    a.  **Violation:** The injunction (Sections 1 and 2) prohibits the Appellant from using "Kentucky Colonels" in connection with any educational or civic activity, even where there is no commercial element.

    b.  **Legal Conflict:** This violates the fundamental doctrine of **"nominative fair use,"** which allows individuals to use a trademarked term to describe the trademarked goods or services or for legitimate educational purposes.

2.  **Prior Restraint on Speech:** The injunction functions as a prior restraint—an unconstitutional form of censorship—by broadly prohibiting the Appellant from using "Kentucky Colonels" on websites, social media, and other platforms (Section 2).

    a.  **Constitutional Violation:** Prior restraints are presumptively unconstitutional under the First Amendment (*Near v. Minnesota*, 283 U.S. 697 (1931)). The injunction does not distinguish between commercial uses (which could be regulated) and protected non-commercial speech (which is unregulated).

    b.  **Educational Speech Suppression:** The Appellant's lawful educational activities, historical presentations, and non-commercial publications are unjustly restricted.

3.  **Misuse of Trademark Law to Monopolize a Public Title:** The term "Kentucky Colonel" is a historic, public honor and cannot be monopolized under trademark law.

    a.  **Public Domain Principle:** Generic or descriptive terms that have entered the public domain cannot be exclusively owned by any party (*Hensley Manufacturing, Inc. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009)).

    b.  **Violation:** By claiming exclusive rights to "Kentucky Colonels," HOKC has overstepped its lawful trademark rights, transforming a civic honor into a proprietary brand.

## B. The Injunction is Ambiguous and Unclear

1.  **Inconsistent Terms:** The injunction's language is vague, creating confusion regarding what is actually prohibited:

a. Section 5 claims to permit the use of "Kentucky Colonel" for educational or non-commercial purposes, but immediately contradicts this by restricting any use "related to the trademark or service mark uses" of HOKC.

b. This vague condition is impossible to define, leading to confusion and constant risk of contempt for the Appellant.

2. **Unclear Scope of Prohibition:** The use of terms like "confusingly similar" without clear standards invites subjective and arbitrary enforcement:

a. The injunction prohibits any domain name "confusingly similar" to HOKC's domain, without defining what is "similar."

b. This grants HOKC broad authority to accuse the Appellant of violation, even where no likelihood of confusion exists.

3. **Failure to Define "Educational, Informative and Literary" Uses:** Although the injunction claims to allow educational use, it fails to define what constitutes an "educational" use that would be permissible. This ambiguity and lack of clear guidelines leaves the Appellant at constant risk of being accused of contempt.

## C. The Injunction Overreaches the Legitimate Rights of HOKC

1. **Expanding Protection Beyond Trademark Law:** HOKC's legitimate trademark rights are limited to protecting the name "Kentucky Colonels" in a commercial context where confusion may occur. The injunction unlawfully expands these rights to cover all uses of the term, including non-commercial, civic, and historical uses that are outside the scope of trademark law.

2. **Restricting Lawful, Non-Commercial Activities:** By barring the Appellant from using "Kentucky Colonel" in any civic, educational, or historical context (Sections 1, 2, 3, and 4), the injunction:

a. Silences the Appellant's historical research and publications.

b. Prohibits the formation of any civic or educational group that uses the term, even if it is not affiliated with HOKC.

3. **Granting HOKC Unjust Control Over Public Speech:** HOKC's use of this injunction as a tool of censorship, rather than a legitimate trademark protection, is an abuse of judicial power:

   a. It allows HOKC to suppress any online content mentioning "Kentucky Colonel" at their discretion, even if such use is lawful and non-commercial.

   b. It transforms a civic honor—originally a public domain title—into an exclusive brand weaponized against public discourse.

## D. The Overbroad Injunction Fails to Provide the Protection HOKC May Have Been Entitled To

1. **Legitimate Protection Misrepresented:** If HOKC's goal was to prevent misleading commercial use of "Kentucky Colonels" that directly competes with its own services, this could have been accomplished through a narrowly tailored injunction focused on actual commercial activities and their disclosure.

2. **Inadequate Balancing of Rights:** The court failed to balance HOKC's limited trademark rights with the Appellant's First Amendment rights to free speech, educational expression, and civic engagement. A properly crafted injunction would:

   a. Limit HOKC's rights to prevent only those uses likely to cause actual confusion in a commercial context.

   b. Explicitly protect the Appellant's right to engage in educational, historical, and civic activities using the term "Kentucky Colonel."

   c. Address descriptive, nominative, satirical, educational, historical, and non-commercial fair-use situations.

3. **Unnecessary and Excessive Enforcement Power:** The injunction grants the court ongoing jurisdiction to enforce the injunction for ten years (Section 6), creating a constant threat of contempt without clear guidelines for compliance.

The Sixth Circuit has recognized that trademark injunctions must not extend beyond the legitimate scope of trademark law (*Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009)).

## E. The Sixth Circuit's Responsibility to Correct This Overreach

This Honorable Court must recognize that the Agreed Permanent Injunction in this case is not a lawful exercise of trademark protection but an abusive restraint on free speech, a violation of public domain principles, and a tool of censorship. It must be vacated and renegotiated to comply with the balancing fundamental principles of trademark law and constitutional rights.

The Sixth Circuit has consistently recognized that injunctions must be clear, lawful, and properly limited to protect only legitimate rights without overreaching their intended purpose. The Agreed Permanent Injunction in this matter fails to meet these standards, as illustrated by multiple Sixth Circuit decisions:

- **Ambiguous and Overbroad Terms:** In *SHH Holdings, LLC v. Allied World Specialty Ins. Co.*, No. 22-3283 (6th Cir. Apr. 21, 2023), the Sixth Circuit emphasized that settlement agreements and any resulting injunctions must be interpreted by their clear terms. Ambiguities require judicial clarification. Here, the Agreed Permanent Injunction contains conflicting language, especially in Section 5, where it purports to allow educational use of "Kentucky Colonel" but restricts it with vague conditions, creating confusion and overreach.

- **Improper Monopolization of Public Domain Terms:** In *Hensley Manufacturing, Inc. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009), the Sixth Circuit vacated an injunction that improperly monopolized a generic term. The court held that a party cannot use trademark law to control a public domain term, as doing so violates the principles of the Lanham Act. The title "Kentucky Colonel" is a historic public honor and cannot be monopolized by any private entity.

- **First Amendment Violations:** The Sixth Circuit has long recognized that judicial orders cannot suppress lawful public participation or educational speech. In *Woolslayer v. Driscoll*, 22 F.4th 129 (6th Cir. 2022), the court vacated an injunction that effectively silenced public speech. The broad restrictions imposed on the Appellant's ability to use "Kentucky Colonel" in educational, civic, or historical contexts violate this principle.

- **Procedural Fairness and Due Process:**  In *United States v. Smith*, 561 F.2d 8 (6th Cir. 1977), the Sixth Circuit underscored that injunctions must comply with due process, avoiding any appearance of judicial bias. Here, the Appellant's motions were ignored, his defenses were

disregarded, and the contempt proceeding effectively transformed a settlement agreement into a weapon of suppression.

- **Fraud Upon the Court:**  In *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993), the Sixth Circuit recognized the inherent authority of the courts to vacate orders obtained through fraud. HOKC's misrepresentation of the historical origins of the title "Kentucky Colonel" and their misuse of judicial processes to enforce this fraudulent narrative warrant careful Court review.

These precedents demonstrate the Sixth Circuit's commitment to ensuring that injunctions are clear, lawful, and balanced, protecting legitimate rights without suppressing free speech, misapplying trademark law, or endorsing fraudulent claims

## F. Understanding Bad-Faith Trademark Filings

A trademark application may be considered filed in bad faith if it's submitted without a genuine intent to use the mark in commerce, especially if done strategically to gain litigation advantages. Such actions can be challenged under several legal theories:

1. **Lack of Bona Fide Intent to Use**: Under 15 U.S.C. § 1051(b), applicants must have a bona fide intent to use the trademark in commerce. If evidence shows that the applicant lacked this intent at the time of filing, the application can be deemed void ab initio.

2. **Fraud on the USPTO**: If an applicant knowingly makes false statements during the application process, it may constitute fraud, leading to cancellation of the registration.

3. **Unclean Hands Doctrine**: Courts may deny relief to parties acting unethically or in bad faith, such as filing a trademark solely to disrupt a competitor or to manufacture a basis for litigation.

---

# XI. PRAYER FOR RELIEF

WHEREFORE, Appellant respectfully requests that this Honorable Court:

1. Recognize the constitutional and historical significance of this case.

2. Review the procedural history with a critical focus on due process violations.

3. Affirm that free speech cannot be suppressed through misused trademark law.

4. Grant any further relief deemed just and proper.

I, Col. David J. Wright, a Kentucky Colonel, under penalty of perjury under 28 U.S.C. § 1746 and the laws of the United States of America, declare that the foregoing notice and the statements made herein are true and correct to the best of my knowledge, information, and belief.

Respectfully submitted in good faith and in the interest of justice,

Col. David J. Wright
302 General Smith Drive
Richmond, Kentucky 40475

david.wright@globcal.net
Tel: (859) 379-8277

Dated: May 12, 2025
Puerto Carreño, Colombia

## Certificate of Service

I hereby certify that on May 12, 2025, I emailed for filing the foregoing **Notice of Pro-Se Appellant's Position, Expertise, and Basis For Continuing Appeal** to the Clerk of the Court for the United States Sixth Circuit Court of Appeals via the intake email address **CA06_Pro_Se_Efiling@ca6.uscourts.gov** for entry into the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system once the Circuit Court Clerk files the document(s) without any prejudice to the Appellee.

Kelly L. Stephens, Clerk
Sixth Circuit Court of Appeals
501 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202-3988