# IN THE UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

**RECEIVED**
06/12/2025
KELLY L. STEPHENS, Clerk

### Case Nos. 23-5795 & 23-6108

**HONORABLE ORDER OF KENTUCKY COLONELS, INC.,**
Plaintiff-Appellee,

v.

**COL. DAVID J. WRIGHT,**
Individually and on behalf of all other similarly titled individuals.
**Defendant-Appellant**

---

# MEMORANDUM OF LAW IN SUPPORT OF THE RIGHT TO USE "KENTUCKY COLONEL(S)" AS A DESCRIPTIVE TRADE NAME AND/OR ORGANIZATIONAL IDENTITY

---

## I. INTRODUCTION

This memorandum of law is submitted in defense of the right of **Col. David J. Wright**, a commissioned Kentucky Colonel, to use the name **"Kentucky Colonels International"** in noncommercial activities such as advocacy, commentary, education, informative speech, and online organizational development, and to provide a constitutional and statutory framework supporting the lawful and independent use of the titles "Kentucky Colonel" and "Kentucky Colonels" by any similarly commissioned individual or group of individuals from the Kentucky Colonel class or public class. It is also intended as a public legal resource for civic organizations and creating autonomous chapters—whether previously affiliated with the Honorable Order of Kentucky Colonels ("HOKC") or not—led by similarly titled individuals who seek to operate free from improper interference, the mythical history of 1813, or falsely asserted proprietary trademark claims.

The *title* "Kentucky Colonel" is not a proprietary trademark nor the exclusive brand of a private organization. It is a gubernatorial honorary commission granted to individuals by the Commonwealth of Kentucky—a title that resides in the public trust and has been used arbitrarily, descriptively, generically, and suggestively in commerce, culture, and identity formation for well over a century prior to the HOKC's 1957 incorporation or its unincorporated formation from 1933-1957. It is, and remains, a *public domain designation* available to all who have received such commissions, either individually, as part of another organization, or collectively.

Beginning in 2015, the HOKC—formerly known and operated under its full name, *Honorable Order of Kentucky Colonels*—began presenting itself publicly and commercially under the truncated designation "Kentucky Colonels" as keyword terminology. This rebranding effort coincided with expressed interests, reverse confusion, and unsuccessful merger negotiations with *Kentucky Colonels International*, and culminated in a coordinated trademark enforcement strategy launched in early 2020. That year, after merger negotiations failed, HOKC filed three new federal trademark applications asserting exclusive rights over the generic phrase "Kentucky Colonels" in connection with charitable services, association services, and social clubs—despite its longstanding public use and despite the presence of numerous concurrent users, including the Defendant-Appellant herein.

This memorandum advances the position that:

1. The title "Kentucky Colonel" and the plural phrase "Kentucky Colonels" are **non-distinctive, descriptive, and generic** when used in reference to the class of persons holding gubernatorial commissions;

2. The terms "Kentucky Colonel" and "Kentucky Colonels" came into existence defining an international exonymic archetype as early as 1833 in England and 1836 in Ireland, this makes the terms—public domain, referential to a cultural class, and descriptive for two centuries;

3. Individuals and groups of Kentucky Colonels—regardless of their location or number—retain the **lawful right to form, identify, and operate** under names such as "West Coast Kentucky

Colonels," "Kentucky Colonels of California," or "Kentucky Colonels International," without need of license, approval, or affiliation with the HOKC;

4. The HOKC has **fraudulently positioned itself** as a state-authorized intermediary, implying governmental sponsorship or exclusive status that does not exist in fact or law;

5. The HOKC's failure to protect any *fanciful* or *distinctive* marks—such as "Honorable Order of Kentucky Colonels," its red-white-and-blue shield, or its slogan "Good Works Fund"—and instead doubling down on weak, descriptive marks, suggests an intent to stifle competition and commandeer cultural heritage.

In the following sections, this memorandum will establish the legal and historical foundation for these rights, challenge the validity and scope of HOKC's trademark claims, and articulate the path forward for independent organizations of Kentucky Colonels—free from the false presumption of subordination to the HOKC.

## II. HISTORICAL AND LEGAL BACKGROUND

The title *Colonel* is a civil and cultural distinction originally bestowed by heads-of-state in the late 18th century to regional colonial leaders. Though early instances were grounded in the civil governance of the county, expedition companies, the militia, and land commission structure of frontier Kentucky, by the late 1800s and early 20th century, the title had evolved into a formal but honorable gubernatorial commission (document) conferred for acts of goodwill, distinguished service, or notable public contribution. It is currently governed by Executive Order under the sole constitutional authority of the Governor, and no statute has ever delegated custodianship or intermediary control over the title to any private entity.

The title "Colonel", more specifically "Kentucky Colonel" and its plural "Kentucky Colonels" have never belonged to any private organization. Prior to the Honorable Order of Kentucky Colonels' (HOKC) unincorporated formation in 1933 and its formal incorporation in 1957, the terms "Kentucky

Colonel" and "Kentucky Colonels" were already in widespread in public use; individually, literally, and institutionally. For example:

- In 1889, the editor of the Louisville Post wrote an article that was syndicated nationally from Washington D.C. to Los Angeles about "Kentucky Colonels" as a class of people explaining why they were so numerous. See **[Document: 50, Page: 24]** and **[Document 72, Page 25; Evening Star (Washington, D.C.), September 18, 1889, Page 6]**

- The **Kentucky Colonels Handbook**, published in 1930 and copyrighted by Col. Oliver Vickery, evidences an organized civic movement around the identity and obligations of Kentucky Colonels before the HOKC existed or was imagined. **[Document 66, Kentucky Colonels Handbook]**

- By 1912, civic societies calling themselves "Kentucky Colonels" were operating across North America—including Canadian destinations where Kentucky colonels were publicly welcomed as digitaries under that name. **[Document: 48. Page: 8]**

- Multiple commercial and entertainment uses of the name appeared in U.S. trademark records as early as 1906, including for whiskey, baseball teams, and musical ensembles. **[Document 49 - Appendix D, Things Referred to As Kentucky Colonel(s)]**.

The HOKC, while historically notable as one such organization of Kentucky colonels, has never held a statutory, fiduciary, designated, official, or exclusive legal relationship to the title. It was, and remains, an *independent private charitable corporation*, operating under the laws of the Commonwealth of Kentucky, subject to the same corporate limitations as any other domestic nonprofit association.

Despite this, beginning in 2014, emerging on Facebook for the first time the HOKC adopted a strategic rebranding campaign, abbreviating its name in both commercial speech and public filings to simply "Kentucky Colonels." This shift took place just as *Kentucky Colonels International*—a then-separate and lawful initiative formed by Defendant-Appellant Col. David J. Wright—received a cease and desist letter from Matt Williams regarding the use of the ® symbol. Approximately two

years later the HOKC expressed an interest in Wright's Kentucky Colonels Registry Program which was being discussed online. In November 2019, Wright launched the registry and in December requested the assistance of the HOKC, which in-turn requested a proposal to assume control over the program. Following the submission of a merger proposal to the HOKC Executive Director and Board of Directors on January 13. 2020 those negotiations broke down ending the following week on January 20, the HOKC filed **three new federal trademark applications** on **February 17, 2020**, asserting ownership of the phrase "Kentucky Colonels" in Classes 035 (Association Services), 036 (Charitable Fundraising), and 041 (Social Club Services).

These applications:

- Assert **first-use dates (e.g., 1931)** that predate the HOKC's own corporate formation in 1957;

- Omit the existence of *known* **concurrent users**, including the Defendant-Appellant and various long-standing civic associations, businesses, and other organizations;

- Fail to distinguish between the **descriptive designation of Kentucky Colonel** (a title of honor conferred by the Commonwealth), historical use, and any alleged **brand identity** created by the HOKC;

- Improperly position the HOKC as **custodian of a state title**, misleading the public and the USPTO into believing that HOKC has a special relationship with the Governor or a legal authority it has never held. **[Document 71 - Legal Analysis of HOKC Trademarks]**

Further, the timing of these filings—just days before initiating legal action against Kentucky Colonels International—indicates a pattern of *reactive enforcement* designed not to protect goodwill in a distinctive brand, but to prevent civic competition and suppress independent expressions of Kentucky Colonel identity.

The legal and historical background thus reveals that the HOKC's asserted trademark rights over "Kentucky Colonels" are **untethered from legal entitlement, contrary to public interest, and founded on misrepresentations of fact**.

# III. LEGAL RIGHT TO USE "KENTUCKY COLONELS INTERNATIONAL" AND RELATED ORGANIZATIONAL NAMES

The right to use the trade name *Kentucky Colonels International*, as well as the broader right to use "Kentucky Colonel" or "Kentucky Colonels" in business, organizational, or associative names, is firmly rooted in constitutional, statutory, and common law protections. No individual or private organization—HOKC included—may monopolize a civic designation of honor historically granted by the state or in the public domain, particularly where that designation has been used descriptively and generically for over a century across numerous industries, jurisdictions, and institutions.

## A. Descriptive and Generic Use Is Permissible Under the Lanham Act

The Lanham Act prohibits registration or enforcement of a mark that is either:

- **Generic**—referring to a class of persons or services (*see* 15 U.S.C. § 1064(3); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75 (7th Cir. 1977)), or

- **Merely descriptive without secondary meaning** (*see* 15 U.S.C. § 1052(e)(1); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir. 1983)).

The terms *Kentucky Colonel* and *Kentucky Colonels* are inherently descriptive, identifying individuals who have received a gubernatorial title. In some contexts, they are generic—referring to a class of honorary titleholders recognized publicly and by law.

Because these terms describe the subject matter of a person's civic status—not the origin of goods or services—they do not qualify for exclusive appropriation under the Lanham Act and are lawfully available for nominative, descriptive, or organizational use.

## B. Use of a Distinctive Modifier ("International") Renders the Trade Name Usage Unique and Non-Confusing

Even assuming arguendo that "Kentucky Colonels" were capable of secondary meaning, the use of a **noninfringing modifier** such as "International," "West Coast," "Eastern," "Mid-Atlantic," or any city or state name would remove any likelihood of confusion with "Honorable Order of Kentucky Colonels" and its "Kentucky Colonels" product line.

Courts have long held that additions to generic or descriptive terms—especially geographic or scope-based qualifiers—reduce or eliminate confusion. See:

- *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035 (D.C. Cir. 1989);
- *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 637 (7th Cir. 1999).

The name *Kentucky Colonels International* clearly communicates an independent scope, identity, and organizational structure. It does not purport to be the HOKC or suggest formal affiliation therewith. It merely expresses the shared heritage of persons who hold the *Kentucky Colonel* commission and are organized in an international forum.

## C. Individuals and Groups Have the Right to Associate and Self-Identify by Their Commissioned Title

The First Amendment to the United States Constitution protects the rights of speech, association, and expressive identity. Civic groups of three or more persons who have been duly commissioned as Kentucky Colonels may lawfully associate under any good-faith name that truthfully reflects their shared title and purpose. No statute or administrative regulation requires a Kentucky Colonel to affiliate with HOKC—or to refrain from using the phrase "Kentucky Colonels" in their organizational identity.

This position is also grounded in longstanding common law rights to truthfully use one's own credentials, professional titles, and civic designations in business and public life. A commissioned title, lawfully granted by the state, cannot be stripped or constrained by a private party through trademark enforcement.

## D. The HOKC's Exclusive Claims to "Kentucky Colonels" Are Not Supported by Trademark Law

HOKC's claim to exclusive rights over "Kentucky Colonels" is not supported by its own trademark filings or the law. In fact:

1. The phrase is **used generically** to describe hundreds of thousands of persons commissioned as Kentucky Colonels since the 19th century;

2. The HOKC itself **did not exist** at the time many earlier civic, charitable, and commercial "Kentucky Colonel" entities were formed (including, notably, sports franchises, insurance firms, and cultural organizations documented in *Appendix D* [Document 49] and [Documents 66, 73, and 74]);

3. HOKC has not pursued protection of **distinctive elements** (e.g., its own full name "Honorable Order," its insignia, its stylized flag-shield logo, or its proprietary programs like "Good Works Fund")—instead targeting the weakest possible phrase, "Kentucky Colonels," in an attempt to create market exclusivity over a common term;

4. The February 2020 filings are **infected by fraud and misrepresentation**, including:

   ○ Fabricated first-use dates (1931) and (1951),

   ○ Failure to disclose known concurrent users,

   ○ Failure to disclose historical origin,

   ○ Failure to distinguish source origin from descriptive status. [Document 71]

# IV. HOKC'S STRATEGIC MISREPRESENTATION AND UNLAWFUL INTERFERENCE WITH PUBLIC USE

The Honorable Order of Kentucky Colonels, Inc. ("HOKC") has engaged in a calculated campaign of public misrepresentation, institutional overreach, and unlawful interference with the lawful use of the phrases *Kentucky Colonel* and *Kentucky Colonels*. Through a pattern of trademark filings, litigation, and misleading public communications, HOKC has attempted to fabricate for itself a position of exclusive authority—one it does not possess by law or tradition.

## A. The HOKC Has No Statutory or Governmental Mandate to Regulate the Kentucky Colonel Title

No executive order, legislative act, or administrative regulation in the Commonwealth of Kentucky delegates authority to HOKC to speak for or regulate the rights of commissioned Kentucky Colonels. The title is conferred directly by the Governor under the sovereign prerogative of the Executive Branch. It carries no duty of affiliation with HOKC, nor is any Kentucky Colonel required—by statute or custom—to participate in HOKC activities or make contributions to it.

Nonetheless, HOKC has publicly styled itself as the "official," "headquarters," and "primary" organization of Kentucky Colonels, creating the **false impression of governmental endorsement** or custodianship. Such claims were explicitly advanced in its promotional materials during the 2015–2020 period, and culminated in trademark filings and litigation against independent users such as *Kentucky Colonels International*, designed to suppress competition under color of exclusivity.

This conduct violates both the public interest and the principle that civic honors, once bestowed, are owned by the recipient—not by a private nonprofit.

## B. HOKC's Rebranding Strategy Exploits Public Confusion and Cultural Misunderstanding

Historically known as the **Honorable Order of Kentucky Colonels**, the HOKC began rebranding itself simply as "Kentucky Colonels" in or around 2015. This transition, undertaken without legal disclaimer or public education, has been used as a pretext to consolidate commercial control over the cultural and civic reputation of the *Kentucky Colonel* title itself.

Instead of investing in trademarking **distinctive marks**—such as its full name, heraldic shield, "Good Works Fund" moniker, or any proprietary slogans—HOKC chose to pursue the base phrase *Kentucky Colonels*, a designation that appears on **hundreds of historical records**, civic clubs, commercial products, and media going back more than a century. It is telling that the organization has **not filed any separate federal trademark** for its red, white, and blue shield (despite prominent use), nor arbitrarily for "Honorable Order" or similar fanciful identifiers (e.g. 1813).

This demonstrates a conscious strategy: to target the **weakest and most general term** in order to monopolize cultural identity, rather than protect authentic brand equity or goodwill.

## C. The 2004 Building Champions Litigation Confirms the Descriptive Status of the Term

In *Honorable Order of Kentucky Colonels v. Building Champions, LLC*, 345 F. Supp. 2d 716 (W.D. Ky. 2004), the court declined to enjoin a third-party use of "Kentucky Colonels," recognizing that the term is broadly descriptive and not subject to exclusive control. The court acknowledged:

> "The term is associated with a public honor conferred by the Commonwealth of Kentucky and is widely used by individuals who have received such commissions."

That decision confirmed that HOKC has never held exclusive ownership of the designation *Kentucky Colonels*, and that other legitimate uses are permissible—particularly where they describe individuals who have lawfully received that title.

Despite this legal setback, HOKC returned to court in 2020 with a new litigation strategy, now asserting trademark rights via filings made just three days before its complaint was filed—a transparent litigation tactic lacking in bona fide commercial foundation.

## D. Trademark Applications Filed in 2020 Were Made in Bad Faith

On **February 17, 2020**, HOKC submitted three new federal trademark applications for the term *Kentucky Colonels*. These filings contained multiple material misrepresentations, including:

- **Fabricated first-use dates** dating to 1931 and 1951, despite no incorporation or documented use of the term in that capacity by HOKC prior to 1933 and 1957;

- **Failure to disclose known concurrent users**, including *Kentucky Colonels International*, Eastern Kentucky University (home of the Eastern Kentucky Colonels), and various unaffiliated civic organizations operating under similar names for decades;

- **Omission of the title's descriptive nature**, misleadingly implying that the term is arbitrary, distinctive, famous, fanciful, or incontestable;

- **Submission of specimens of use** that do not clearly demonstrate exclusive brand identification but instead show use of the term in generalized, honorary, or noncommercial charitable fundraising contexts [Document 71].

These applications were filed within days of initiating litigation against the Defendant-Appellant, evidencing **retaliatory purpose** and **pretextual enforcement** rather than legitimate protection of commercial goodwill or corporate reputation.

# V. RIGHT OF AUTONOMY FOR INDEPENDENT CHAPTERS AND COMMISSIONED COLONELS TO ORGANIZE FREE OF HOKC CONTROL

The Kentucky Colonel commission is a legal document bestowing the honorable title granted directly by the Governor of the Commonwealth of Kentucky to an individual. It is not a trademark license, organizational membership, or fiduciary appointment. As such, there exists **no legal, contractual, or statutory obligation** requiring any person or group of Kentucky Colonels to affiliate with, recognize, or submit to the authority of the Honorable Order of Kentucky Colonels, Inc. ("HOKC").

To the contrary, independent groups of commissioned Colonels retain **full legal authority to organize under their own name and charter**, provided that such use does not create commercial confusion or misrepresentation—a threshold that is easily satisfied where organizational titles include differentiating modifiers such as "International," "West Coast," "United," "Southern," or similar.

## A. Commissioned Colonels Hold Individual Identity Rights

A commission as a Kentucky Colonel is a recognition bestowed upon the individual, not an asset of any third-party organization. Once conferred, it becomes part of that person's legal and civic identity. That identity is protected by common law doctrines of personal name and title usage, and its expression—especially in the naming of associations or public service initiatives—is a **form of constitutionally protected speech and association** under the First Amendment.

The right to associate under one's lawful civic title is not forfeited by the existence of a private nonprofit that uses similar language. Just as "Chaplains United," "State Troopers of Texas," or "Presidents Emeritus" may form separate collectives without permission from the state, the governor, or any single organization, so too may **any group of three or more Kentucky Colonels** organize independently of the HOKC.

## B. No Legal Doctrine Requires Affiliation with a Particular Organization of Titleholders

Neither the Commonwealth of Kentucky nor any court has recognized the HOKC as a legally required intermediary or as the exclusive vehicle through which a Colonel must operate. There is **no statute**, **executive order**, or **administrative regulation** assigning HOKC any exclusive authority over the use or regulation of the title.

Independent chapters—including but not limited to:

- *Kentucky Colonels of California*,
- *West Coast Kentucky Colonels*,
- *United Kentucky Colonels of Arkansas*,
- *Kentucky Colonels International*,

—may lawfully operate under those names, promote charitable, civic, or fraternal causes, and maintain rosters of their own commissioned members without violating any trademark rights, so long as they do not falsely represent themselves as the *HOKC* or its agent.

Any suggestion that a chapter "must" be part of the HOKC or refrain from using the Kentucky Colonel title is both a **legal nullity** and an **affront to democratic civic participation**.

## C. Trademark Law Does Not Suppress Descriptive Civic Identity

The Lanham Act does not grant trademark holders the ability to suppress lawful, descriptive use of public domain terms. Nor does it allow one party to prohibit nominative use where such use is accurate and nonconfusing. As the Ninth Circuit has held:

> "The courts have repeatedly held that it is not the purpose of trademark law to prevent the use of words that truthfully describe a person's status or title."
>
> — *New Kids on the Block v. News America Pub.*, 971 F.2d 302, 308 (9th Cir. 1992).

To the extent that the HOKC asserts that any use of the word "Colonels" must be subordinate to or licensed by its own structure, such a claim would constitute **viewpoint discrimination** and a **restraint on speech**, as well as a distortion of the limited scope of trademark enforcement.

## D. Organizational Freedom Is a Protected Constitutional Right for Civic Groups and Nonprofits

The right of Kentucky Colonels to organize into civic associations is further protected under federal and state nonprofit law. So long as the group operates legally, does not falsely impersonate another, and complies with general corporate and charitable regulations, it is **entitled to full autonomy**.

There is no "order" or "chain of command" imposed by Kentucky law on civic titleholders. The idea that all Kentucky Colonels must operate under a singular organizational structure (HOKC) is not only false—it is a form of **cultural monopolization** unsupported by federal, state, and common law.

## VI. PUBLIC INTEREST AND THE REJECTION OF CULTURAL MONOPOLIZATION OF HONORARY TITLES

At the heart of this dispute lies a broader principle of democratic society: the public has a legitimate and enduring interest in protecting cultural and civic honors from monopolization by private entities. The title of *Kentucky Colonel*, conferred by the Governor as a form of honorary civic recognition, belongs to the **public sphere**, not to any single organization or corporation. Its appropriation by a single nonprofit for exclusive use threatens not only trademark integrity but also the core values of public honor, voluntary association, and shared cultural identity.

## A. Civic Titles Are Not Private Property

Honorary titles such as *Colonel*, *Mayor Emeritus*, *Judge*, *Ambassador-at-Large*, and similar civic designations are forms of *public recognition*, not intellectual property. While individuals may proudly use and display these honors, no person or group may lawfully assert exclusive ownership of the title itself. The same principle governs *Kentucky Colonel*, which has long been recognized as:

- A designation of **governor-conferred recognition**,

- A **non-commercial expression** of civic merit,

- A **shared cultural identity**, celebrated in literature, media, and public life for more than 150 years.

To allow a private corporation to convert such a designation into a proprietary mark would set a dangerous precedent—permitting other organizations to claim ownership of honorary designations and transform titles of public esteem into instruments of private commercial control.

## B. HOKC's Trademark Strategy Is Contrary to the Purpose of Trademark Law (Lanham Act)

Trademark law exists to prevent consumer confusion and to protect legitimate brands—not to enable the monopolization of cultural or honorary expressions. As articulated by the Supreme Court:

As the Supreme Court recognized in *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194–95 (1985), while incontestable marks may not be challenged as merely descriptive, claims of **genericness, fraud, or abandonment** remain valid grounds for cancellation. Thus, the Lanham Act does not shield marks lacking distinctiveness or protect efforts to monopolize generic or culturally shared terms.

The HOKC has not developed or promoted "Kentucky Colonels" as a distinctive commercial source identifier. Rather, it has attempted to **co-opt the name of the entire class of Kentucky Colonel titleholders**, thereby distorting the term's public meaning and silencing other legitimate uses.

To grant HOKC exclusive ownership of "Kentucky Colonels" would be to:

- Suppress accurate descriptions of who individuals are,

- Disenfranchise nonaffiliated Colonels from their rightful use of the title in civic identity,

- Prevent the free formation of civic groups under an honor conferred by the state.

This is antithetical to the policy and design of the Lanham Act, and contrary to First Amendment values.

## C. Public Confusion Has Been Manufactured, Not Prevented

It is HOKC's own conduct—particularly its rebranding as simply "Kentucky Colonels"—that has generated the very confusion it now claims to cure through enforcement. By removing its full corporate name and adopting the generic title of the class itself, HOKC has intentionally blurred the line between:

- Its private corporation, and
- The public designation of a gubernatorial honor.

Where confusion exists, it is due not to Defendant-Appellant's lawful use of a clearly differentiated trade name (*Kentucky Colonels International*), but to HOKC's ambiguous self-identification signed down "Kentucky Colonels" and its failure to develop distinctive branding around its actual programs, such as "Good Works Fund" or "Because a Colonel Gave" with its stylized US flag shield insignia.

## D. Protecting the Public Domain Serves the Constitutional, Cultural, Historical, and Public Interest

The United States legal system has long recognized the necessity of safeguarding the public domain—especially when it comes to government conferred titles and honors. This protection serves not only competitive fairness but the broader **democratic interest in preserving shared cultural expression**. See:

- *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) ("In construing the Lanham Act, we must be careful about the unintended consequences of overextension into the realm of public expression.")

Titles such as *Kentucky Colonel* are part of the cultural commons. They are **not inventions** of the HOKC. They are **not brands** created by the state for proprietary use. They are **acknowledgments of civic esteem**, meant to inspire service, unity, and pride—not exclusion, litigation, and brand policing.

To allow HOKC to enforce a monopoly over such a term would chill legitimate, good-faith civic expression and unlawfully suppress the rights of others to honor, identify, and organize under a title rightly bestowed upon them by the state.

# VII. ANALYSIS OF HOKC CHAPTER GUIDELINES AND THEIR LEGAL NON-BINDING EFFECT

In 2023, the Honorable Order of Kentucky Colonels, Inc. ("HOKC") circulated internal guidelines for "Official Chapters," outlining conditions for recognition, branding, financial contributions, and territorial exclusivity. **[Attached Exhibit A]** While styled as organizational policy, these "Chapter Guidelines" conflated with this lawsuit, reveal an effort by HOKC to assert **functional control over all civic or charitable activities conducted by groups of Kentucky Colonels**, regardless of formal affiliation. These provisions are legally flawed, non-binding, inconsistent with U.S. trademark law, and in some instances, blatantly unlawful.

## A. No Legal Authority to Govern Gubernatorial Commissions or Civic Associations

HOKC does not possess statutory authority to regulate the use of the title *Kentucky Colonel* or to control associations formed by those who hold the title. The Commonwealth of Kentucky has not delegated to HOKC any public function, nor has it created a statutory monopoly over Colonel-based civic organizing. Kentucky Colonel commissions are personal honors conferred by the Governor, not conditional memberships granted by HOKC.

## B. Attempted Monopoly Over Geography and Identity Is Unenforceable

The Guidelines assert that "only one Chapter can exist in each geographic area" and that HOKC may approve or revoke chapters "for any reason or for no reason at all." These provisions amount to **attempted territorial control** over a public designation and the right of free association—neither of which can be lawfully extinguished by a private nonprofit. Individuals may form independent groups (e.g., *Kentucky Colonels of California*) without violating any cognizable right of HOKC.

## C. Compelled Donations and Conditioning of Identity Are Ethically and Legally Suspect

The requirement that every chapter member make an annual donation to the "Good Works Program," as a precondition of recognition, may constitute **coercive tying**—conditioning participation or affiliation on monetary contribution. It also discriminates against unaffiliated Colonels, falsely implying that civic legitimacy flows through donation rather than commission.

## D. Overbroad Trademark Claims Are Unsupported and Misused

The Guidelines require all chapters to "abide by all Kentucky Colonels' trademark policies." This is problematic for several reasons:

1. HOKC's trademarks were **filed in 2020**, more than 180 years after the term *Kentucky Colonel* entered widespread public use.

2. The filings contain **false first-use dates** and fail to disclose known concurrent users—grounds for cancellation under *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009).

3. The term *Kentucky Colonels* is **descriptive and generic**, and its enforcement here constitutes **trademark misuse** to suppress legitimate identity expression.

## E. Organizational Loyalty Clauses Violate Associational Freedom

The Guidelines bar chapters from "speaking on behalf of the Kentucky Colonels" and require them to "hold themselves out as independent except that they are chartered." This construct seeks to blur the line between state conferred titles and corporate membership, and attempts to create **gag rules** for groups who operate under their own independent identity. Such constraints are unenforceable where no agency relationship exists and where expressive use is protected by the First Amendment.

## VIII. CONCLUSION AND AFFIRMATION OF RIGHTS

The title *Kentucky Colonel* is a civic honor conferred directly by the Governor of the Commonwealth of Kentucky. It is not, and has never been, the intellectual property of any private organization, including—but not limited to—the Honorable Order of Kentucky Colonels, Inc. (HOKC, est. 1957), the Kentucky Colonels Association (KCA, est. circa 1930), or the Kentucky Colonels Club (KCC, est. circa 1905). The plural phrase *Kentucky Colonels*, when used descriptively or associatively to identify individuals holding that public title, or the voluntary assemblies, clubs, or initiatives they form, resides squarely in the **public domain**.

This title cannot be alienated, privatized, or restricted by the trademark apparatus of any nonprofit entity—particularly where such claims arise from recent filings based on inaccurate first-use dates, omission of known concurrent users, and mischaracterizations of source origin.

The HOKC's internal **Chapter Guidelines**, issued under its private charter, confirm through their own terms that the organization seeks to impose extralegal restrictions on speech, geography, affiliation, and identity—without any statutory authority to do so. Their terms amount to an attempted *private governance structure over a state honor*, a construction unsupported by Kentucky law, federal law, or principles of organizational autonomy.

Accordingly, this memorandum stands as both a legal defense and a civic declaration:

- That **Kentucky Colonels**, individually and collectively, possess the full and unqualified legal right to describe themselves by their commissioned title and to form civic groups bearing that name;

- That **Kentucky Colonels International** is lawfully constituted, clearly distinguished in its name, scope, and mission, and operates independently without need of HOKC recognition;

- That **no group of Kentucky Colonels is required to affiliate** with the HOKC, pay tribute, conform to territorial boundaries, or observe any internal policy issued by the HOKC;

- That **HOKC's efforts to monopolize the phrase "Kentucky Colonels"** through trademark law or franchise-style chapter agreements are contrary to the Lanham Act, public interest, and the First Amendment.

Let this memorandum serve not only the Appellant, Col. David J. Wright, but all commissioned Colonels of the Commonwealth who wish to exercise their public title with independence, dignity, and civic purpose.

This memorandum further affirms the following:

- That *Col. David J. Wright*, as a duly commissioned Kentucky Colonel, possesses both a legal and constitutional right to operate under the trade name *Kentucky Colonels International*;

- That HOKC's three trademark applications (filed February 17, 2020) rely on **descriptive and generic terminology**, and were **procured by material misrepresentation** and omission, rendering them vulnerable to cancellation;

- That the right to form civic organizations and to **truthfully describe one's own honorary status** is a core component of freedom of association and expressive identity protected by law;

- That the preservation of the phrase *Kentucky Colonel* within the public domain is essential not only to the historical integrity of the title, but to the cultural and legal continuity of all those who have received it.

Accordingly, this memorandum shall stand as a **formal public interest affirmation** and a **constitutional defense**:

1. That no commissioned Colonel is bound by or beholden to the HOKC;

2. That any lawful club, chapter, order, or fellowship of Kentucky Colonels may organize freely under a name of their choosing;

3. And that the civic legacy of the *Kentucky Colonel* belongs to the Commonwealth, not to a private corporation—regardless of longevity, branding, or charitable activity.

**The honor belongs to the people. The title belongs to the public. The rights belong to the Colonels.**

Respectfully submitted,

/s/ Col. David J. Wright

302 General Smith Drive
Richmond, Kentucky 40475

david.wright@globcal.net                    Dated: June 12, 2025
Tel: +1 (859) 379-8277                        Puerto Carreño, Colombia

# CERTIFICATE OF SERVICE

I hereby certify that on **June 12, 2025**, I **submitted** the foregoing **"Memorandum of Law of the Right to Use Kentucky Colonel(s) as Part of a Trade Name"** for filing via **email** to the Clerk of the Court, in accordance with the Court's procedures for pro se litigants. Upon docketing, the Court's **CM/ECF system** will automatically serve all registered ECF users, including counsel for Appellee.

Deborah S. Hunt, Clerk                                       /s/ Col. David J. Wright
Sixth Circuit Court of Appeals                    David J. Wright, Pro-se Appellant
501 Potter Stewart U.S. Courthouse                          DATED: June 12, 2025
100 East Fifth Street
Cincinnati, Ohio 45202-3988

# Exhibit A – Legal Analysis of the HOKC Chapter Guidelines and Their Lack of Binding Authority over Kentucky Colonel Titleholders

## Purpose of Submission:

This Exhibit is submitted in support of Appellant's Memorandum of Law on the public domain status of the title *Kentucky Colonel* and the lawful right of individuals and organizations to use that designation independently of the Honorable Order of Kentucky Colonels, Inc. ("HOKC").

Enclosed herein is a copy of the "Chapter Guidelines" document circulated by HOKC to its affiliated members, accompanied by legal analysis demonstrating that the document:

1. Contains provisions that exceed the lawful powers of a private nonprofit corporation;

2. Misrepresents the legal relationship between HOKC and commissioned titleholders of the Commonwealth;

3. Asserts control over a civic designation that resides in the public domain;

4. Invokes trademark claims that are legally defective, based on fraud, and asserted in conflict with the Lanham Act and First Amendment rights.

## Legal Grounds for Objection and Nonenforceability:

1. **Lack of Statutory Authority**
   No Kentucky statute, executive order, or constitutional provision grants the HOKC authority to regulate, assign, or oversee the use of the honorary commission of *Kentucky Colonel*. See *In re Veterans of the Vietnam War, Inc.*, 288 F.3d 392, 400 (9th Cir. 2002) (nonprofits lack governmental powers unless specifically delegated by statute).

2. **Descriptive/Governmental Titles Not Subject to Exclusive Use**
   The terms "Kentucky Colonel" and "Kentucky Colonels" are descriptive of a class of persons commissioned by the Governor and thus not subject to exclusive commercial appropriation. *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir. 1983) (descriptive

terms require secondary meaning); *Honorable Order of Kentucky Colonels v. Building Champions, LLC*, 345 F. Supp. 2d 716, 722 (W.D. Ky. 2004) (term widely used to refer to civic titleholders).

3. **Fraudulent Trademark Basis**

The HOKC's February 17, 2020 trademark applications were based on fabricated first-use dates, failed to disclose known users, and were filed in anticipation of litigation. Such conduct meets the threshold for cancellation under *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) and voids claims of exclusivity under 15 U.S.C. §§ 1064(3), 1119, and 1120.

4. **Overreach and Void Conditions in Chapter Guidelines**

Clauses requiring exclusive territorial rights, compelled financial contributions, suppression of member speech, and absolute revocation powers constitute forms of **organizational overreach**, likely unenforceable under public policy and freedom of association principles. See *Roberts v. United States Jaycees*, 468 U.S. 609, 622–23 (1984) (freedom of expressive association is protected); *New Kids on the Block v. News America Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) (accurate descriptive use is lawful).

5. **Trademark Misuse and First Amendment Violation**

Efforts to monopolize a civic title through internal "branding standards" and mandatory compliance violate both trademark misuse doctrines and First Amendment safeguards. See *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (Lanham Act not intended to suppress origin of ideas or public designations).

## Conclusion:

The attached Chapter Guidelines are nonbinding, unenforceable against non-signatories, and improper as a basis for denying Kentucky Colonels the right to self-organize, describe themselves by their title, or form independent associations. The public honor of *Kentucky Colonel* cannot be subordinated to the administrative preferences of a private charitable corporation, and any effort to do so is legally void.

This exhibit is respectfully submitted as a matter of public interest, record clarification, and constitutional advocacy for the lawful use of a state-bestowed title by all recipients thereof.



Hello Kentucky Colonel!

Kentucky Colonels are honored for their service to their community, state, or country and their noteworthy accomplishments. They come from all 50 states and 55 countries and are committed to helping lift Kentuckians through the Good Works Program. Colonels are also social and enjoy coming together to celebrate their commission, the Commonwealth, and the history that binds the Kentucky Colonels to the Commonwealth.

The Honorable Order is proud to re-introduce the long-standing heritage of clubs of the Honorable Order. Clubs or Affiliates have been around since the 1960s and they have provided opportunities for individuals to come together in their local communities and continue the good works of the Honorable Order as a recognized official Kentucky Colonels Chapters.

Through Chapters, the Honorable Order hopes to provide Colonels with the ability to create and foster meaningful relationships with local Colonels who enjoy giving back to their community and the Good Works Program. In addition, chapters will provide an avenue to network, enhance the HOKC mission both for Kentuckians and locally, and strengthen the pride, bond, and meaning of the commission. Each affiliated chapter will be supported by the Headquarters team and will have the ability to share resources.

Enclosed are charter guidelines for those who would like to take the lead of bringing Colonels together. If your fellow Colonels would like to organize an official chapter of the Honorable Order of Kentucky Colonels, please reach out to the Heather Campbell, Director of Colonel Relations. She can share with you the Chapter Agreement which will recognize your group as a "Official Chapter of the Honorable Order of Kentucky Colonels."

Best Regards,

Colonel Sherry Crose
Executive Director

Enclosed



**Honorable Order of Kentucky Colonels Charter Guidelines for Chapters**

**Chapter Purpose**

Each officially chartered Chapter (a "Chapter") of the Honorable Order of Kentucky Colonels, Inc. (the "Kentucky Colonels") shall serve as an ambassador of the Kentucky Colonels and seek to emulate on the local level the Kentucky Colonels' basic principles of good works, fellowship, and tradition.

**HOKC Requirements of a Chapter**

**General Requirements**

- A Chapter shall be a politically nonpartisan organization.
- A Chapter shall be a volunteer organization.
- A Chapter shall be a good steward of its resources and carry out its work with integrity and compassion.

**Membership and Location Requirements**

- A Chapter must have at least five (5) members.
- Only one (1) Chapter can exist in each geographic area as determined by the Kentucky Colonels.

**Meeting Requirements**

- A Chapter must hold at least three (3) meetings or events a year, virtually or in-person.

**Financial Requirements**

- A Chapter may collect its own dues to cover meeting costs and other reasonable operating expenses.
- Each member of the Chapter shall make an annual donation to HOKC's Good Works Program. There is no minimum contribution.
- A Chapter is encouraged to provide or inspire financial support of HOKC's Good Works Program. For example, recruiting Kentucky Colonels members who donate annually to the Good Works Program, attempting to increase contributions by Chapter members to the Kentucky Colonels, and conducting fundraisers that support the Good Works Program.

**Public Service Requirements**

- As is the focus of the Kentucky Colonels, a Chapter should engage in and promote public service. For example, establishing a Kentucky Colonels Day of Service in the Chapter's community, preferably on the first Saturday in October of each year. The Chapter shall use its best efforts to ensure that all such public service programs and activities are of the highest quality with respect to content, materials, logistical preparation and otherwise.
- If a Chapter chooses to support a local nonprofit, either through volunteer or monetary efforts, the Chapter should follow these guidelines:
  - The local nonprofit should qualify as Section 501(c)(3) organization under the Internal Revenue Code and preferably a non-private foundation.
  - The nonprofit should be vetted by members of the Chapter to insure it merits such support.
  - The nonprofit or the activity funded should fall within these Good Works categories:
    - Community Services
    - Disabled Support and Services
    - Historic Preservation
    - Support for the Poor and Needy
    - Health, Rehabilitation and Mental Illness
    - Veterans Services and Military
    - Youth Services

**Non-Discrimination**

- The Chapter shall not discriminate against any potential member, nonprofit organization, vendor, or other individual or entity on the basis of sex, race, age, religion, national origin, ancestry, creed, pregnancy, martial or parental status, sexual or gender orientation, disability, or socio-economic status. The Chapter shall comply with all state and federal statutory and constitutional non-discrimination provisions.

**Communications Requirements**

- A Chapter shall share Chapter and individual member achievements with the Kentucky Colonels so that the Kentucky Colonels can highlight those achievements to Kentucky Colonels around the world.
- A Chapter shall provide a report, at least annually but also upon request, to the Kentucky Colonels that includes the names of the Chapter members, financial information, and a description of Chapter activities.
- A Chapter shall provide a list and summary of upcoming activities to the Kentucky Colonels for publication.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**The Kentucky Colonels Commitment to Chartered Chapters**
   **Participation with Chapter**

- A Kentucky Colonels representative will participate in at least one Chapter event, virtual or in person, if possible, annually.
- The Kentucky Colonels will work with the Chapter to strengthen the bond between the Kentucky Colonels and the Chapter members through multiple communication channels.

**Public Service Assistance**

- Upon the Chapter's request, HOKC shall provide the Chapter guidelines for establishing a local Kentucky Colonels Day of Service, assist in locating and vetting nonprofits that qualify for the Chapter's volunteer or monetary assistance, and discuss such additional opportunities to enhance collaboration and provide mutual benefit.

**Communications Assistance**

- HOKC shall include an annual update on the Chapter through one of HOKC's printed publications, e-newsletters, or website. Additionally, HOKC may from time to time, in its sole discretion, feature the Chapter's good works in the Colonel Achievement section of such publications.
- The Kentucky Colonels will provide a link to each Chapter's website or Facebook page, as applicable on the www.KyColonels.org website.

**Membership Development Assistance**

- The Kentucky Colonels will send up to two message distributions annually to Colonels in each Chapter's region through the Colonels' email distribution system.

**Organizational Assistance**

- The Kentucky Colonels will provide a template for a Chapter's bylaws if requested.
- The Kentucky Colonels will advise regarding branding standards for a Chapter.
- The Kentucky Colonels could provide a way to create official Chapter retail products.

***********************

**Additional Rules and Requirements**:

- The Kentucky Colonels is not obligated to accept any group as a Chapter and may also revoke a Chapter's charter for any reason or for no reason at all. These rights are intended to help preserve the quality of each Chapter and to ensure compliance with the basic principles of the Kentucky Colonels.
- A Chapter may not speak on behalf of the Kentucky Colonels except with the Kentucky Colonels' express written consent.

- A Chapter must abide by all Kentucky Colonels' trademark policies.
- No Chapter shall have the power to bind the Kentucky Colonels to any contract, commitment, or liability, nor shall the Chapter represent to any person or organization that it does.
- A Chapter shall hold itself out as independent of the Kentucky Colonels except for the fact that it is chartered by the Kentucky Colonels and follows certain guidelines to be chartered.
- Each Chapter must sign a Chapter Agreement with the Kentucky Colonels detailing all rules and requirements for a Chapter.

If interested in becoming *An Official Chapter of the Honorable Order of Kentucky Colonels* please contact Heather Campbell, Director of Colonel Relations, to discuss the Chapter Agreement and to connect with local Colonels at 502-266-6848 or at hcampbell@kycolonels.org.