# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**Case Nos. 23-5795 & 23-6108**

**HONORABLE ORDER OF KENTUCKY COLONELS, INC.,**
Plaintiff-Appellee,

v.

**COL. DAVID J. WRIGHT,**
Individually and on behalf of all other similarly titled individuals.
**Defendant-Appellant**

**RECEIVED**
06/30/2025
KELLY L. STEPHENS, Clerk

---

# RESPONSE IN OPPOSITION TO APPELLEE'S OMNIBUS MOTION TO STRIKE APPELLANT'S MOTIONS, EVIDENCE EXHIBITS, AND LEGAL MEMORANDA

### With Judicial Commentary on Procedural Suppression, Evidentiary Exclusion, Concealment, Entrenchment, and Institutional Integrity

---

**NOW COMES** Appellant **Col. David J. Wright**, appearing *pro se* and *in forma pauperis*, pursuant to **Federal Rule of Appellate Procedure 27**, **Federal Rule of Evidence 201**, and the **First and Fourteenth Amendments to the United States Constitution**, to respectfully respond to Appellee's **Omnibus Motion to Strike** [Document 83].

This Response is not only a rebuttal to the improper procedural and factual assumptions made by the Appellee in [Document 83], but also serves as a **judicial commentary** on the disturbing pattern of **evidentiary suppression, historical obfuscation, and procedural record control tactics** already attempted by Appellee in [Document 40], [Document 43], and [Document 53], and now compounded through this latest motion.

This Court is specifically advised that Appellant has:

- Corrected the consolidated combined filings [Document 54] and [Document 55] which were replaced with [Document 78] and [Document 79] (are all the same document);

- Submitted supporting legal argument, notice with the District Court [3:20-cv-132, DE 184]. and doctrine regarding void ab initio orders in memoranda [Document 80];

- Demonstrated preponderance of the evidence standards through factual declarations, authenticated records, and public exhibits [Documents 44–52], [56–82];

- And raised a timely challenge to judicial suppression of adjudicative fact before the U.S. District Court through [Document 36], *Notice of Judicial Suppression*.

Because **fraud on the court may be raised at any time**, where credible evidence is presented and institutional deception is alleged, Appellee's attempt to bypass this obligation by invoking volume and procedure over substance is improper and constitutionally infirm. See *United States v. Beggerly*, 524 U.S. 38, 47 (1998) ("[F]raud on the court…can be raised at any time and is not subject to procedural bar."). Fraud warrants immediate and thorough review with heightened scrutiny by the jurisdictional judiciary overseeing the case.

This Response respectfully urges the Court to deny [Document 83] in its entirety, consider the judicial and historical stakes of evidentiary erasure, and preserve Appellant's constitutional right to be heard based on the irrefutable facts presented for judicial notice.

## I. Introduction and Preservation of Rights

Appellant **Col. David J. Wright**, appearing *pro se* and *in forma pauperis*, respectfully submits that **Appellee's Omnibus Motion to Strike** [Document 83] is not a neutral procedural objection, but a tactical maneuver designed to suppress adjudicative facts, avoid judicial scrutiny of void orders, and conceal historical misrepresentations that form the basis of Appellee's litigation posture. It follows the same suppression strategy initially advanced in **[Document 53]**, and reflects a persistent effort to

obstruct **judicial notice under FRE 201**, correction of the record under **FRAP 10(e)(2)(B)**, and public accountability for **fraud on the court by a corporate entity**.

Appellant's filings—including [Documents 44–52], [Documents 56–82], and corrected Motion Amendment to Judicial Notice and Response to Appellee's Motion to Limit Filings [Documents 78 and 79]—seek to:

- Introduce properly authenticated and self-verifying adjudicative facts,
- Correct omissions and inaccuracies in the appellate record,
- Establish the public domain status of the "Kentucky Colonel" identity,
- Demonstrate the source of judicial inequity and bias indicative of fault,
- Reframe the mistaken presumptions made based on unfounded litigation,
- Invalidate trademarks issued based on incomplete and bad-faith applications,
- Expose procedural fraud, concealment of facts, and legal misrepresentation surrounding Appellee's asserted trademark rights.

Appellee's failure to confront these facts on the merits, and instead to seek their wholesale exclusion, raises **serious due process concerns** and threatens the legitimacy of the appellate record itself. As this Court is aware, "[f]raud upon the court…strikes at the very integrity of the judicial process" and may be raised "at any time." *United States v. Beggerly*, 524 U.S. 38, 47 (1998); see also *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352–53 (6th Cir. 1993) (reversing for fraud on the court where key factual misrepresentations corrupted judicial findings).

Furthermore, Appellant has complied with Sixth Circuit rules by consolidating and combining his filings (Motion Amendment to Judicial Notice [Document 78]; Response to Appellee's Motion to Limit Filings [Document 79]), narrowing his evidentiary submissions to those directly relevant to the appeal and correcting any prior formatting irregularities. To now strike those same corrected filings

would **punish Appellant for following the Court's procedural norms**—a result that would violate both equal protection and fundamental fairness under the **Fourteenth Amendment**.

To deny Appellant the ability to present adjudicative facts, correct the record, and challenge jurisdictional defects in the trial court's orders would result in **reversible error**, as it would deprive this Court of the tools necessary for fair review. See *United States v. Ferguson*, 681 F.3d 826, 831–32 (6th Cir. 2012) (holding judicial notice mandatory where FRE 201(b) is satisfied and noting reversal for evidentiary suppression).

Accordingly, Appellant preserves and asserts all rights under:

- **Fed. R. Evid. 201**, **401–403**;
- **Fed. R. App. P. 10(e)(2)(B)**;
- **28 U.S.C. § 1654** (right of self-representation);
- And the **First and Fourteenth Amendments to the U.S. Constitution**.

The only thing that has been truly "omnibus" in this litigation is Appellee's original complaint on February 20, 2020 [DE 1] and Motion for Preliminary Injunction [DE 7], which embodies a reckless disregard for the factual record in a case manufactured on a sophisticated fraudulent premise and for the constitutional rights it seeks to suppress. What began as a broad and unfounded assertion of exclusivity has now become a pattern of procedural evasion and historical erasure of authenticated factual chronologies.

## II. Factual Background and Procedural Context

This appeal arises from the enforcement of a trademark injunction obtained by **Appellee Honorable Order of Kentucky Colonels, Inc.** ("HOKC") in the Western District of Kentucky under **Case No. 3:20-cv-00132**, where Appellant **Col. David J. Wright** was enjoined from using a civic identity—"Kentucky Colonel(s)"—that Appellant contends is historically public, non-exclusive, and

subject to constitutional and statutory protections. The injunction was based on *alleged trademark rights* that Appellant has since demonstrated were obtained through **material misrepresentations and fraudulent suppression of adjudicative fact**, now on review in **Case Nos. 23-5795/6108**.

Following the close of briefing [Document 34], [Document 35], and Appellant's reply [Document 38], Appellant filed a motion requesting **judicial notice of adjudicative facts and correction of the record** pursuant to **Fed. R. Evid. 201(b)** and **Fed. R. App. P. 10(e)(2)(B)** [Document 44], supported by:

- **Declaration of Historical Fact** [Document 45],
- **Public and historical exhibits** [Documents 46–50], [56–75],
- **Legal memoranda establishing admissibility and relevance** [Document 52]; later expanded in [Documents 80–82].

In response, Appellee filed a **Motion for Pre-Approval of Filings** [Document 53], which made sweeping, unsupported accusations that Appellant's filings were abusive, irrelevant, or excessive—without addressing their substance reasonably or on any factual evidentiary basis.

Appellant responded by filing [Document 54] and [Document 55], which were then **corrected due to an outline formatting error, and refiled** as:

- **[Document 78] – Motion Amendment of Exhibits Expanding Judicial Notice**, and
- **[Document 79] – Response to Appellee's Motion for Pre-Approval of Filings**.

Appellant further submitted a **Notice of Judicial Suppression** [Document 36] to preserve the issue of institutional resistance to fact correction when he affirmed fraud and malfeasance with substantial evidence before the **U.S. District Court** that began in February 2025 with the filing of:

1. Notice of Intent to Seek Rule 11 Sanctions Against Plaintiff's Counsel [DE-169]
2. Motion for Recusal of Judge Jennings Under 28 U.S.C. §§ 455(a) and 144 [DE-170]

3. Motion for Judicial Notice Under FRE 201(b) [DE-171] (20 Essential Exhibits)
4. Motion for Rule 11 Sanctions Against Plaintiff's Counsel Wyatt Tarrant & Combs [DE-176]

Instead of contesting the validity or admissibility of the facts under FRE 201(b), Appellee escalated its procedural effort simply claiming irrelevance by filing **[Document 83] – Omnibus Motion to Strike**, requesting the Court strike over thirty docket entries in bulk, including:

- Judicial notice motion, a sworn legal declaration, and motion amendment,
- Exhibits sourced from public archives, libraries, and government institutions,
- Legal memoranda addressing void orders [Document 80], class status [Document 82], and the right of Appellant and Kentucky Colonel class to use civic honorifics [Document 81].

Appellee offers no controlling authority authorizing such mass suppression of *pro se* filings submitted in compliance with rules and in response to ongoing legal issues on appeal.

This Court is now asked to decide whether Appellant—who has in good faith submitted facts satisfying Rule 201(b), responded to Appellee's motions in a timely and consolidated manner, and preserved constitutional issues—may be silenced on procedural grounds, even where evidence of fraud, misrepresentation, and jurisdictional voidness have been credibly and specifically alleged.

## III. Response to Document 83

Appellee's **Omnibus Motion to Strike** [Document 83] seeks a sweeping and indiscriminate removal of over thirty filings and exhibits—including motions, legal memoranda, factual declarations, and public record appendices—without analyzing their legal basis, evidentiary admissibility, or procedural relevance. The motion is **legally unfounded, constitutionally impermissible, and institutionally dangerous**.

Appellee moves to strike the following docket entries, which collectively contain the evidentiary foundation for Appellant's position that the term "Kentucky Colonel(s)" is generic, honorific, and

belongs to the public domain. The exhibits demonstrate that the HOKC trademarks were created, manifested, and used to create an unconstitutional overreach against its members (customers):

- **Document 44** Motion to Take Judicial Notice of Adjudicative Facts and Correct the Record Pursuant to FRE 201(d) and FRAP 10(e)(2)(B)

- **Document 45** Declaration of Historical Fact

- **Document 46** Appendix A – Sources and Origins

- **Document 47** Appendix B – Descriptive Quotation and Passages

- **Document 48** Appendix C – Images of Kentucky Colonel

- **Document 49** Appendix D – Things Referred to as Kentucky Colonels

- **Document 50** Appendix E – Exhibits Exposition

- **Document 51** Notice Regarding Primary and Supplemental Exhibit Filing and Evidentiary Materials for Judicial Notice

- **Document 52** Memorandum of Law in Support of Appellant's Motion for Judicial Notice and Correction of the Record

- **Document 54** Motion Amendment of Exhibits Expanding Judicial Notice and Response to Appellee's Motion to Limit Filings (Document 53)

- **Document 56** Exhibit – Colonel Nimrod Wildfire 1833

- **Document 57** Exhibit – Public Notice to Subject Members (2001)

- **Document 58** Exhibit – Fraudulent Succession of 1931 First Use

- **Document 59** Exhibit – Historical Markers at Boonesborough

- **Document 60** Exhibit – Honorable Order of the Blue Goose Photo

- **Document 61** Exhibit – Kentucky Colonel – New Vintage 1969

- **Document 62** Exhibit – Governor W. O. Bradley 1897 Photo

- **Document 63** Exhibit – Adlai E. Stevenson, Something of Men I Have Known

- **Document 64** Exhibit – Internet, Libraries, and Newspapers

- **Document 65** Exhibit – Ambiguous Influence of the Honorable Order of Kentucky Colonels

- **Document 66** Exhibit – Kentucky Colonels Handbook

- **Document 67** Exhibit – U.S. Congress 1936 Recognition

- **Document 68** Exhibit – Notable and Prominent Kentucky Colonels

- **Document 69** Exhibit – Kentucky Progress Commission (Government Office)

- **Document 70** Exhibit – HOKC Disambiguation

- **Document 71** Exhibit – Legal Analysis of HOKC Trademarks

- **Document 72** Exhibit – Kentucky Colonels Newspaper Clippings

- **Document 73** Exhibit – The Kentucky Colonel, A Study of Semantics

- **Document 74** Exhibit – Myth of the Kentucky Colonel 1813 Origin

- **Document 75** Exhibit – Kentucky Epitaphs, Landmarks, and Markers

- **Document 76** Exhibit – Supplemental Judicial Commentary 1 (Compares Exhibits)

- **Document 77** Exhibit – Supplemental Judicial Commentary 2 (Discussion of Sources)

- **Document 78** Motion Amendment of Exhibits Expanding Judicial Notice

- **Document 79** Response to Appellee's Motion to Limit Filing (Same as Document 78)

- **Document 80** Memorandum of Law Identifying Void Orders Resulting from Fraud on the Court and Trademark Fraud

- **Document 81** Memorandum of Law in Support of the Right to Use "Kentucky Colonel(s)" as a Descriptive Trade Name and/or Organizational Identity

- **Document 82** Memorandum of Law Supporting Judicial Notice of a Historical, Legal, Social, and Cultural Class Recognition of Persons Known as "Kentucky Colonels"

Together, these filings constitute a comprehensive record of evidence that Appellant respectfully submits must remain before this Court to ensure accuracy, transparency, and judicial fairness. These exhibits comprehensively explain why the Plaintiff-Appellee never had standing.

## A. Appellant's Filings Are Lawful Under FRE 201 and FRAP 10(e)

Appellant's filings—particularly [Documents 44–52], [64–75], and legal memoranda [Documents 80–82]—are submitted **pursuant to Fed. R. Evid. 201(b)** and **Fed. R. App. P. 10(e)(2)(B)**. The materials include:

- Authenticated public records;
- Government publications and archives;
- Historical and adjudicative facts relevant to the Appellee's claims of first use and exclusive ownership of the term "Kentucky Colonel."

The Sixth Circuit has held that judicial notice is **mandatory** when facts meet the Rule 201(b) criteria. See *United States v. Ferguson*, 681 F.3d 826, 832 (6th Cir. 2012) ("If a party requests judicial notice and supplies the necessary information, the court must take notice."). Appellee has failed to contest the authenticity or relevance of these materials, and instead seeks to strike them on grounds wholly unrelated to their evidentiary status resulting in overarching rights to maintain a monopoly.

## B. Appellant's Submissions Were Timely Corrected and Consolidated

To avoid burdening the Court or duplicating the record, Appellant voluntarily **consolidated and corrected prior filings** into [Document 78] and [Document 79], superseding earlier filings [Documents 54] and [Document 55] due to a formatting error. These amendments comply with FRAP 27 and the Court's expectations of clarity and judicial economy.

Appellee's motion misleadingly continues to reference the superseded filings and ignores their corrected counterparts—thus requesting the striking of documents that are no longer operative and **misstating the current procedural record**.

## C. The Motion to Strike Is a Veiled Attempt to Avoid Substantive Review

Nowhere in [Document 83] does Appellee confront:

- The evidence submitted by Appellant rebutting Appellee's claimed 1931 first-use date demonstrating fraud on the court and trademark fraud;

- The historical and semantic analysis establishing the non-trademarkable nature of civic identity terms;

- Or the specific allegations of **fraud on the court and government** supported by public record and declared under penalty of perjury [Document 45]; [Document 80].

Instead, Appellee repeats its accusation from [Document 53] that Appellant's filings are excessive or improper, while omitting that many of these were entered **in direct response** to Appellee's own motions, responses, trademark applications, court orders, or factual misstatements.

Courts must not allow procedure to become a **substitute for evidence**, especially where a litigant has demonstrated—by a **preponderance of the evidence**—that material misrepresentations and judicial omissions occurred.

- Undisputable widespread public usage predating the HOKC and its trademarks suggest that by alienating and failing to disclose factual history about prior users it manipulated the USPTO to issue trademarks on the principle register based on assumptions in error;

- Conflicting first-use claims by users historically suggest the descriptive and generic term has always been part of the public domain;

## D. Granting Document 83 Would Constitute Reversible Error

Appellee's request to strike judicial notice materials, void order arguments, and class-based constitutional claims would result in a **fatally incomplete appellate record**. The exclusion of relevant adjudicative facts from the Court's consideration violates Appellant's rights under the **First and Fourteenth Amendments** and creates a textbook case of **reversible error** for failure to consider properly admitted evidence. See *Ferguson*, 681 F.3d at 832; *Demjanjuk v. Petrovsky*, 10 F.3d 338, 353 (6th Cir. 1993) (vacating judgment where factual misrepresentations tainted court proceedings).

## IV. Judicial Commentary on Document 83 and 53 as Suppression Attempts Potentially Entrenching Fraud

Beyond mere procedural contest, [Document 83]—together with its predecessor [Document 53]—must be understood as part of a **deliberate litigation strategy of suppression**. Appellee seeks not to clarify or streamline the record, but to **erase adjudicative facts**, **foreclose judicial notice**, and **prevent this Court from confronting errors, omissions, and fraud** in the underlying proceeding.

## A. Pattern of Procedural Gatekeeping to Shield Fraud

As Appellant first noted in [Document 36] (*Notice of Judicial Suppression*), Appellee has consistently opposed not just arguments, but the *existence* of any factual materials which challenge its narrative of exclusive trademark rights to the phrase "Kentucky Colonels." These facts—including historical documents, public recognitions, and semantic lineage—are precisely the type of information courts routinely consider under Rule 201(b). Their suppression not only distorts the appellate record but obstructs the truth-finding function of this Court.

This pattern is evident in:

- [Document 40], a response objecting to Appellant's good-faith request for leave from the Court to file particular motions targeted at uncovering fraud and exposing judicial error;

- [Document 43], a nonsensical response objecting to Appellant's notification to the Court of competency and educational experience acquired between 2020 and 2025;

- [Document 53], a motion which sought to restrict Appellant's ability to file responses or notices unless pre-approved (including judicial notice which can be filed at anytime);

- [Document 83], which now escalates that effort into a motion to strike entire dockets of evidence and analysis already submitted in good faith and in accordance with the Rules.

Such motions, if granted, would create a procedural screen that hides not just Appellant's arguments but the **record itself**—a result fundamentally incompatible with the integrity of judicial review.

## B. Suppression of Adjudicative Fact Undermines Institutional Legitimacy

The purpose of appellate review is not to validate the lower court's outcome, but to determine whether the outcome was reached **lawfully, fairly, and upon an accurate factual record**. If parties are permitted to eliminate adjudicative facts by alleging filing "volume," "tone," or "irrelevance" without addressing substance or admissibility, then factual correction becomes impossible, and fraud becomes entrenched.

Appellee's motion to strike does not rebut the authenticity of Appellant's materials; it attempts to **preclude the Court from seeing them at all**. That tactic reflects a **strategic use of framing and gatekeeping** to engineer an affirmance not based on merits, but on concealment.

This Court has a duty not only to safeguard the rights of the litigants, but to protect the **institutional credibility of the appellate process** itself. Judicial tolerance of such procedural suppression risks creating a precedent where **the party best able to bury the record controls the result**.

## C. Fraud Upon the Court Compels Judicial Intervention

The facts presented in [Documents 45, 56–77, 80]—which are judicially noticeable—show that Appellee's trademark claims rest on a **fabricated history of first use**, a misrepresentation of

organizational lineage, and a suppression of the Kentucky Colonel's actual public and semantic origins. These issues are not speculative; they are demonstrated through authenticated public sources and governmental records.

Where **fraud upon the court** is credibly alleged and supported by competent evidence, judicial silence is not neutrality—it is abdication. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) ("[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public.").

Thus, this Court is not merely asked to deny a motion to strike. It is asked to preserve its own authority against procedural misuse and factual suppression.

## V. Legal Basis for Admitting Judicial Notice and Void Order Arguments

The filings Appellee seeks to strike—including [Documents 44–52], [56–77], and legal memoranda [Documents 80–82]—were submitted in strict compliance with the Federal Rules of Evidence and Appellate Procedure. Their exclusion would not only violate Appellant's due process rights, but also deprive this Court of material facts central to the resolution of the appeal.

### A. Fed. R. Evid. Rule 201 Requires the Court to Take Judicial Notice Where Specific Conditions Are Met

Under **Fed. R. Evid. 201(b)**, a court may take judicial notice of a fact that is:

1. Not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction; or

2. Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Further, **Rule 201(d)** mandates that "[t]he court **must** take judicial notice if a party requests it and the court is supplied with the necessary information."

Appellant's [Document 44], supported by [Document 45] and appendices [Documents 46–50], includes precisely the sort of facts routinely subject to judicial notice:

- Governmental records,
- Published legislative commentary,
- Historical designations and recognitions,
- Public domain semantic materials.

These facts are confirmed by exhibits in [Documents 56–77], including images, legislative texts, semantic dictionaries, and historical records from U.S. archives and Kentucky historical authorities.

The Sixth Circuit has emphasized that once the conditions of Rule 201(b) are met, the Court **must take notice**. See *United States v. Ferguson*, 681 F.3d 826, 832 (6th Cir. 2012); *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

## B. FRAP 10(e)(2)(B) Authorizes Record Correction Where Material Omissions Occurred

Appellant's filings are also authorized under **Federal Rule of Appellate Procedure 10(e)(2)(B)**, which provides that the record may be corrected when "anything material is omitted." Where a trial court omits, excludes, or refuses to acknowledge materials central to the dispute, appellate supplementation is not only permitted—it is **necessary for fair review**.

Here, Appellant has submitted:

- Factual declarations identifying record suppression [Document 36],
- Legal analysis showing constitutional and procedural flaws in the injunction [Document 80],

- Memoranda establishing class harm and use rights [Documents 81, 82].

These filings directly respond to omissions and factual mischaracterizations made by Appellee, and are necessary to complete the appellate record.

## C. Void Orders Are Subject to Challenge at Any Stage

Appellant has alleged and supported—through sworn declarations and authenticated evidence—that certain orders in the underlying case were procured by **fraud upon the court** and **trademark fraud** which are thus **void ab initio**. It is well-settled law that a void judgment procured through fraud may be challenged at any time. See *United States v. Beggerly*, 524 U.S. 38, 47 (1998); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

The Sixth Circuit has likewise recognized that preserving the integrity of the judiciary requires courts to address fraud and misrepresentations whenever they are credibly presented, even post-judgment. See *Workman v. Bell*, 484 F.3d 837, 840–41 (6th Cir. 2007) (explaining that fraud undermining judicial proceedings may justify vacatur irrespective of procedural finality). Appellee's motion to strike improperly conflates procedural regularity with substantive justice, ignoring the judiciary's obligation to safeguard its own legitimacy

Appellee's Motion to Strike [Document 83] does not confront the substance of [Document 80]—Appellant's *Memorandum of Law on Void Orders*—nor the accompanying judicial notice submissions that establish fraud, misrepresentation, and misused jurisdictional findings. It does not address the Appellee's weaponization of the court's orders to impair the Appellant's rights.

To strike these filings would effectively bar this Court from recognizing its inherent authority to confront and remedy void judicial actions—a result wholly incompatible with constitutional guarantees and binding Supreme Court precedent.

# VI. Appellee's Bad Faith Litigation Pattern as Evidence of Procedural Suppression and Fraud

The Appellee's litigation conduct reveals a sustained and deliberate pattern of suppression, designed to obscure the truth from this Court and hinder fair adjudication similar to that which occurred before the U.S. District Court. By attempting to strike entire classes of documents—without individual analysis or legal basis—Appellee undermines the essential function of the appellate process: to review the record thoroughly and impartially.

Appellee has selectively targeted documents that undermine its asserted proprietary claim over a term widely recognized in public, governmental, and historical contexts as descriptive, generic, nonexclusive, and civic in nature. The breadth and timing of this motion suggest a tactical maneuver—not grounded in law but driven by the desire to prevent the Court from accessing historically significant and publicly accessible facts.

This is especially troubling in a case involving First Amendment implications and public domain concerns, where the very nature of the challenged mark implicates a shared cultural identity. Seeking to remove not only legal argument but the historical documentation supporting it signals a misuse of motion practice as a veil for censorship.

The Appellee's litigation strategy rests on a deceptive premise: that it is, and always has been, the sole legitimate user of the term "Kentucky Colonels." This selective revisionism is not only misleading—it is demonstrably false. Numerous other organizations, publications, and civic initiatives have employed the phrase over the past century, many of which were systematically removed or displaced from public visibility through legal maneuvering and market saturation tactics. Despite knowing of these other users—and in fact working to remove them—Appellee falsely represents that these entities never existed. The willful ignorance of the Appellee to disclaim or acknowledge the natural Kentucky Colonel civic class and culture that emerged in the 19th century that predates it reconstructs the modern civil class that follows their model.

Such conduct and revisionism exemplifies bad faith and makes the HOKC a hostile actor in the Kentucky Colonel space. First in 1981 an HOKC Board Member retroactively claims a first-use date of 1934 (the first documented meeting of the Honorable Order) the USPTO designated May 10, 1957 as their first-use ever consistent with their date of incorporation on June 10, 1957. Then in 2003 the HOKC applied for the trademark "Kentucky Colonels" for merchandise under multiple classes with a first-use date of 2002. Then suddenly in 2004, 2020, and 2023 simultaneously asserted rights of an entity called "Kentucky Colonels Association" (existing 1930-1933) using May, 02 1931. By conflating itself with one of the original groups to capitalize on the term's broader application and adoption into American culture by 1992, enabling Appellee to seek to both rewrite history and claim exclusive rights to a public institution. This dual manipulation—of the legal record, documented history, and the public narrative—must be impeded, recognized, and rejected by this Court.

The Court should consider the cumulative effect of this overreaching and ambiguous conduct as it evaluates the credibility of Appellee's filings and positions in this matter.

## VII. Prayer for Relief

WHEREFORE, Appellant **Col. David J. Wright**, *pro se*, respectfully requests that this Court:

1. **DENY** Appellee's **Omnibus Motion to Strike** [Document 83] in its entirety;

2. **AFFIRM** that Appellant's filings—including [Documents 44–52], [64–82], and judicial notice motion amendment and response [Documents 78–79]—are:

    - Procedurally proper under **Fed. R. App. P. 10(e)(2)(B)**,

    - Evidentially admissible under **Fed. R. Evid. 201(b)–(d)**,

    - Constitutionally protected under the **First and Fourteenth Amendments**,

    - Timely and responsive in accordance with Sixth Circuit briefing expectations;

3. **RECOGNIZE** the seriousness of Appellee's effort to suppress adjudicative facts through procedural motion practice [Document 83]; [Document 53], and exercise caution in allowing any party to use motions to strike as a substitute for substantive rebuttal;

4. **DECLARE** that Appellant has established, at minimum, a **preponderance of the evidence** to support judicial notice of fraud, misrepresentation, and public domain status regarding the "Kentucky Colonel" identity;

5. **GRANT** other and further relief as may be warranted to preserve the integrity of this appellate review, correct the record, and vindicate Appellant's civil, constitutional, and statutory rights.

Respectfully submitted,

/s/ Col. David J. Wright

302 General Smith Drive
Richmond, Kentucky 40475

david.wright@globcal.net
Tel: +1 (859) 379-8277

Dated: June 30, 2025
Puerto Carreño, Colombia

## CERTIFICATE OF SERVICE

I hereby certify that on **June 30, 2025**, I **submitted** the foregoing **"Response Opposing Appellee's Omnibus Motion to Strike"** for filing via **email** to the Clerk of the Court, in accordance with the Court's procedures for pro se litigants. Upon docketing, the Court's **CM/ECF system** will automatically serve all registered ECF users, including counsel for Appellee.

| | |
|---|---|
| Deborah S. Hunt, Clerk | /s/ Col. David J. Wright |
| Sixth Circuit Court of Appeals | David J. Wright, Pro-se Appellant |
| 501 Potter Stewart U.S. Courthouse | DATED: June 30, 2025 |
| 100 East Fifth Street | |
| Cincinnati, Ohio 45202-3988 | |