# IN THE UNITED STATES COURT OF APPEALS

# FOR THE SIXTH CIRCUIT

RECEIVED
07/30/2025
KELLY L. STEPHENS, Clerk

Case Nos. 23-5795 & 23-6108

**HONORABLE ORDER OF KENTUCKY COLONELS, INC.,**
Plaintiff-Appellee,

v.

**COL. DAVID J. WRIGHT,**
Individually and on behalf of all other similarly titled individuals.
**Defendant-Appellant**

---

# REPLY IN SUPPORT OF MOTION FOR COURT-FACILITATED MEDIATION AND MEMORANDUM OF LEGAL DECLARATION FOR RESTORATIVE RELIEF

---

## I. INTRODUCTION

**COMES NOW** the Appellant, Col. David J. Wright, appearing *pro se* and *in forma pauperis,* pursuant to Federal Rule of Appellate Procedure 33 and Sixth Circuit Rule 33.1, to respectfully submit this Reply to **[Document 91]**, the **Appellee's Response and Objection in Opposition to Appellant's [**Motion for Court-Facilitated Mediation and Settlement Conference, **Document 90]**, and in further support of the accompanying **[Memorandum and Legal Declaration for Restorative Relief, Document 89]**.

Rather than provide a meaningful legal or factual rebuttal, the Appellee's Response adopts a posture of categorical denial devoid of analysis, precedent, or acknowledgment of the evidentiary record now before the Court. Appellee offers no challenge to the documented history, exhibits, memoranda,

procedural abuses, evidentiary trademark fraud, or constitutional violations raised by the Appellant. That silence is telling—and dispositive. As the Sixth Circuit has held, issues not substantively addressed in opposition may be deemed waived. See *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002); *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006).

In an unfortunate and misleading flourish, the Appellee insinuates that the Appellant's filings constitute "an attack on the Court." That accusation is categorically false, a distractive pleading, and procedurally improper. Such a characterization is unsupported by the record. Courts grant leeway to *pro se* litigants and do not construe good-faith criticism of lower court conduct as disrespectful. See *Haines v. Kerner*, 404 U.S. 519 (1972). The Appellant's record is one of consistent institutional respect: each filing has been submitted in the form prescribed by the Federal Rules of Appellate Procedure and the Local Rules of this Circuit, and each has relied on established authorities such as *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, *Chambers v. NASCO, Inc.*, and *Caperton v. A.T. Massey Coal Co.* to request judicial correction of legal and factual errors—not to disparage the judiciary. Raising constitutional violations, evidentiary suppression, or equitable misconduct is not an "attack"—it is a protected form of legal redress, expressly contemplated by the structure of appellate review and the due process rights secured under the Fifth and Fourteenth Amendments. Mischaracterizing such redress as "attack" is itself an act of bad faith, hubris, and reveals the Appellee's ongoing unwillingness to engage the merits of the case on appeal.

This Reply addresses the following:

- The Appellee's failure to rebut core facts;
- Appellant's right to seek equitable relief through mediation;
- Procedural fairness regarding the motion's length;
- Intent to file additional motions warranted by the record; and
- The Appellee's continued bad-faith conduct and reliance on void orders.

The Appellee, who in 2020 initiated this litigation with nearly **2,500 pages of filings** entrenching a series of **factually incorrect, historically unsupportable, and judicially unexplained conclusions or assumptions**, now seeks to dismiss the Appellant's lawful motions to correct a historical misappropriation as a "barrage" and an "attack" on the Court. This rhetorical reversal is both disingenuous and procedurally indefensible. The Appellant's submissions—unlike the Appellee's initial deluge—are carefully constructed legal pleadings supported by verified exhibits, historical records, constitutional authorities, public sources, and published judicial commentary. They do not relitigate; they educate and illuminate all the historical facts that the Appellee has intentionally ignored, to redefine the Kentucky Colonel. The Appellee's attempt to label this process as vexatious or improper reveals its discomfort with a record it cannot controvert. Appellant's consistent record before this Court reflects only a commitment to efficient, respectful, and equitable resolution, including repeated offers to resolve this matter via mediation in the public interest.

Appellee's repeated mischaracterization of Appellant's motion practice as a 'shakedown' is unfounded, unsupported by the record, and contrary to the actual relief sought, which is strictly restorative and seeks to correct past misappropriation of intellectual property, not to obtain an unjust benefit or leverage. The core of Appellant's claim is the restoration and recognition of rights held previously, which are now suppressed or appropriated by Appellee. The Appellant is consistent with both equitable and constitutional protections, and respectfully presented to this Court through the proper channels of legal redress, not through threats or coercion.

This is not a shakedown of HOKC; it is a legal reckoning to restore fidelity to historical and legal realities. See *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954) ("Courts resolve disputes on the basis of law and evidence, not public emotion or rhetoric.").

# II. APPELLEE'S FAILURE TO REBUT OR CONTEST THE FACTUAL RECORD

The **Appellee's Response and Objection to Court-Facilitated Mediation [Document 91]** constitutes not a legal rebuttal but a categorical deflection. It fails to engage with, respond to, or refute the extensive factual and evidentiary record presented in **[Document 89 – Memorandum and Legal Declaration for Restorative Relief]** and **[Document 90 – Motion for Court-Facilitated Mediation]**. The Appellee offers no evidence, no counterstatement, and no material explanation for the multiple allegations of:

- **Fraudulent procurement of trademark rights** through knowingly false first-use claims, omission of concurrent users (including Defendant), false designation of origin, and governmental authority, contrary to the requirements of *15 U.S.C. §§ 1051, 1064(3), 1125,* and *37 C.F.R. § 2.33(b)*;

- **Retaliatory litigation conduct**, including initiating the present action three days after filing three questionable trademark applications in bad-faith, all crafted to eliminate competition, and suppress civic speech protected under the First Amendment;

- **Judicial misapplication of settlement terms**, where the District Court ignored **Stipulation 5 of the Agreed Permanent Injunction, [DE 93]** and failed to give effect to the parties' Confidential Mediator's Agreement [DE 97–6] or provide statutory fair-use subsequently misapplying the Lanham Act finding infringement based on a mistaken interpretation of the use of unregisterable trademark indicia [™][1];

- **Public and cultural misappropriation**, through the Appellee's 2004–2020 campaign to rewrite Kentucky history and mislead the courts into treating the "Honorable Order" as the historical and legal originator of the "Kentucky Colonels" name in 1931.

---

[1] The trademark symbol ™ is a unregulated symbol used to indicate that the preceding mark is a common-law trademark, or that the product trademark has been applied for, but most often indicating an unregistered or unregisterable trademark (e.g. CHOCOLATE™ for real chocolate products). Likewise ℠ for service mark indicates an unregistered, common-law, presentation of a service. Neither of these symbols are enforced or regulated under the Lanham Act, and they are most often used in association with publicity and marketing campaigns to claim originality.

By choosing not to dispute any of these foundational facts or others presented in the motion, the Appellee has effectively **waived its right to do so** in this proceeding. As this Court has held:

> "A party's failure to respond to an argument constitutes forfeiture." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002); accord, *Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 676 (6th Cir. 2006).

When a litigant wholly neglects to address or contest substantive points raised by the opposing party, that omission operates as a waiver of the argument for purposes of appellate review. The Sixth Circuit has consistently held that the deliberate or inadvertent failure to engage with material arguments results in forfeiture, and the Court may deem those unaddressed issues conceded by silence.

Further, by failing to offer any alternative historical record, trademark justification, or equitable defense, the Appellee has not just forfeited argument—it has **affirmed the truth** of the Appellant's sworn and publicly documented claims as concessions, including:

- The *Kentucky Colonels Handbook* (Association) of 1930 predated the HOKC's conception in 1933 and first assembly in May 1934 by at least three to four years; it shows a well-developed organization with over 1,000 Kentucky Colonels dating back to 1875;

- The Appellant's Kentucky Colonels website [colonel.org] (1998-2001)[2] and related projects predates commercial trademark application use of "Kentucky Colonels" by the HOKC;[3]

- The HOKC began using the Internet keywords "Kentucky Colonels" as a substitute for its full name prolificly **only after** merger negotiations failed with the Appellant's "Kentucky Colonels International" in January 2020;

---

[2] InternetArchive–WaybackMachine March, 2001 https://web.archive.org/web/20010331195318/http://www.colonel.org/

[3] See USPTO Serial 76499062 claiming first-use Oct. 21, 2002. https://tsdr.uspto.gov/#caseNumber=76499062

- In an attempt to control the ideals of the Kentucky Colonel introduced a false origination claim of 1813 and the HOKC recognizes its board members as Generals and its officers as Commanders to deceive its members to believe there is a chain-of-command over the title.

The absence of factual opposition to the merits presented in the Appellant's arguments and affirmative position renders the Appellee's filing procedurally empty and substantively nonresponsive. It does not trigger any legal presumption in its favor, nor does it diminish the Appellant's showing of entitlement to mediation, restorative relief, and judicial correction.

## III. EQUITABLE MEDIATION IS WARRANTED BY THE RECORD AND THE LAW

The Appellant's request for court-facilitated mediation under *Federal Rule of Appellate Procedure 33* is neither frivolous nor redundant.[4] It is grounded in a well-established record of factual suppression, public harm, and judicial misapplication, all of which warrant structured, supervised resolution. The Appellee's one-paragraph objection fails to demonstrate why such relief would be improper. On the contrary, the equities of this case cry out for mediated settlement.

### A. The Sixth Circuit Routinely Refers Complex Institutional Disputes and Controversies to Mediation

This Court has a longstanding practice of referring high-conflict and institutionally significant cases to its Appellate Mediation Program. See *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589 (6th Cir. 2016) (dispute involving dealer rights and nonprofit governance); *Grand Trunk W. R.R. v. Bhd. of Maint. of Way Emps. Div.*, 497 F.3d 568 (6th Cir. 2007) (complex organizational and historical identity conflict). The parallels here are direct.

---

[4] As a pro se litigant, Appellant is aware that appeals brought without legal representation are not routinely referred to the Sixth Circuit's Appellate Mediation Office. This practice reflects internal administrative criteria, including presumptions about legal capacity to negotiate, limited mediation resources, and historically lower resolution rates in unrepresented matters. Accordingly, it was procedurally necessary for Appellant to affirmatively request mediation pursuant to Federal Rule of Appellate Procedure 33 and Sixth Circuit Rule 33.1. Given the nature of the controversy—encompassing issues of historical misrepresentation, void injunctions, public interest harm, and equitable suppression—this appeal presents an exceptional case where referral to mediation is not only appropriate but imperative.

Appellant's filings raise issues of:

- **Public title misappropriation** of historical significance;
- **Trademark enforcement derived from fraud**, chilling fair-use and expressive activity;
- **Breach of a mediated agreement** with direct constitutional consequences;
- **Judicial overreach** nullifying protected rights without factual basis.

These issues cannot be fully redressed through adversarial briefing alone. They implicate *cultural heritage*, *state honorifics*, *public speech*, and *private misuse of public identity by a corporation*. Such multidimensional disputes are ideally suited to mediation, which promotes outcomes not available through conventional appellate remedies.

## B. Mediation Is the Only Mechanism to Preserve Institutional Legacy While Averting Further Harm

This litigation has already resulted in the **loss or suppression of website content, social media platform assets, public registries, communications, and educational materials** maintained by the Appellant for over two decades. [Document 89] Every day that passes without resolution exacerbates the reputational and operational damage not only to Appellant, but to the larger Kentucky Colonel class—comprised of hundreds of thousands of civic honorees wrongly subjected to a monopolization scheme by the Appellee.

Mediation permits the parties to achieve the following:

- Restoration of suppressed digital property;
- Public clarification of rights and disclaimers;
- Mutual acknowledgment of contributions;
- Reform of current and future use of "Kentucky Colonels" in the public sphere.

Appellee provides no justification for why this Court should deny an opportunity for resolution when Appellant seeks only restorative relief, not punitive judgment. There is no credible risk of prejudice. The only party prejudiced by denial of mediation is the public and the truth.

## C. Appellee's Rejection of Mediation Affirms Bad-Faith Strategy

That the Appellee opposes even discussing mediated settlement—while offering no counterproposal, no alternative path, and no factual defense—speaks to its true litigation posture: to exhaust, to silence, and to entrench a judicially ratified monopoly over a public civic tradition. This is not equitable conduct.

The United States Supreme Court has recognized that courts possess equitable power to intervene and cure misconduct where "fraud on the court" or bad-faith tactics infect the judicial process. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). These principles enhance and reinforce—not displace—this Court's mediation authority.

In the absence of judicial facilitation, this matter will persist through costly, protracted, and reputationally damaging litigation, judicial notice upon the request of a party must be taken. Mediation is not only **appropriate** under FRAP 33, it is **necessary** to serve judicial economy, public interest, and institutional legacy.

## IV. JUSTIFICATION FOR THE OVERLENGTH MOTION [DOCUMENT 90]

The Appellee's perfunctory objection to the length of [Document 90 – Motion for Court-Facilitated Mediation][5] is procedurally meritless and factually disingenuous. Appellant has fully complied with *Federal Rule of Appellate Procedure 27(d)(2)(A)* by:

---

[5] "Appellant submits that the additional length is warranted by the procedural complexity of the consolidated appeals, the substantial factual record underlying the dispute, and the constitutional and equitable dimensions of the relief sought."

1. **Disclosing the overlength nature of the motion on its face**; and
2. **Providing specific, good-faith justification for its extended length** due to the unique complexity and scope of the record on appeal.

This is precisely the type of disclosure and justification contemplated by the Sixth Circuit in its local rules. See *Sixth Cir. R. 27(c)* ("[A] motion that does not comply with the page limits may be accepted for filing at the discretion of the court.").

Moreover, this Court has **routinely exercised discretion** to accept overlength submissions in matters involving:

- Extensive factual records and intertwined dockets;
- Novel constitutional, trademark, and equitable claims;
- Prior restraints on constitutional and civil rights;
- Cases involving extrinsic fraud and historical revisionism;
- Pro se litigants managing complex appellate records.

Appellant, proceeding without counsel, consolidated into a single motion what otherwise would have required numerous piecemeal filings—on fraud, public domain rights, digital suppression, settlement misapplication, and prior restraint. To reject this consolidation would elevate form over substance and frustrate judicial economy.

Notably, the Appellee suffers **no prejudice** from the additional length. It had full opportunity to respond (and chose not to do so with any substance). Any objection to the format, rather than the content, reveals an unwillingness to engage the merits.

Appellant respectfully submits that the Court's discretionary acceptance of [Document 90] as filed is fully justified and procedurally sound under the Federal and Local Rules, and should not be disturbed by a party whose own conduct gave rise to the very complexity that necessitated the extended motion.

# V. APPELLANT'S INTENT TO FILE ADDITIONAL CORRECTIVE AND EQUITABLE MOTIONS

The Appellee's refusal to engage the facts being presented on appeal, coupled with its reliance on judicial orders tainted by fraud and procedural suppression, necessitates further filings to protect the integrity of the appellate record and vindicate the constitutional rights at stake underpinned by the Appellee's falsely designated trademark rights.

Rather than extinguish this controversy through mediation or good-faith concessions, the Appellee is provoking ongoing litigation by denying historical reality, suppressing prior association, and misrepresenting its organizational nature. It has thereby made necessary what Appellant originally sought to avoid: further motions that will expose the structural, procedural, and factual defects below.

## A. Forthcoming Motions Are Targeted to Cure and Correct

Pursuant to *Federal Rules of Appellate Procedure 27, 10(e),* and *Federal Rule of Evidence 201*, the Appellant advises the Court of the intent to file the following motions, narrowly tailored to support equitable restoration and judicial correction:

1. **Memorandum of Law Supporting Equitable Settlement as a Judicial Recommendation**, under *FRAP 33* and Sixth Circuit authority, to structure terms based on historical accuracy, prior good-faith service, and protection of expressive rights;

2. **Motion for Summary Reversal and Vacatur with Restorative Relief**, addressing void injunctions and orders entered in *HOKC v. KCI, W.D. Ky. Case Nos. 3:20-cv-132 (2020) and 3:23-cv-43 (2023)* on the basis of *fraud upon the court,* misrepresentation, and deprivation of equitable and fair process;

3. **Supplemental Motion for Judicial Notice and Record Supplementation**, previously noticed in [Document 36 – Notice of Judicial Suppression], grounded in verified public records and unrebutted historical documents;

4. **Motion to Review Trademark Misuse and Request Cancellation or Remand to USPTO**, under *15 U.S.C. §§ 1064, 1119*, based on bad-faith first-use claims, suppression of prior users, disregard of historical use, and concealment of adverse facts.

Each of these filings has been outlined in Appellant's [Motion for Leave, Document 37], and no prejudice will result to the Appellee, who has repeatedly declined to answer the factual basis of any fraud or misrepresentation allegations.

## B. Leave Is Pending and Procedurally Proper

The Appellant has already filed a formal *Motion for Leave to File Supplemental Motions* [Document 37], invoking exceptional circumstances under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and Sixth Circuit precedent permitting post-judgment relief in cases of fraud, misappropriation, litigation misconduct, structural bias, and institutional suppression.

That motion is currently pending. It expressly sought leave to file additional, non-duplicative pleadings based on:

- Unadjudicated allegations and prima facie evidence demonstrating fraud,
- Constitutional violations ignored by the District Court,
- Suppression of adjudicative facts contrary to *Fed. R. Evid. 201*, and
- The imperative to correct the record in a case wrongly decided on manufactured and misrepresented facts.

Appellee has made no showing why leave should not be granted or why any such corrective motions should be foreclosed. To the contrary, Appellant has already submitted unrebutted evidence that the District Court denied motions without adjudicating fraud, silenced judicial notice, and returned a contested bond *while appeal was pending*, contrary to Sixth Circuit standards. See *Notice of Judicial Suppression and Adverse Action* [Document 36].

In light of Appellee's unresponsiveness and reliance on suppressed or falsified foundations, leave should be granted *nunc pro tunc* and Appellant permitted to file the above motions to ensure full and fair appellate adjudication on all the issues underlying the case.

## VI. APPELLEE'S CONTINUING RELIANCE ON FRAUDULENT TRADEMARKS AND HISTORICAL FALSEHOODS

The Appellee's litigation posture rests entirely on trademarks that were **applied for three days prior to litigation in bad-faith using fraudulent first-use dates** and **misrepresented to the District Court as famous and incontestable**, and now to this Court, as valid, exclusive, and historically grounded in origin. That posture is unsustainable under federal law, and its continued assertion in this appeal—without rebutting the factual record to the contrary—is further evidence of bad faith.

## A. Appellee's Trademarks Were Procured Through Fraud and Omission of Material Facts

As set forth in detail in [Document 89] and further supported in [Document 37], the Appellee's asserted marks—KENTUCKY COLONELS (88800020, 88800035, & 88800038)—were applied for **on February 17, 2020**, just **three days before initiating suit**, and were procured based on:

- **False first-use dates**, claiming use "1931" or "1951" despite proof of discontinuous and commercially dormant usage until after the Appellant's 1998–2020 use of Kentucky Colonels at the colonel.org domain and later implementation legalizing "Kentucky Colonels International" as a trade name using domain name kycolonels.international;

- **Concealment of known concurrent users**, including the Appellant, despite ongoing contact and collaboration between the parties, violating the disclosure duty under *37 C.F.R. § 2.33(b)* and *15 U.S.C. § 1051*;

- **Omission of the term's prior public use**, civic recognition, and federal and state documentation as a title of honor issued by Kentucky governors since the 19th century, not as a commercial indicator of origin.

Under *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009), *Medinol Ltd. v. Neuro Vasx, Inc.*, 67 U.S.P.Q.2d 1205 (T.T.A.B. 2003), and *Guan v. Hu*, 2021 U.S. Dist. LEXIS 115796 (E.D.N.Y. 2021), such knowing misrepresentations and concealments constitute actionable **trademark fraud**, **requiring cancellation or refusal of enforcement**.

The Appellee's failure to contest these facts in its response [Document 91] must be deemed a waiver. Also see Legal Analysis of HOKC Trademarks [Document 71]

## B. "Kentucky Colonels" Is Not a Source Identifier—It Is a Civic Title and Descriptive Class of People

The Appellee's claim of exclusive rights to "Kentucky Colonels" as a brand identifier is foreclosed by longstanding doctrine. The phrase refers descriptively to a **class of people honored by the Commonwealth of Kentucky**, and cannot function as a trademark except in highly stylized form or with distinct commercial origin. See:

- *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1041 (D.C. Cir. 1989) ("Even a descriptive term with secondary meaning may be protected only against uses that are likely to cause confusion.");

- *Consumer Defense Group v. Rental Housing Industry Members*, 2006 U.S. Dist. LEXIS 76565 (E.D. Cal. 2006) (civic identity terms not protectable as exclusive marks);

- McCarthy on Trademarks and Unfair Competition § 12:25 ("A designation cannot function as a trademark where it is used by multiple parties to identify a group or class.").

The record reflects over a century of use of the term "Kentucky Colonels" by unaffiliated civic groups, governors' offices, international honorees, and even newspaper headlines since at least 1875. The Appellant has provided original historical materials, expert analysis, and registry evidence—all unrebutted. The Appellee continues to rely on a **fabricated "1813" origin story** discredited by its own internal records and contradicted by Kentucky state history.

## C. The District Court Improperly Ratified the Appellee's Fabrications

The District Court's reliance on these marks and historical misrepresentations—without examining the underlying record—led to entry of void and inequitable orders, including the TRO, preliminary injunction, and purported enforcement orders in [DE 14], [DE 58], and [DE 129]. These were issued:

- Without factual findings under Rule 52(a)(2);
- Without analysis under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); and
- In disregard of *F.R.E. 201(d)* governing judicial notice of public facts.

The Appellee's refusal to confront this legacy of judicial error confirms its intent to preserve its fraudulently secured advantage rather than seek truth, reconciliation, or lawful protection.

The continued assertion of these trademarks as "incontestable" or "historic" without acknowledging the countervailing record—and in the face of documented fraud—is not merely litigation strategy; it is willful misrepresentation and systemic abuse.

## VII. CONCLUSION AND PRAYER FOR RELIEF

The Appellee's [Document 91] Response fails to meet even the most basic standard of legal sufficiency. It does not address the factual record, does not dispute the allegations of trademark fraud, does not answer the allegations of historical misrepresentation, and does not rebut the detailed constitutional and equitable arguments advanced in [Document 89] and [Document 90]. This silence is not strategic restraint—it is tacit concession.

**The Appellant has demonstrated that:**

- The Appellee's trademarks were obtained in violation of *15 U.S.C. §§ 1051, 1064, 1119* and supporting federal regulations;
- The term "Kentucky Colonels" cannot function as a source-identifying trademark under the Lanham Act because it describes a civic class, not a brand;

- The Appellant's twenty-eight years of public, expressive, and organizational activity were wrongfully suppressed by void orders infected by procedural error and judicial misapprehension;

- The District Court failed to enforce the parties' mediated settlement, ignored binding stipulations, and upheld injunctive relief based on fabricated facts and a deliberately altered historical narrative; and

- The Appellee continues to mislead the judiciary by invoking "membership" and "goodwill" structures it does not legally possess, while silencing former donors and digital stewards like the Appellant.

In light of the foregoing, the Appellant respectfully requests this Honorable Court:

1. **GRANT** the **Motion for Court-Facilitated Mediation and Settlement Conference**, [Document 90] and refer this matter to the Sixth Circuit's Mediation Office under *FRAP 33* and Sixth Circuit Rule 33.1;

2. **TAKE JUDICIAL NOTICE** that the Appellee has not rebutted any material allegations, evidence, facts, history, or claims set forth in Documents 36–39, 41, 42, 44–52, 56–82, etc., so therefore waived all factual opposition to the pending motion;

3. **RECOGNIZE** that the Appellant's forthcoming motions—including a *Motion for Summary Reversal and Vacatur with Restorative Relief*, a *Memorandum of Law Supporting Equitable Settlement as a Judicial Recommendation*, and other supporting memoranda—are necessary and appropriate to correct the record and ensure constitutional and equitable adjudication of this appeal without further entrenchment of falsely assumed precedents;

4. **GRANT LEAVE** to file necessary motions pursuant to the previously filed [Document 37];

5. **REJECT** the Appellee's procedural objections to [Document 90] as meritless and affirm that its overlength filing is justified by complexity, public interest, and judicial economy; and

6. **GRANT ALL FURTHER RELIEF** in law and equity as the facts, public interest, and institutional legitimacy of this Court may require.

This controversy extends beyond mere trademark law. It reaches into the integrity of federal adjudication, the misuse of public honorifics, the rights of hundreds of thousands of civic honorees, and the deliberate distortion of Kentucky's historical record. Appellant asks not only for fairness in process, but also for truth in substance. The record is now clear. It is time for accountability.

Further briefing is unnecessary given the clarity of the record and the conclusive legal defects.

Respectfully submitted,

/s/ Col. David J. Wright

302 General Smith Drive
Richmond, Kentucky 40475

david.wright@globcal.net
Tel: +1 (859) 379-8277

Dated: July 30, 2025
Puerto Carreño, Colombia

# CERTIFICATE OF SERVICE

I hereby certify that on **July 30, 2025**, I **submitted** the foregoing **"Reply Supporting Court Facilitated Mediation"** for filing via **email** to the Clerk of the Court, in accordance with the Court's procedures for pro se litigants. Upon docketing, the Court's **CM/ECF system** will automatically serve all registered ECF users, including counsel for Appellee.

| | |
|---|---|
| Deborah S. Hunt, Clerk | /s/ Col. David J. Wright |
| Sixth Circuit Court of Appeals | David J. Wright, Pro-se Appellant |
| 501 Potter Stewart U.S. Courthouse | DATED: July 30, 2025 |
| 100 East Fifth Street | |
| Cincinnati, Ohio 45202-3988 | |